# Exhibit A

| NYSCEF | **Document List** | |
|---|---|---|
| Queens County Supreme Court | **Index #  725646/2025** | Created on:12/02/2025 03:15 PM |

Case Caption:   **Kate Suzanne Dybdahl et al v. Jetblue Airways Corporation et al**

Judge Name:   **Scott Dunn**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| 1 | SUMMONS + COMPLAINT | Processed | 09/03/2025 | Cascione, T. |
| 2 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service on Defendant Jetblue Airways Corporation | Processed | 09/14/2025 | Cascione, T. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service on Airbus Americas, Inc. | Processed | 09/29/2025 | Cascione, T. |
| 4 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service on Honeywell Aerospace Technologies | Processed | 09/29/2025 | Cascione, T. |
| 5 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service on Honeywell Aerospace US Inc. | Processed | 09/29/2025 | Cascione, T. |
| 6 | STIPULATION - TIME TO ANSWER<br>Stipulation Extending Time for JetBlue to Answer or Move Against the Complaint to October 30, 2025 | Processed | 09/30/2025 | Antonecchia, M. |
| 7 | NOTICE OF MOTION (Motion #001) | Processed | 10/06/2025 | Murtha, K. |
| 8 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #001) | Processed | 10/06/2025 | Murtha, K. |
| 9 | EXHIBIT(S) - A (Motion #001)<br>Summons and Complaint | Processed | 10/06/2025 | Murtha, K. |
| 10 | EXHIBIT(S) - B (Motion #001)<br>Cynthia M Devers, Esq's Affidavit with Certificates of Good Standing PA and NJ | Processed | 10/06/2025 | Murtha, K. |
| 11 | EXHIBIT(S) - C (Motion #001)<br>Affidavit of Michael S Miska Esq with Certificates of Good Standing NJ and PA | Processed | 10/06/2025 | Murtha, K. |
| 12 | EXHIBIT(S) - D (Motion #001)<br>Proposed Order | Processed | 10/06/2025 | Murtha, K. |
| 13 | RJI -RE: NOTICE OF MOTION (Motion #001) | Processed | 10/06/2025 | Murtha, K. |
| 14 | ADDENDUM - GENERAL (840A) (Motion #001) | Processed | 10/06/2025 | Murtha, K. |
| 15 | AFFIRMATION/AFFIDAVIT OF SERVICE (Motion #001) | Processed | 10/08/2025 | Murtha, K. |
| 16 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Service of Process on Honeywell International | Processed | 10/08/2025 | Murtha, K. |
| 17 | STIPULATION - TIME TO ANSWER | Processed | 10/22/2025 | Odell, C. |
| 18 | STIPULATION - OTHER<br>Stipulation to Waive Service, Extend Time, and Voluntarily Dismiss | Processed | 10/27/2025 | Odell, C. |
| 19 | NOTICE OF MOTION (Motion #002)<br>Notice of Motion to Dismiss Complaint | Processed | 10/30/2025 | Antonecchia, M. |
| 20 | MEMORANDUM OF LAW IN SUPPORT (Motion #002)<br><br>Memorandum of Law in Support of Defendant | Processed | 10/30/2025 | Antonecchia, M. |

Page 1 of 2

NYSCEF
Queens County Supreme Court

**Document List**

**Index # 725646/2025**

Created on:12/02/2025 03:15 PM

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
|      | JetBlue Airways Corporations Motion to Dismiss | | | |
| 21 | ORDER ( PROPOSED ) (Motion #002) [Proposed] Order granting JetBlues motion to dismiss complaint pursuant to CPLR 3211(a)(7) | Processed | 10/30/2025 | Antonecchia, M. |
| 22 | STIPULATION - TIME TO ANSWER [STIPULATION TO EXTEND TIME] | Processed | 10/30/2025 | Kwarta, E. |
| 23 | NOTICE OF APPEARANCE (POST RJI) Notice of Appearance for Christopher M. Odell | Processed | 10/31/2025 | Odell, C. |
| 24 | COMPLAINT (AMENDED) *Corrected* | Processed | 11/14/2025 | Murtha, K. |
| 25 | SUMMONS-SUPPLEMENTAL (POST RJI) | Processed | 11/14/2025 | Murtha, K. |
| 26 | RESPONSE TO DEMAND supplemental ad damnum | Processed | 11/19/2025 | Murtha, K. |

FILED: QUEENS COUNTY CLERK 09/03/2025 02:27 PM   INDEX NO. 723646/2025
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 09/03/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL CHRISTIAN                    Index No.:
DYBDAHL, GRAHAM JEANINE LEHR, CHAD
RONALD LEHR,
AND JULIA MICHELE CRAIG,                                **SUMMONS**
,

                               Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS
SE, HONEYWELL INTERNATIONAL, INC.,
HONEYWELL AEROSPACE US INC., AND
HONEYWELL AEROSPACE TECHNOLOGIES, AND
JOHN DOES 1-10
,

                               Defendant.

-------------------------------------------------------------------------X

To the above-named Defendants:

        **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's attorney within 20 days after the service of this summons
(exclusive of the day of service), or within 30 days after the service is complete if this summons
is not personally delivered to you within the State of New York.

        **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear or answer, a
judgment will be entered against you by default for the relief demanded in the Complaint.

The Plaintiffs designate QUEENS County as the place of trial.

The basis for venue is.Defendant JETBLUE AIRWAYS CORPORATION'S principal place of
business.

DATED:      September 3, 2025
            Eastchester, New York

                                            Thomas G Cascione
                                            Attorneys for Plaintiff
                                            Cascione Purcigliotti & Galluzzi PC
                                            274 White Plains Road, Suite 6
                                            Eastchester, NY 10709

FILED: QUEENS COUNTY CLERK 09/03/2025 02:27 PM
NYSCEF DOC. NO. 1

Case 1:25-cv-06693-ENV-TAM   Document 1-3   Filed 12/03/25   Page 5 of 248 PageID
#: 32
INDEX NO. 713646/2025

RECEIVED NYSCEF: 09/03/2025

(914) 961-1263
Thomas.cascione@cpglawyers.com

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.
*(Pro Hac Vice Anticipated)*
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email:  cdevers@dmllc.law
mmiska@dmllc.law

TO:

JETBLUE AIRWAYS CORPORATION
27-01 Queens Plaza North
Queens, NY 11101

AIRBUS AMERICAS, INC.
2550 Wasser Terrace, Suite 9100
Herndon, VA 20171

AIRBUS S.A.S.
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

AIRBUS SE
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

HONEYWELL INTERNATIONAL, INC.
101 Columbia Road
P.O. Box 4000
Morristown, NJ 07960

HONEYWELL AEROSPACE US INC.
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

HONEYWELL AEROSPACE TECHNOLOGIES
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

Case 1:25-cv-06693-ENV-TAM    Document 1-2    Filed 12/03/25    Page 6 of 248 PageID #: 33

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF QUEENS

-----------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,                    INDEX NO.:
and JULIA MICHELE CRAIG,

    Plaintiffs,

      v.

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10

    Defendants.

-----------------------------------------------------------X

## CIVIL ACTION COMPLAINT

Plaintiffs, Kate Suzanne Dybdahl; Paul Christian Dybdahl; Graham Jeanine Lehr; Chad

Ronald Lehr; and Julia Michele Craig, by their attorneys, complaining of the Defendants, JetBlue

Airways Corporation; Airbus Americas, Inc.; Airbus S.A.S.; Airbus SE; Honeywell International,

Inc.; Honeywell Aerospace US Inc.; Honeywell Aerospace Technologies; and John Does 1-10,

respectfully allege upon information and belief:

## THE PARTIES

### *Plaintiffs*

1.    Plaintiff Kate Suzanne Dybdahl is a Massachusetts citizen who resides at 26

Harrison Street, Melrose, Massachusetts 02176.

Case 1:25-cv-06693-ENV-TAM    Document 1-2    Filed 12/03/25    Page 7 of 248 PageID #: 34

2. Plaintiff Paul Christian Dybdahl is a Massachusetts citizen who resides at 26 Harrison Street, Melrose, Massachusetts 02176, and is the spouse of Plaintiff Kate Suzanne Dybdahl.

3. Plaintiff Graham Jeanine Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060.

4. Plaintiff Chad Ronald Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060, and is the spouse of Plaintiff Graham Jeanine Lehr.

5. Plaintiff Julia Michele Craig is a Massachusetts citizen who resides at 250 Tremont Street, Melrose, Massachusetts 02176.

### *Defendant JetBlue*

6. Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation and maintains a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101, in Queens County.

7. Defendant JetBlue is a common carrier under 14 C.F.R. Part 121 engaged in the business of transporting passengers for hire by air and, in furtherance thereof, operates regularly scheduled flights and is bound by the law to follow the applicable regulations, guidance, agreements, and accepted industry practices.

8. Defendant JetBlue owns and operates a fleet of Airbus 320 and Airbus 321 aircraft that are equipped with Honeywell auxiliary power units ("APU's").

9. Defendant JetBlue has experienced numerous "fume events", which are incidents in which dangerous toxic chemicals are released into the cabin of the aircraft, which will be discussed in further detail below.

2

Case 1:25-cv-06693-ENV-TAM   Document 1-3   Filed 12/03/25   Page 8 of 248 PageID #: 35

10.     Plaintiffs were all injured in fume events on JetBlue flights that utilized Airbus models of aircraft, and Honeywell APU's, and fell victim to all Defendants' decades' long systematic coverup of the frequency, severity, and dangers of fume events to Plaintiffs' detriment.

*__Airbus Defendants__*

11.     Defendant Airbus Americas, Inc. is a Delaware Corporation with a principal place of business at 2550 Wasser Terrace, Suite 9100, Herndon, Virginia 20171, and is a wholly owned subsidiary of Airbus S.A.S.

12.     Defendant Airbus Americas, Inc. designs, produces, manufactures, and delivers commercial aircraft to its customers in the United States, including JetBlue.

13.     Defendant Airbus Americas, Inc. assembles and delivers aircraft in Alabama.

14.     Airbus Americas Engineering, Inc. designed aircraft components in Mobile, Alabama, and Wichita, Kansas. AA Engineering was merged into Airbus Americas, Inc. on December 31, 2017.

15.     Defendant Airbus Americas, Inc. is the successor-in-interest to AA Engineering.

16.     Defendant Airbus S.A.S. is a French corporation with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

17.     Defendant Airbus S.A.S. designs, manufactures, assembles, services, and sells civil commercial aircraft, including the Airbus A320 family of aircraft (including the Airbus A319, A320, A321 and variants of each) to customers in the United States and across the world.

18.     Defendant S.A.S. is also the Type Certificate Holder for the Airbus A320 family of aircraft.

19.     Defendant Airbus SE is a multinational aerospace corporation, based in Leiden, the

3

Case 1:25-cv-06693-ENV-TAM   Document 1-2   Filed 12/03/25   Page 9 of 248 PageID #: 36

Netherlands, with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

20.     Airbus S.E. operates through its Commercial Aircraft, Defense and Space, and Helicopters divisions with more than one hundred subsidiaries and affiliated entities located in more than 41 countries around the world. Airbus SE is the ultimate parent company of the Airbus Defendants. Airbus SE, itself and through its subsidiaries and affiliates, has engaged in substantial and non-isolated business activity on a continuous and systemic basis in the United States and New York.

21.     Defendants Airbus Americas, Inc., Airbus S.A.S., and Airbus SE are collectively referred to herein as the "Airbus Defendants".

22.     The Airbus Defendants hold themselves out to the public as "Airbus", and acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, as joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject aircraft.

23.     The Airbus Defendants assumed responsibility for providing inspection, repair, services, maintenance, replacement, overhaul, repair, warnings, parts, maintenance manuals, maintenance instructions, instructions for continuing airworthiness, and other information with respect to aircraft they design, manufacture, sell, and for which they hold the Type Certificate and Production Certificate.

24.     The Airbus Defendants participated in the ongoing coverup to shield the defects in its aircraft that causes dangerous fume events that hurt those who fly aboard its aircraft, and failed to correct known defects in their aircraft.

4

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 10 of 248 PageID #: 37

## Honeywell Defendants

25. Defendant Honeywell International, Inc. is a Delaware Corporation with its principal place of business at 101 Columbia Road, P.O. Box 4000, Morristown, New Jersey 07960.

26. Defendant Honeywell Aerospace US Inc. is a Delaware Corporation with its principal place of business in Phoenix, Arizona and a registered agent at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

27. Defendant Honeywell Aerospace US Inc. does business as Honeywell Aerospace Technologies, which also maintains its principal place of business at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

28. Defendant Honeywell International, Honeywell Aerospace US Inc. and Honeywell Aerospace Technologies are collectively referred to herein as the "Honeywell Defendants".

29. The Honeywell Defendants acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject APUs.

30. The Honeywell Defendants manufacture of the auxiliary power units ("APUs") that are used in the A320 family of aircraft, including the Airbus 320 and 321 models.

31. The Honeywell Defendants also coordinated in the coverup of the defects in the APU and harms associated with fume events, and failed to fix known defects in their products.

## Defendants John Does 1-10

32. That John Does 1-10 are individuals who designed, manufactured, sold, distributed, maintained, overhauled, rebuilt, repaired, inspected, and/or modified the subject aircraft, true identities unknown.

5

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 11 of 248 PageID #: 38

## JURISDICTION AND VENUE

33.     Defendant JetBlue maintains its principal place of business in New York in Queens County.

34.     Defendant JetBlue also promulgates emails, service letters, service directives, and other information out of New York.

35.     The Airbus Defendants sold and/or purchased the Airbus family of aircraft, including the subject A320 and A321 models, to Defendant JetBlue, which is based in New York.

36.     The Airbus Defendants and the Honeywell Defendants investigated, coordinated, engaged in a continuous course of conduct, and conspired together to keep the severity and frequency of fume events that were occurring in the Airbus Defendants' fleet of aircraft from the FAA, crewmembers, and flying public.

37.     Defendant JetBlue, and the Airbus Defendants and Honeywell Defendants engaged in tortious activity in concealing the nature of fume events from the FAA, Plaintiffs and public through its business relationship centered in New York.

38.     All Defendants engaged in continuous and systematic business activities in the State of New York, including but not limited to, transacting business, contracting to supply goods and services, and engaging in tortious conduct in this state.

39.     All Defendants delivered their goods and services into the stream of commerce with the expectation that they would be purchased and used in the State of New York.

40.     All Defendants derive substantial revenue from their business and activities directed at the State of New York, and avail themselves of the privilege of doing business in New York such that jurisdiction is appropriate here.

6

Case 1:25-cv-06682-ENV-TAM Document 1-3 Filed 12/03/25 Page 12 of 248 PageID #: 39

41. Upon information and belief, the aircraft was sold to JetBlue through Agreements, which include a New York choice-of-law clause, requiring parties to submit to the jurisdiction of New York.

42. All Defendants have entered into contracts and warranty agreements with individuals and entities located in New York.

43. As the holder of the Type Certificate with the continuous responsibility to ensure the continuing airworthiness of various aircraft, the Airbus Defendants maintain direct relationships and contact with the owners within the State of New York, including JetBlue.

44. As the PMA holders with continuous responsibility to ensure the continuing airworthiness of the aircraft, and components, and APU, Defendants maintain direct relationships with owners and operators with New York, including JetBlue.

45. All Defendants advertise in New York and advertise to New York customers.

46. The contacts that each Defendant maintain in New York give rise to and caused the fume events at issue in this case.

47. Thus, Jurisdiction and venue are appropriate in this Court.

## FACTUAL BACKGROUND

### *What is a Fume Event?*

48. The Airbus 320 and 321 models draw in air from the outside through their engines, and send it into the aircraft cabin through the bleed air system, as shown in the illustration below:

7



49. The bleed air system takes the air from the engine's compressor section and auxiliary power unit ("APU") to various parts of the aircraft and is used for pressurization and air conditioning, among other functions.

50. A schematic of the Honeywell APU application is depicted below:



51. As noted in the DOT/FAA/AM-15/20 publication, "[t]he quality of air distributed throughout the cockpit and cabin during air transportation in a pressurized aircraft is critically important to human health."

52. A "fume" event is when the cabin air becomes contaminated with aerosolized or pyrolyzed engine oil, lubricants, deicing or hydraulic fluid due to a breach in the bleed air system.

53. Engine oil may be encountered if there was an oil leak or if oil has been absorbed into the bleed and air conditioning system.

54. Cabin odors come from different sources and have been described as dirty sock smells or crayon smells, magic marker, acrid, wet dog, musty, as well as other smells.

55. Also, some toxic fumes are odorless.

56. HEPA filtration does not work on the air because it only addresses particulates, and not toxic fumes, so Defendants' attempt to resolve the fume event issue with HEPA filtration is ineffective.

57. Inhalation of toxic cabin air can cause serious and permanent injuries to those who breathe it, which is what injured Plaintiffs in this matter.

***Chronology of Fume Events***

58. The history of fume events in aircraft manufactured by the Airbus Defendants that utilize the Honeywell APU, and operated by JetBlue extends back decades, and has long been a problem that is well known to all Defendants.

59. In 2004, Boeing introduced a safer alternative design in the Boeing 787 Dreamliner, which does not use a bleed air system, so it eliminates the fume event risks.

9

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 15 of 248 PageID #: 42

60. Unfortunately, due to the lack of honest reporting on behalf of Defendants, and misinformation they provide to crewmembers, many events go unreported and are kept from the public.

61. Defendants are motivated by profit by promoting sales of their products and services and by keeping the fleet out of maintenance.

62. All Defendants have downplayed the extraordinarily serious and dangerous nature that fume events pose, and gaslight those who raise their concern with fume events, as the following chronology illustrates:

### *2001*

63. On November 29, 2001, JetBlue issued 2001-T040, "Cabin Oil Fumes From 131-9A APU", in reference to an event that occurred on November 27, 2001 to notify the crew that the Honeywell APU is a possible source of oil fumes in the aircraft cabin as a result to an advisement issued by Airbus.

64. Airbus advised JetBlue that an operator experienced significant oil fumes in the cabin due to the accumulation of APU oil in the aircraft Environmental Control System ("ECS") and bleed ducting.

65. Honeywell investigated the event and found the APU's Load Compression Carbon Seal was worn.

66. A result of the worn seal, the oil leaks in the APU Load Compressor air path and into the ECS.

67. Oil accumulates in the ECS, which worsens over time, especially during the descent phases of flight.

10

68.    As discussed in 2001-T040, Honeywell performed an investigation of APU carbon seals that were under-going shop repair and was supposed to advise of findings and corrective action.

69.    All Defendants were on notice of these events that occurred over 20 years ago, but no adequate corrective action has been taken by them to date.

*2003*

70.    On May 29, 2003, JetBlue issued 2003-T033, "Airbus 320 MEL 79-35-01 IAE V2527-A5 Engine 'Eng 1 (2) Oil Filter Clog' Message After Stabilized Engine Start and Inflight".

71.    According to this publication, IAE V2500 engines in service have experienced No. 3 bearing fractures, which are often accompanied by an "ENG 1 (2) OIL FILTER CLOG" (ECAM) message, oil odor and/or engine stall/surge.

*2014*

72.    On October 31, 2014, JetBlue issued FAM 2014-IF049TR, "Smoke/Odor/Fumes in the Cabin" instructing that the following information to be incorporated into the Flight Attendant Manual ("FAM"):

> NOTICE
> This information notice informs Flight Attendants of the actions to take if there is smoke, strange odor, or fumes present in the cabin.
>
> ACTION
>
> **H. SMOKE/NOXIOUS ODOR/FUMES IN THE CABIN**
>
> 1.    Notify Flight Deck by clearly stating location, smell, and color of smoke (if present), and the actions being taken by the crew. Certain circumstances may prohibit the Flight Deck from responding immediately.
>
> 2.    Locate the source of the smoke/ odor/fumes, if possible. If conditions change to a fire event, follow appropriate firefighting procedures. Notify the Flight Deck once the source of the smoke/odor/fumes is discovered.

11

Case 1:35-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 17 of 248 PageID #: 44 INDEX NO. 716646/2025

3. If necessary, distribute wet towels and direct passengers to stay low, cover their nose and breathe through the wet towel or an article of clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

4. Make a PA to give clear assertive instructions to passengers to maintain control of the cabin, if necessary.

**NOTE:** Do not deploy passenger supplemental oxygen masks or use a POB. These masks do not filter smoke or fumes in the cabin.

73. No adequate protection or protective equipment were ever provided for use by the inflight or the passengers.

*2017*

74. On April 27, 2017, JetBlue issued Maintenance Alert Bulletin MAB-12-04-17-012, "(ATA 12) A320/A321 Cabin Odors – Oil Servicing V2500-A5 Engines and 131-9A APU's" to emphasis the importance of APU and engine oil servicing procedures to avoid oil odor in the cabin in response to an "increased trend of 'Oil Smell in the Cabin' reports on the JetBlue A320/A321 fleet since mid-year 2016."

75. "Shop findings noted oil leakage from the Front Bearing Compartment No. 1 carbon seal which allows oil leakage into the Low Pressure Compressor (LPC) stages 2-2.5 and then high pressure compressor (HPC) to the engine bleed air system.

76. Reports of oil smell can result in aircraft out of service, component, engine and APU removals.

77. In June, 2017, JetBlue and Airbus held a meeting on cabin odor events to understand toxicity concerns.

78. On July 26, 2017, JetBlue issued 2017-IF013TR "Responding to Smoke, Cabin Odor, and Fumes" directing Inflight Crewmembers to contact MedAire Support if feeling unwell following a cabin event involving smoke/odor/fumes.

12

79. On August 17, 2017, Joanna Geraghty of JetBlue sent an alert to its crew members stating:

> It's normal for aircraft to have a variety of smells – these are not unique to JetBlue and odors have appeared on aircraft for decades. Our Safety team has researched and compiled credible scientific studies that have consistently found no evidence of long-term health and safety impacts from these type of odor events. Airbus has also reached the same conclusion. Experts have consistently found that aircraft cabin air meets safety standards, and our Pilots and our Tech Ops team are properly trained to handle any situation or odor event that may arise.

80. The email states that JetBlue Vice President Safety, John Allen, was leading a working group to coordinate the response to cabin odor events.

81. JetBlue represented that it aimed to take the following measures to address cabin odors:

 a. Incorporate HEPA filters to remove odors;

 b. Transition to new engine and APU oil that produces fewer odors;

 c. New Environmental Control System (ECS) cleaning procedure, developed by the equipment manufacturer to help remove residual oil from leaks;

 d. Sending engines that had repeat odor events for independent shop testing, and confirmed there were no problems with the engines;

 e. Engaged with Airbus, the engine manufacturers, JetBlue's Tech Ops Business Partners, and other airlines for information sharing and best practices;

 f. Revised JetBlue's servicing instructions for engine and APU; and

 g. Instituted new Crewmember checklists and procedures to capture and track occurrences over time.

82. None of these procedures fixed the core problem, and failed to protect the inflight or passengers, and merely paid lip service to appease those asking questions.

13

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 19 of 248 PageID #: 46

83. On August 25, 2017, JetBlue issued Information Notice 2017-T015C, "(ATA 05) TROUBLESHOOTING – ODOR IN THE CABIN". JetBlue noted that it "takes all reports of odor, smell, poor air quality and 'dirty sock smells' seriously" and keeps a Cabin Odor Sheet ("COS"), Flight Crew and In-Flight debriefs.

84. The Notice further notes that possible causes of dirty socks / musty / oil odors are APU or engine oil leaks, or possibility contaminated ECS.

85. On September 7, 2017, JetBlue issued Information Notice 2017-T027 "(ATA 49) Airbus A320 / A321 – Honeywell 131-9A – APU – Proper Shutdown Procedure" attributing improper APU shutdowns for causing oil retention in the bearings and scavenge systems because oil will not be drained back to the Gearbox.

86. On November 13, 2017, JetBlue issued Information Notice 2017-T036TR "(ATA 00) Cabin Odor Reports (MX-270 and MX-271)" and Information Notice 2017-F044TR, "Cabin Odor Reporting Forms" introducing new forms to report cabin odor events.

87. However, Defendants discouraged reporting.

### *2018*

88. On January 18, 2018, JetBlue Manager, Inflight Standards and Regulatory Compliance, DeWayne Cook, issued Information Notice 2018-IF001TR "Responding to Smoke, Cabin Odor, and Fumes" to the Inflight Crewmembers to notify Crewmembers of the definitions, types, and sources of potential odors experienced onboard the aircraft, and their responses to aircraft odors.

89. Notice 2018-IF001TR defines potential odors which Crewmembers may experience during normal operations:

| Smoke | The byproduct of burning materials made visible by the presence of small particles. |
|---|---|

14

| Odor | A distinctive smell, especially an unpleasant one. |
|---|---|
| Fumes | Odorous, gaseous compounds, which are not visible. |

90.   JetBlue represented that its goal is "to create the safest possible working environment for our Crewmembers, Customers and Business Partners. Under normal operating conditions, odors, or fumes from these sources may be present in the cabin; however, when present, they very rarely exist at a concentration or level to cause concern."

91.   JetBlue continues: "Environmental conditions change the sense of smell and may cause odors to appear stronger in nature. Moisture, in particular, enhances the sense of smell as humidity readily carries odor molecules to the nasal passage. These types of odors may begin to dissipate as the aircraft exists the moisture-laden environment."

92.   JetBlue describes five categories of "aircraft odors", including (1) Smoke/Fire Odors; (2) Cabin-Source Odors; (3) External-Source Odors; (4) Aircraft Environmental System Odors; and (5) Undetermined Hypoxia. Note – None of the foregoing "aircraft odors" concern "Fumes".

93.   This publication further tells Crewmembers:

**Note**

If Customers are exhibiting physiological effects from a persistent odor occurring during all phases of flight, that is strong in intensity, increases over time, detected by multiple members of the Crew and Customers and significantly irritates eyes, nose or throat; distribute wet paper towels and direct Customers to remain low and breathe through the wet paper towel or clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

94.   On January 18, 2018, JetBlue issued Information Notice 2018-F002TR "Airbus Recognition and Isolation Guidance" to the Flight Crewmembers requiring them to use due diligence and sound judgment when they recognize an odor, and to immediately address health or safety concerns of Customers or Crew.

15

95.    Notice 2018-F00TR provides the following description of Aircraft Environmental System Odor Levels:

| Level 1 | • A Transient (non-Persistent) Odor.<br>• Odor is not strong and does not severely affect eyes, nose, or throat. Mild irritation may occur but not widespread and symptoms subside.<br>• Odor dissipates over time. |
| --- | --- |
| Level 2 | • A Persistent Odor.<br>• Odor remains or may dissipate over time.<br>• Odor is detectable by multiple Crewmembers or Customers<br>• Mild to moderate irritation occurs in two or more Crewmembers or customers |
| Level 3 | • A Persistent Odor<br>• Odor obvious to both Crewmembers and Customers<br>• Odor is strong in intensity, increases over time, or stabilizes with a significant intensity<br>• Odor significantly irritates eyes, nose, or throat |

96.    On January 18, 2018, JetBlue issued Information Notice 2018-F003TR "Flight Deck and Cabin Odors and Fumes" recognizing the issue of cockpit and cabin odors, and issued new FOM policies addressing cockpit and cabin odors.

97.    JetBlue again represented that it has a commitment to safety for its Customers and Crewmembers, and that its goal is "to create the safest possible working environment."

98.    JetBlue stated:

NOTE

It is difficult to discern a fume from an odor. Although the presence of an unidentified odor does not necessarily indicate the presence of fumes, Crewmembers shall address any odor which may be cause for concern.

The presence of an odor alone does not necessarily require Flight Crew action or a medical response.

99. JetBlue further noted that:

16

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 22 of 248 PageID #: 49

> Crewmembers should be aware that the longer they are exposed to a certain odor, the less they may be able to perceive it. This effect is known as "olfactory fatigue". To counteract olfactory fatigue, Flight Deck Crewmembers may consider utilizing their oxygen mask to isolate from the odor temporarily. This will allow the olfactory senses to recover and aid in determining if the odor is still present, if the intensity is changing, and how to describe the odor (what does it smell like).

100. JetBlue continuously told the Crewmembers that odors experienced on the plane are not harmful and did nothing meaningful to correct the fume event issue in an effort to keep its fleet in service at the risk of jeopardizing the safety of inflight and passengers.

101. On November 15, 2018, JetBlue issued Information Notice 2018-Y035TR concerning "Cabin Odor Notifications (Eff. 12/1/18)", recognizing the occurrence of odor events and the Safety Data and Analysis team.

102. Still, Defendants made no appropriate corrective action.

*2019*

103. On April 18, 2019, Ed Baklor, JetBlue Head of Customer Care and Programs notified the Crewmembers that determining whether an odor or fumes is normal or not, to avoid unnecessary disruptions, and "if Inflight decides not to operate once a plane has been cleared, it is considered a refusal to fly and the Crewmember may be subject to disciplinary action."

104. He further told Crewmembers to only call MedAire during cabin odor/fume events if it involves a non-normal odor or fume and they exhibit physical symptoms that prevents them from performing their duties as an inflight crewmember.

105. On September 19, 2019, Senator Richard Blumenthal and Congressman John Garamendi, sponsors of the *Cabin Air Safety Act of 2019*, wrote to JetBlue about their concern about fume events, and questioned JetBlue about them.

106. They also noted:

17

that the proper term for these events, is either 'fume event' or 'cabin air safety event'. There have been reports that your company is reclassifying these as 'odor events' in an apparent attempt to skirt Federal Aviation Administration reporting standards, as well as local workers' compensation laws. This raises significant doubt regarding JetBlue's intention to faithfully adhere to existing health, safety, and labor law.

107. John M. Allen of JetBlue responded on October 10, 2019 and stated: "we have found this to be a very emotional issue and many myths have been propagated through social media to feed crewmember angst over this issue."

108. Mr. Allen further stated: "Through our research from each reported odor event, we found that none of the reported odor events resulted in JetBlue crewmembers or customers receiving unhealthy air."

109. In sum, Defendant JetBlue told Congress that the fume event issue is a product of emotional angst and not harmful, which was false.

110. On September 6, 2022, JetBlue issued a publication to its Crewmembers stating that the "dirty sock smell" (the byproduct of oil decay) is not toxic, and attributed the headaches, nausea, and dizziness to their individual sensitivities.

*2023*

111. According to the JetBlue Flight Attendant Manual ("FAM") §17.23, (Rev. March 8, 2023) "Inflight Crewmembers may not make any written or verbal statements to the press or news media without prior briefing or approval. Direct all media inquiries to the JetBlue Media Relations Team at 718-709-3089."

112. Essentially, the inflight was not allowed to disclose that which Defendants wish to keep out of the public eye: toxic chemicals can pour into the cabin and cause such severe injuries to the inflight, passengers, including those who are immunocompromised, small children and babies.

18

Case 1:25-cv-06682-ENV-TAM Document 1-3 Filed 12/03/25 Page 24 of 248 PageID #: 51

*2024*

113.  On May 21, 2024, JetBlue issued Information Notice 2017-T015 K, "(ATA 05) Troubleshooting Odor in the Cabin", which recognizes "extensive expert and industry research, document review and working with the JetBlue Safety Department," concerning odor in the cabin and supposedly implements a plan of action.

114.  This publication recognizes that APU oil leaks and Skydrol leaks from the landing gear area are responsible for the majority of cabin odor events and that it is "critical to thoroughly investigate all events using the Airbus TSM 05-50-00-0810-831-A, Identification of the Cause of Cabin Odor, Smoke or Fume."

115.  JetBlue further states in this document that "JetBlue takes all reports of odor, poor air quality and 'dirty sock smells' seriously and performs robust troubleshooting of the cause of these odors", which is far from the case.

116.  JetBlue also states "Ambient air may smell musty during precipitation/high humidity, or when passing through clouds. **If the odor is no longer present, there is no corrective action.**" (emphasis added).

117.  It is notable that toxic fumes do not always have an odor, and may dissipate over time – that does not mean no dangerous toxic fume event occurred that can seriously and permanently harm those exposed to this poison.

118.  This guidance allowed Defendants from investigating countless fume events by stating that corrective action is unnecessary after the air has dissipated.

119.  Still, crewmembers were repeatedly told that there was nothing to be concerned with.

19

120. They were told to maintain a calm cabin environment throughout the event, and were not provided with appropriate equipment for them, or passengers, to use in the event of a fume event.

121. They were told if the aircraft is cleared to fly, than the flight attendants must continue to fly, or else it would be considered a refusal to fly and the crewmember may be subject to disciplinary action.

### *Plaintiff Kate Dybdahl's Event*

122. On September 3, 2022, JetBlue Flight Number 673, was operating an Airbus 321, Tail Number N988JT from Boston, Massachusetts to Aruba when it experienced a fume event.

123. At the time of the incident, Plaintiff Kate Dybdahl was 44 years old and a flight attendant for 17 years.

124. Just prior, the same aircraft, N988JT, Flight 509 diverted due to a customer having trouble breathing and was taken to the hospital.

125. Instead of fixing the leak, (documented after the fume event on F1773 on August 24, 2022), JetBlue cleaned up the standing oil, turned off the APU, and put the aircraft back into service.

126. The flight crew and inflight, including Plaintiff Kate Dybdahl, noticed a dirty sock smell, which was worsening, causing Plaintiff Kate Dybdahl to become nauseous.

127. A family with a small child and infant moved to the back to get fresh air once the door was opened, mentioning that they were feeling nauseous.

128. Other passengers were experiencing nausea, were complaining about the odor, and one child had a nosebleed.

129.    Although customers were symptomatic, none of the Defendants notified them about the event.

130.    Odor went throughout the cabin after the APU bleed was turned on.

131.    Plaintiff Kate Dybdahl also repeatedly asked for Medlink, but no one responded.

132.    Although Emergency Medical Servies eventually met the aircraft, and the crew was transported to the hospital, Defendant JetBlue failed to provide timely medical attention to the visibly effected crew.

133.    While the passengers were deplaning, the flight crew had left during this emergency.

134.    An FCIR was sent to the FAA with an inaccurate account of the event, which downplays the severity of the medical emergency that had occurred.

135.    Plaintiff Kate Dybdahl noticed that fumes were still present, despite the winds, and warned the ground crew members that the airplane was contaminated and that everyone should deplane.

136.    The ground crew ignored Plaintiff Kate Dybdahl's multiple warnings, they finished the turnaround, which caused one ground crew member to require medical attention, making it 5 in total.

137.    Eventually, Plaintiff Kate Dybdahl and the others were taken to the hospital.

138.    On September 4, 2022, Plaintiff Kate Dybdahl woke up with a persistent headache, nausea, and tingling/numbness in her hands, shins, and face.

139.    Plaintiff Kate Dybdahl flew home on Flight F974, but was not on the electronic manifest, and her schedule was altered to remove any reference to the layover or the flight home, neither of which she was paid for.

21

140.    Plaintiff Kate Dybdahl also received disciplinary UNAs on her schedule.

141.    On September 5, 2022, Plaintiff Kate Dybdahl woke up with worsening numbness, tingling, headache, ringing ears, floating sensation and difficulty focusing. By the afternoon, the symptoms escalated, and Plaintiff Kate Dybdahl was confused, and could not drive.

142.    Plaintiff Kate Dybdahl and all four inflight crew members went to the hospital when they returned to Boston.

143.    The subject aircraft was ferried unpressurized to FLL, where Packs 1 and 2 were placed on MEL, and the aircraft was decontaminated.

144.    The subject aircraft was sent into service.

145.    The FAA Audit of this event confirmed that the APU was causing the foul odor due to an APU internal oil leak.

146.    This FAA Audit was triggered by Plaintiff Kate Dybdahl's complaint, and no SDRs were filed.

147.    On August 24, 2022, one week prior to Plaintiff's event, the same aircraft went into service following flight crew reports that the aircraft smelled like dirty socks and sour milk throughout the cabin.

148.    Following the August 24, 2022 event, the APU was placed on restrictions under the MEL and had evidence of an oil leak.

149.    It was also noted that the aircraft had a previous 30 day history of incidents.

150.    Plaintiff Kate Dybdahl had no history of cognitive impairment, tinnitus, skin irritation, depression, fatigue, or sleep disruption prior to the subject incident.

151.    As a result of the incident, Plaintiff Kate Dybdahl was seriously injured, including nausea, tingling, numbness, cognitive impairment, disorientation, confusion, lightheadedness,

22

tinnitus, skin irritation, headaches, memory deficits, brain fog, anxiety, depression, fatigue, sleep disruption, mood swings, visual changes, chemical sensitivity, and hot flashes.

152.    As a result of the incident, Plaintiff Kate Dybdahl also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

153.    Plaintiff Kate Dybdahl underwent therapies and treatments for her injuries, including chelation therapy, autoimmune treatment, vitamin IV therapy, hydro colon therapy, hyperbaric chamber therapy, oxygen therapy, visual therapy, infrared sauna treatment, vestibular therapy, neuropsychological testing, multistep oxygen therapy, and other various testing and will require future treatment for their ongoing nature.

154.    As a result of this incident, Plaintiff Kate Dybdahl was forced to spend money on medical treatments and therapies and is permanently scarred.

155.    As a result of this incident, Plaintiff Kate Dybdahl has further experienced mental anguish, physical and cognitive impairments, and depression.

156.    This has produced anxiety about going or being anywhere that Plaintiff Dybdahl could be exposed to chemicals, which make here symptomatic.

157.    As a result of this incident, Plaintiff Kate Dybdahl was deprived of her ability to work and enjoyment of life.

158.    As a result of this incident, Plaintiff Kate Dybdahl has suffered the following damages:

a.    Bodily injury;

b.    Disability;

c.    Pain and suffering

23

    d.      Mental anguish;

    e.      Loss of the capacity for the enjoyment of life;

    f.      Medical expenses;

    g.      Lost past earnings and net accumulations;

    h.      Lost future earnings and net accumulations;

    i.      Pre-judgment interest;

    j.      Post-judgment interest; and

    k.      Other damages to be determined at trial.

159. But for this incident, Plaintiff Kate Dybdahl would not have sustained the serious injuries and damages set forth above.

160. Further, Plaintiff Paul Dybdahl had to care for Kate Dybdahl as she received treatment for the injuries she sustained in the fume event.

161. As a result of this incident, Plaintiff Paul Dybdahl has suffered the following damages:

    a.      Loss of consortium;

    b.      Pain and suffering;

    c.      Mental anguish;

    d.      Pre-judgment interest;

    e.      Post-judgment interest; and

    f.      Other damages to be determined at trial.

*Plaintiff Graham Lehr's Event*

162. At the time of the incident, Plaintiff Graham Lehr was 49 years old and a flight attendant since February 3, 2002.

24

163.    On December 16, 2022, JetBlue Flight Number 673, was operating an Airbus 320, Tail Number N523JB from Boston, Massachusetts to Aruba when it experienced a fume event during final descent.

164.    All inflight crew members detected the presence of the dirty musty sock smell, which was confirmed by both pilots.

165.    Once on the ground, the outbound pilots also confirmed fumes, as well as the contract MX in AUA.

166.    Plaintiff Graham Lehr was exposed for over 30 minutes before she was able to exist the aircraft.

167.    The flight experienced turbulence upon descent, and Plaintiff Graham Lehr put on a surgical mask due to experiencing burning in the back of her throat and a headache and became woozy and unsteady on her feet.

168.    The entire flight crew contacted Medlink, and were sent to the emergency room in AUA, and received a UNA code on their schedule as a result.

169.    Defendant Jetblue's MSR did not report crew injuries for Flight Number 673, nor were there any SDRs submitted.

170.    Rather Defendant Jetblue ferried (no pressure, no bleed, due to APU issues) N523JB on flight Number 8362 on December 17, 2022, in which the reported fume event was linked, and SDRs were submitted for this flight.

171.    The APU was leaking for Flight Number 673 on December 16, 2022.

172.    Plaintiff Graham Lehr flew to base December 17, 2022, then returned home on December 18, 2022.

25

Case 1:35-cv-06682-ENV-TAM Document 1-3 Filed 12/03/25 Page 31 of 248 PageID #: 58

173.    On December 20, 2022, Plaintiff Graham Lehr's symptoms were persistent and concerning; she went to urgent care.

174.    Plaintiff Graham Lehr went to six ED's in 10 months as a result of her injuries including, but not limited to: shortness of breath, headaches, heart palpitations, chest tightness, cognitive delays, brain fog, fatigue, ringing in ears, soreness in back of throat, numbness, tingling, disorientation, unsteady on feet.

175.    The subject aircraft had a previous 30-day history of fume events, including one on December 9, 2022, one week prior to the incident.

176.    As a result of the accident, Plaintiff Graham Lehr has been experiencing fatigue, respiratory issues, chest tightness, dizziness, headaches, burning in the throat, cognitive impairment, brain fog, memory loss, trouble sleeping, numbness and tingling in upper half of body, redness and swelling in face and neck, difficulty standing and walking, and anxiety.

177.    Plaintiff Graham Lehr has been receiving multi-step oxygen therapy, therapy by use of protective breathing equipment, infrared sauna treatment, red light therapy, vitamin IVs, acupuncture, chiropractic treatments, mental health therapy, vitamins, nutrition, reiki, and heart rate variability therapy, hyperbaric oxygen therapy, hydro-colon cleanse, autoimmune treatment, and chelation.

178.    Plaintiff Graham Lehr's methacholine test demonstrates a 43% decrease in pulmonary function.

179.    Plaintiff Graham Lehr's has undergone various tests that indicate toxic exposure.

180.    Plaintiff Graham Lehr had no history of cognitive impairment, fatigue, or respiratory issues prior to the subject incident.

FILED: QUEENS COUNTY CLERK 09/03/2025 02:27 PM INDEX NO. 725846/2025
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 09/03/2025

181.     As a result of the incident, Plaintiff Graham Lehr was seriously injured, including physical and cognitive impairment, sleep disruptions, mental anguish, redness and swelling in face and neck, respiratory distress, major physical fatigue, autonomic dysfunction, reactive airways disease, neurocognitive disorder, sensitivity to occupational chemical, deficit of vestibulo-ocular reflex, toxic encephalopathy, organophosphate toxicity, shortness of breath, palpitations, numbness, tingling, brain fog, post-exertion malaise, wheezing.

182.     As a result of this incident, Plaintiff Graham Lehr also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

183.     As a result of this incident, Plaintiff Graham Lehr further is also unable to travel by plane, train, boat or public transportation and cannot stay in hotels.

184.     As a result of this incident, Plaintiff Graham Lehr was forced to spend money on medical treatments and therapies and is permanently scarred.

185.     As a result of this incident, Plaintiff Graham Lehr has been deprived of her ability to work and enjoyment of life.

186.     As a result of this incident, Plaintiff Graham Lehr has suffered the following damages:

   a.   Bodily injury;

   b.   Disability;

   c.   Pain and suffering

   d.   Mental anguish;

   e.   Loss of the capacity for the enjoyment of life;

   f.   Medical expenses;

27

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 33 of 248 PageID
#: 60
INDEX NO. 720846/2025

g.  Lost past earnings and net accumulations;

h.  Lost future earnings and net accumulations;

i.  Pre-judgment interest

j.  Post-judgment interest; and

k.  Other damages to be determined at trial.

187.    But for this incident, Plaintiff Graham Lehr would not have sustained the serious injuries and damages set forth above.

188.    Further, Plaintiff Chad Lehr had to care for Plaintiff Graham Lehr as she received treatment for the injuries she sustained in the fume event, and assumed the role as primary parent to a neurodivergent child.

189.    As a result of this incident, Plaintiff Chad Lehr has suffered the following damages:

a.  Loss of consortium;

b.  Pain and suffering;

c.  Mental anguish;

d.  Pre-Judgment Interest;

e.  Post-Judgment Interest; and

f.  Other damages to be determined at trial.

### *Plaintiff Julia Michele Craig's Event*

190.    At the time of the 2024 incident, Plaintiff Julia Craig was 60 years old and was a flight attendant since January, 2003.

191.    Plaintiff Julia Craig was involved in four separate fume event incidents on Airbus 320 and 321 aircraft.

28

192. The first fume event occurred in approximately 2013 in an Airbus 320 when Plaintiff Julia Craig noticed an odor and blue cloud and stuck on the airplane for over 30 minutes, which the pilot explained to be a fume event.

193. The second fume event occurred on March 29, 2023, Flight Number 673, N948 from Boston to Aruba in an Airbus 321.

194. Plaintiff Julia Craig sought medical attention.

195. Plaintiff Julia Craig filed a report after being assigned a return flight that landed with less than the FAA-mandatory 8 hours of rest.

196. Despite this, Plaintiff Craig was not removed from her flight the next day, and as a result received disciplinary points and lost pay.

197. Plaintiff Julia Craig filed a complaint with the FAA regarding violation of the minimum rest requirements, as well as a whistleblower complaint with OSHA for retaliation after reporting the fume event and experiencing disciplinary action and loss of pay.

198. The third fume event occurred on April 10, 2023, Flight Number 673, N971, from Aruba to Boston in an Airbus 321.

199. The fourth fume event occurred on August 21, 2024, JetBlue Flight Number 256, was operating an Airbus 321, Tail Number 563 from Bozeman, Montana to Boston, Massachusetts.

200. The Safety Action report provided that the "APU was found to have oil on it. Removed and replaced in accordance with AMM-49-91-00.

201. As a result of the accident, Plaintiff Julia Craig experienced visual difficulties, impaired executive function, autonomic dysfunction, nausea, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping and headaches.

29

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 35 of 248 PageID #: 62

202. Plaintiff Julia Craig had no history of visual difficulties, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping or headaches prior to the subject incident.

203. As a result of this incident, Plaintiff Julia Craig was diagnosed with: chemical sensitivity; cognitive dysfunction; inspiratory obstruction; convergence insufficiency; visual Discomfort – Visual Motion Sensitivity; and aero toxic syndrome.

204. As a result of this incident, Plaintiff Juila Craig also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

205. Plaintiff Julia Craig underwent eye therapy, vocal cord therapy, and has been recommended to undergo cognitive therapy, bio-feedback, testing with neuropsychiatrist and will require future treatment.

206. As a result of this incident, Plaintiff Julia Craig was forced to spend money on medical treatments and therapies and is permanently scarred.

207. As a result of this incident, Plaintiff Julia Craig has been deprived of her ability to work and enjoyment of life.

208. As a result of this incident, Plaintiff Julia Craig has suffered the following damages:

    a. Bodily injury;

    b. Disability;

    c. Pain and suffering

    d. Mental anguish;

    e. Loss of the capacity for the enjoyment of life;

    f. Medical expenses;

30

Case 1:25-cv-06682-ENV-TAM   Document 1-3   Filed 12/03/25   Page 36 of 248 PageID #: 63

g. Lost past earnings and net accumulations;

h. Lost future earnings and net accumulations;

i. Pre-Judgment Interest

j. Post-Judgment Interest; and

k. Other damages to be determined at trial.

209. But for this incident, Plaintiff Julia Craig would not have sustained the serious injuries and damages set forth above.

## COUNT I
### Plaintiffs v. Defendant JetBlue
### (Negligence)

210. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

211. Defendant JetBlue was the owner, operator, and maintainer of the subject aircraft.

212. Defendant JetBlue failed to exercise reasonable care in the operation of the subject aircraft.

213. Further, Defendant JetBlue failed to exercise reasonable care for the protection of their flight crew and passengers in the operation of the aircraft during the subject flights.

214. Defendant JetBlue failed to exercise reasonable care or take adequate corrective action to address the pervasive issue with fume events in its fleet that caused the injuries to Plaintiffs.

215. Defendant JetBlue breached its duty and was negligent, grossly negligent, reckless, willful and/or wanton in that it, among other things:

31

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 37 of 248 PageID #: 64

a.     failed to provide air transportation and protection in a manner reasonably calculated to ensure the safety of the flight crew and passengers on the subject aircraft and the safe completion of the subject flights;

b.     failed to safely transport Plaintiffs Kate Dybdahl, Julia Craig, and Graham Lehr;

c.     failed to adequately warn Plaintiffs of the dangers of the subject flight;

d.     failed to maintain the subject aircraft in a safe manner;

e.     failed to own or operate the subject aircraft with due care and caution in accordance with applicable procedures and safe practices;

f.     failed to provide safe operating procedures, training, instructions, guidelines, and equipment for the incident flight;

g.     failed to exercise safe and effective control over the aircraft and to protect against unreasonable risk of injury;

h.     failed to equip the subject flight with adequate equipment to protect those aboard;

i.     failed to properly and adequately inspect, overhaul, repair, equip, modify, and maintain the subject aircraft;

j.     failed to exercise the high degree of care required of a common carrier in the exercise of its activities;

k.     failed to provide air taxi transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

l.     providing a defective bleed air system;

32

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 38 of 248 PageID #: 65   INDEX NO. 726046/2025

m.      providing a defective aircraft;

n.      providing a defective aircraft APU;

o.      providing inadequate instructions to deal with fume events;

p.      failed to provide adequate warnings on how to deal with fume events;

q.      failed to report defects;

r.      failed to investigate or report fume events;

s.      failed to take corrective action to respond to and prevent fume events;

t.      discouraged reporting of fume events;

u.      penalizing those injured on reporting fume events;

v.      failed to correct known defects caused by the defective bleed air system;

w.      failed to warn about the effects of fume events and frequency and severity of fume events;

x.      failed to respond to fume events that are brought to Defendant's attention;

y.      failed to provide those onboard with appropriate protective equipment to utilize in the face of a fume event;

z.      misrepresented the severity and frequency of fume events;

aa.     provided improper and misleading information on how to deal with fume events;

33

Case 1:25-cv-06682-ENV-TAM    Document 1-3    Filed 12/03/25    Page 39 of 248 PageID #: 66

bb.     carelessly, recklessly, and negligently failed to comply with applicable Federal Aviation Rules and Regulations;

cc.     carelessly, recklessly, and negligently failed to comply with Part 121 of the Federal Aviation Rules and Regulations; and

dd.     failed in other respects to be shown at trial.

216.    That as a direct and proximate result of the conduct of Defendant JetBlue, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

### COUNT II
**Plaintiffs v. Defendant JetBlue**
**(Negligent Misrepresentation and Fraud)**

217.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

218.    Defendant JetBlue engaged in false representations concerning the severity and frequency of fume events.

219.    As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

220.    Defendant told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

221.    After experiencing a fume event, Plaintiffs Kate Dybdahl and Julia Craig were subjected to disciplinary action and lost pay.

34

222.   Plaintiffs Kate Dybdahl, Graham Lehr, and Julia Craig have been unable to return to work following the fume events that they encountered.

223.   Defendant threatened all of the inflight that they could also be subject to disciplinary action and lost pay in similar circumstances.

224.   Defendant also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

225.   Defendant also failed to provide the inflight or passengers with sufficient protective equipment.

226.   Defendant underreported fume events and created protocols to ensure that fume events were kept quiet.

227.   Defendant knew that the statements it made were false.

228.   Instead, Defendant systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

229.   Plaintiffs, and each of them, relied upon Defendant's statements, which turned out to be false.

230.   As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT III**
**Plaintiffs v. Airbus Defendants**
**(Strict Liability)**

231.   Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

35

232. The Airbus Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject aircraft for each Plaintiff.

233. They are also the holder of the Type Certificate Holders for the Airbus family of aircraft.

234. Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

235. The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

236. The design defects which rendered the aircraft unreasonably dangerous and defective were, but are not limited to, the following:

237. The subject aircraft' ventilation systems allowed for bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

238. The subject aircraft lacked adequate air quality monitors, sensor, or alarms.

239. The subject aircraft contain no systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

240. The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

241. The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

242. As a result of the design defect, Plaintiffs suffered injuries and damages.

36

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IV
### Plaintiffs v. Airbus Defendants
### (Negligence)

243.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

244.    The Airbus Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

245.    The Airbus Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

246.    The Airbus Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft, such that their ventilation systems allowed contaminated bleed air to enter the cabin of the subject aircraft.

247.    The Airbus Defendants failed to disclose the serious and pervasive issues involving fume events.

248.    The Airbus Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft without an adequate air quality monitor, sensor or alarm to detect bleed air contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events.

249.    The Airbus Defendants, in the face of known defects, failed to correct such defects to the detriment of those who were onboard.

37

Case 1:25-cv-06682-ENV-TAM Document 1-3 Filed 12/03/25 Page 43 of 248 PageID #: 70

250. As a direct and proximate result of the conduct of the Airbus Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT V**
**Plaintiffs v. Airbus Defendants**
**(Breach of Express and Implied Warranties of Merchantability)**

251. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

252. The Airbus Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

253. The Plaintiffs relied upon such warranties.

254. The Airbus Defendants breached their warranties to the Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the subject aircraft that were not reasonably safe for its intended use or purpose.

255. As a direct and proximate result of the Airbus Defendants' breach, Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

256. The Airbus Defendants engaged in false representations concerning the severity and frequency of fume events.

38

257. The Airbus Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

258. After experiencing a fume event, Plaintiffs Kate Dybdahl and Julia Craig were subjected to disciplinary action and lost pay.

259. The Airbus Defendants threatened all of the inflight flight attendants that they could also be subject to disciplinary action and lost pay in similar circumstances.

260. The Airbus Defendants also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

261. The Airbus Defendants also failed to provide the inflight or passengers with sufficient protective equipment.

262. The Airbus Defendants underreported fume events and created protocols to ensure that fume events were kept quiet.

263. The Airbus Defendants knew that the statements it made were false.

264. Instead, the Airbus Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

265. Plaintiffs, and each of them, relied upon the Airbus Defendants' statements, which turned out to be false.

266. As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

39

## COUNT VI
### Plaintiffs v. Airbus Defendants
### (Negligent Misrepresentation and Fraud)

267.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

268.    The Airbus Defendants engaged in false representations concerning the severity and frequency of fume events.

269.    As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

270.    The Airbus Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

271.    The Airbus Defendants, individually and in conjunction with Defendant JetBlue and the Honeywell Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

272.    The Airbus Defendants also failed to provide the inflight or passengers with sufficient protective equipment.

273.    The Airbus Defendants underreported fume events, and created protocols to ensure that fume events were kept quiet.

274.    The Airbus Defendants knew that the statements they made were false.

275.    Instead, the Airbus Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

276.    Plaintiffs, and each of them, relied upon the Airbus Defendants' statements, which turned out to be false.

277.    As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VII
### Plaintiffs v. Honeywell Defendants
### (Strict Liability)

278.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

279.    The Honeywell Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject APU.

280.    The Honeywell Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

281.    The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

282.    The design defects which rendered the aircraft and APU unreasonably danger and defective were, but are not limited to, the following:

283.    The subject aircraft' ventilation systems allowed for bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

284.    The subject aircraft and APU lacked adequate air quality monitors, sensor, or alarms.

285.    The subject aircraft contain no systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

286.    The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

41

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 47 of 248 PageID #: 74

287. The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

288. As a result of the design defect, Plaintiffs suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VIII
### Plaintiffs v. Honeywell Defendants
### (Negligence)

289. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

290. The Honeywell Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

291. The Honeywell Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

292. The Honeywell Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft APUs.

293. The Honeywell Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject APUs without an adequate air quality monitor, sensor or alarm to detect contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events.

294. As a direct and proximate result of the conduct of the Honeywell Defendants, Plaintiffs sustained injuries and damages.

42

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IX
### Plaintiffs v. Honeywell Defendants
### (Breach of Express and Implied Warranties of Merchantability)

295.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

296.    The Honeywell Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

297.    Plaintiffs relied upon such warranties.

298.    The Honeywell Defendants breached its warranties to Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the APU's that were not reasonably safe and effective for its intended use or purpose.

299.    As a direct and proximate result of the defendant's breach, the Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

43

## COUNT X
### Plaintiffs v. Honeywell Defendants
### (Negligent Misrepresentation and Fraud)

300. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

301. The Honeywell Defendants engaged in false representations concerning the severity and frequency of fume events.

302. As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

303. The Honeywell Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

304. The Honeywell Defendants, individually and in conjunction with JetBlue and the Airbus Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

305. The Honeywell Defendants also provides faulty and defective APUs, which the Honeywell Defendants know are defective and risk the safety of anyone flying on an aircraft equipped with their APUs.

306. The Honeywell Defendants underreported fume events, and failures in their APUs to ensure that fume events were kept quiet.

307. The Honeywell Defendants knew that the statements they made were false.

308. Instead, the Honeywell Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

309. Plaintiffs, and each of them, relied upon the Honeywell Defendants' statements, which turned out to be false.

44

NYSCEF DOC. NO. 1

310. As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XI
### Plaintiffs v. All Defendants
### (Negligent Infliction of Emotional Distress)

311. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

312. Defendants owed duties to Plaintiffs, as described above.

313. Defendants breach of duties proximately caused the accident and was a proximate cause of the emotional distress that naturally resulted to Plaintiffs as a result of Defendants' actions.

314. Plaintiffs were flight attendants aboard the subject flights when the fume events occurred, and therefore experienced and observed the sequence of events that led to their injuries and were within the zone of danger of the accident, and witnessed the injuries sustained by passengers and fellow crew members.

315. The impact left no doubt in Plaintiffs' minds that they would be injured, and they were.

316. As a direct and proximate result of Defendants' negligence and/or breach of contract, Plaintiffs suffered and continue to suffer emotional and physical injuries which were a direct result of the incident and were foreseeable to Defendants.

317. Plaintiffs suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the events and serious bodily injury.

45

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XII
### Plaintiffs Paul Christian Dybdahl and Chad Ronald Lehr v. All Defendants
### (Loss of Consortium)

318. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

319. Plaintiff Paul Dybdahl was 44 years old at the time of the incident.

320. Plaintiff Chad Lehr was 54 years old at the time of the incident.

321. At the time of the accident, the Lehr Plaintiffs had a minor child, and he had to assume additional responsibility to account for Plaintiff Graham Lehr's injuries.

322. Plaintiffs Paul Dybdahl and Chad Lehr at all times relevant hereto was the spouses of Kate Dybdahl and Graham Lehr, respectively.

323. The aforementioned fume events required Plaintiffs Paul Dybdahl and Chad Lehr to take time away from their work and family to care for the injuries sustained by their wives in the fume events.

324. Further, Plaintiffs Paul Dybdahl and Chad Lehr lost society, companionship, consortium and the support of Plaintiffs Kate Dybdahl and Graham Lehr, respectively, due to the actions of Defendants resulting in the fume events.

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

46

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 52 of 248 PageID #: 79

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment and relief on all Causes of Action as follows:

1. An order awarding Plaintiffs compensatory, general, and special damages, and punitive damages in an amount to be proven at trial;

2. For medical monitoring;

3. Pre-judgment and post-judgment interest;

4. Attorney fees and costs; and

5. Such other relief as determine by the Court.

## JURY DEMAND

Plaintiffs respectfully request that a jury be convened to try the factual issues of this case.

Dated: September 3, 2025

CASCIONE PURCIGLIOTTI AND GALLUZZI P.C.

Thomas G. Cascione, Esq.
Kelly Murtha, Esq.
Cascione Purcigliotti and Galluzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY  10709-4419
(914) 961-1263

*Attorneys for Plaintiffs*

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.

47

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 53 of 248 PageID #: 80

INDEX NO. 725646/2025

RECEIVED NYSCEF: 09/03/2025

*(Pro Hac Vice Anticipated)*
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email:  cdevers@dmllc.law
mmiska@dmllc.law

48

## ATTORNEY VERIFICATION

STATE OF NEW YORK         )

                                          ) ss

COUNTY OF WESTCHESTER     )

I, the undersigned, an attorney admitted to practice in the courts of New York State, under penalty of perjury state that I am one of the attorneys for the Plaintiff(s) in the action herein.

I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof; the same is true to my own knowledge except as to those matters stated therein to be alleged on information and belief, and as to those matters I believe to be true.

This verification is made by me and not by my client(s) because my client(s) are presently residing out-of-state and outside the County of where I maintain my offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigations conducted by my office.

DATED:      Eastchester NY
              September 3, 2025

_____
THOMAS G CASCIONE, ESQ

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS

| | |
|---|---|
| **KATE SUZANNE DYBDAHL; et al.** | Hearing Date: |
| Plaintiff/Petitioner | INDEX NO:    **725646/2025** |
| VS. | Index Date:    **09/03/2025** |
| **JETBLUE AIRWAYS CORPORATION AIRBUS AMERICAS, INC.; et al.** | AFFIRMATION OF SERVICE OF: |
| Defendant/Respondent | **Complaint; Summons** |

Received by **Saddam Ahmad**, on the **9th day of September, 2025 at 2:29 AM** to be served upon **JetBlue Airways Corporation** at **27-01 Queens Plaza North, Queens, Queens County, NY 11101.**

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **10th day of September, 2025 at 1:16 PM** at the address of **27-01 Queens Plaza North, Queens, Queens County, NY 11101,** this affiant served the **COMPLAINT; SUMMONS** upon **JetBlue Airways Corporation** in the manner described below:

**CORPORATE SERVICE**, by personally delivering 1 true and correct copy(ies) of the **COMPLAINT; SUMMONS**, with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

**THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:**
**Natasha Employee, I delivered the documents to Natasha Employee who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired black female contact 35-45 years of age, 5'6"-5'8" tall and weighing 140-160 lbs with glasses.**

**The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.**

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on ___Sept 12 2025___.

_[signature]_

**Saddam Ahmad, Reg. # 2129026-DCWP, NYC DCWP, NY**
ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

Page 1 of 1
FOR:  **Devers Miska Law**
REF:  **Fume Events**

Tracking #: **0185768877**

FILED: QUEENS COUNTY CLERK 09/29/2025 05:49 AM
NYSCEF DOC. NO. 8

INDEX NO. 725646/2025
RECEIVED NYSCEF: 09/29/2025

IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS

| | |
|---|---|
| Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, Julia Michele Craig<br><br>Plaintiff/Petitioner<br><br>vs.<br><br>JetBlue Airways Corporation, Airbus Americas Inc., Airbus S.A.S., Airbus SE, Honeywell International Inc., Honeywell Aerospace US Inc., Honeywell Aerospace Technologies, John Does 1-10<br><br>Defendant/Respondent | Hearing Date:<br><br>INDEX NO:     725646/2025<br>Index Date:    09/03/2025<br>AFFIRMATION OF SERVICE OF:<br>Complaint; Summons |

Received by Bidemi Bolarin, on the 15th day of September, 2025 at 12:07 PM to be served upon Airbus Americas, Inc. at 2550 Wasser Ter Ste 9100, Herndon, Fairfax County, VA 20171.

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the 22nd day of September, 2025 at 10:09 AM at the address of 2550 Wasser Ter Ste 9100, Herndon, Fairfax County, VA 20171, this affiant served the COMPLAINT; SUMMONS upon Airbus Americas, Inc. in the manner described below:

CORPORATE SERVICE, by personally delivering 1 true and correct copy(ies) of the COMPLAINT; SUMMONS, with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
Kate Gonzalez, I delivered the documents to Kate Gonzalez who identified themselves as the person authorized to accept with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a brown-haired female contact 45-55 years of age, 5'-5'4" tall and weighing 120-140 lbs with an accent and glasses.

The person served mentioned her name as Kate Gonzalez and she stated that she is the senior legal counsel for the subject.

The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on _09/24/2023_

Bidemi Bolarin, VA

ABC Legal Services, LLC
DCA Lic. #1380619 Exp. 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201



Page 1 of 1
FOR: Devers Miska Law
REF: Fume Events

Tracking #: 0187353133

FILED: QUEENS COUNTY CLERK 09/29/2025 09:49 AM INDEX NO. 725646/2025
NYSCEF DOC. NO. 4                                                          RECEIVED NYSCEF: 09/29/2025

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS

| | |
|---|---|
| **Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, Julia Michele Craig** | Hearing Date: |
| Plaintiff/Petitioner | INDEX NO:    **725646/2025** |
| **VS.** | Index Date:   **09/03/2025** |
| **JetBlue Airways Corporation, Airbus Americas, Inc., Airbus S.A.S., Airbus SE, Honeywell International, Inc., Honeywell Aerospace US Inc., Honeywell Aerospace Technologies, John Does 1-10** | AFFIRMATION OF SERVICE OF:  **SUMMONS; COMPLAINT** |
| Defendant/Respondent | |

Received by **Ademola Ade-Ojo**, on the **17th day of September, 2025 at 11:04 AM** to be served upon **Honeywell Aerospace Technologies** at **7955 S Priest Dr Ste 102, Tempe, Maricopa County, AZ 85284**.

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **18th day of September, 2025 at 3:03 PM** at the address of **7955 S Priest Dr Ste 102, Tempe, Maricopa County, AZ 85284,** this affiant served the **SUMMONS; COMPLAINT** upon **Honeywell Aerospace Technologies** in the manner described below:

**CORPORATE SERVICE**, by personally delivering 1 true and correct copy(ies) of the **SUMMONS; COMPLAINT**, with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
Carly Cardenas, I delivered the documents to Carly Cardenas who identified themselves as the person authorized to accept with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a dyed-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.

The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on ___9-19-25___ .

_____

**Ademola Ade-Ojo, Reg. # MC9089, Arizona , AZ**

ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

Page 1 of 1
FOR: **Devers Miska Law**
REF: **Fume Events**

Tracking #: **0186992469**

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 58 of 248 PageID #: 85

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS

| | |
|---|---|
| KATE SUZANNE DYBDAHL, PAUL CHRISTIAN DYBDAHL, GRAHAM JEANINE LEHR, CHAD RONALD LEHR, JULIA MICHELE CRAIG<br><br>Plaintiff/Petitioner<br><br>vs.<br><br>JETBLUE AIRWAYS CORPORATION, AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS SE, HONEYWELL INTERNATIONAL, INC., HONEYWELL AEROSPACE US INC., HONEYWELL AEROSPACE TECHNOLOGIES, JOHN DOES 1-10<br><br>Defendant/Respondent | Hearing Date:<br><br>INDEX NO: **725646/2025**<br>Index Date: **09/03/2025**<br>AFFIRMATION OF SERVICE OF:<br>SUMMONS; CIVIL ACTION COMPLAINT |

Received by **Ademola Ade-Ojo**, on the **17th day of September, 2025 at 9:58 AM** to be served upon **Honeywell Aerospace US Inc.** at **7955 S Priest Dr Ste 102, Tempe, Maricopa County, AZ 85284.**

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **17th day of September, 2025 at 4:44 PM** at the address of **7955 S Priest Dr Ste 102, Tempe, Maricopa County, AZ 85284,** this affiant served the **SUMMONS; CIVIL ACTION COMPLAINT** upon **Honeywell Aerospace US Inc.** in the manner described below:

**CORPORATE SERVICE,** by personally delivering 1 true and correct copy(ies) of the **SUMMONS; CIVIL ACTION COMPLAINT,** with the date and hour of service endorsed thereon by this affiant, to the corporation described as the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**Nicole Fruh, I delivered the documents to Nicole Fruh who identified themselves as the person authorized to accept with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 25-35 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.**

**The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and defendant and/or present occupant refused to indicate.**

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on _9-17-25_ .

**Ademola Ade-Ojo, Reg. # MC9089, Arizona , AZ**

ABC Legal Services, LLC
DCA Lic. #1380619 Exp. 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

Page 1 of 1
FOR: **Devers Miska Law**
REF: **Fume Events**

Tracking #: **0186835821**

1 of 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

---

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

Index No. 725646/2025

Plaintiffs,

**STIPULATION TO
EXTEND TIME**

-against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10,

Defendants.

---

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel

for defendant JetBlue Airways Corporation ("JetBlue") and plaintiffs Kate Suzanne Dybdahl, Paul

Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, and Julia Michele Craig

("Plaintiffs") that JetBlue's time to answer, appear, or otherwise move in response to Plaintiffs'

Civil Action Complaint in the above-captioned matter is hereby extended to October 30, 2025.

The parties agree that by entering into this Stipulation, JetBlue does not waive any defenses it may

have to the Civil Action Complaint.

*[signatures on following page]*

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 60 of 248 PageID #: 87

INDEX NO. 725646/2025

Dated: September 29, 2025

CASCIONE PURCIGLIOTTI AND
GALLUZZI P.C.


By: _____
Thomas G. Cascione
Kelly Murtha
Cascione Purcigliotti and Galluzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY 10709-4419
Tel: (914) 961-1263
thomas.cascione@cpglawyers.com


 and

DEVERS MISKA LAW
Cynthia M. Devers
Michael S. Miska
(*Pro Hac Vice Anticipated*)
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
cdevers@dmllc.law
mmiska@dmllc.law


*Attorneys for Plaintiffs*

HOLLAND & KNIGHT LLP


By: _____
Steven Raffaele
Sarah Korapaty
Marc Antonecchia
Holland & Knight LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
Tel: (212) 513-3200
steven.raffaele@hklaw.com
sarah.korapaty@hklaw.com
marc.antonecchia@hklaw.com


Michael Maroney
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, Massachusetts 02116
Tel: (617) 523-2700
michael.maroney@hklaw.com


*Attorneys for Defendant JetBlue Airways
Corporation*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------------X
KATE SUZANNE DYBDAHL, PAUL CHRISTIAN
DYBDAHL, GRAHAM JEANINE LEHR, CHAD
RONALD LEHR,
AND JULIA MICHELE CRAIG,

,

                                    Plaintiff,

          -against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS
SE, HONEYWELL INTERNATIONAL, INC.,
HONEYWELL AEROSPACE US INC., AND
HONEYWELL AEROSPACE TECHNOLOGIES, AND
JOHN DOES 1-10

,

                                    Defendant.
-----------------------------------------------------------------------X

Index No.: 725646/2025

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE**, that upon the annexed affirmation of Thomas G Cascione, attorney for Plaintiff, dated October 6, 2025, the Affidavits of Cynthia M. Devers, Esq. and Michael S. Miska, Esq., their respective Certificates of Good Standing, and upon all the prior pleadings and proceedings herein, the undersigned will move this Court, at 88-11 Sutphin Boulevard, Jamaica, New York, at a Motion Submission Part, on October 22, 2025 at 9:30 in the forenoon of that day, or as soon thereafter as counsel can be heard, for an Order granting Ms. Devers and Mr. Miska *pro hac vice* admission for the purposes of appearing in this matter, and for such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that pursuant to CPLR 2214(b), these papers have been served on you at least sixteen days before the motion is scheduled to be heard. You must serve your answering papers and any notice of cross-motion with supporting papers, if any, at least seven days before such time. Reply or responding affidavits shall be served at least one day before

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 62 of 248 PageID #: 89

such time.

DATED:     October 6, 2025
              Eastchester, New York

                                      Thomas G. Cascione
                                      Kelly L. Murtha
                                      Cascione Purcigliotti and Galluzzi P.C.
*Attorney(s) for Plaintiff*
*274 White Plains Road*
*2nd Floor, Suite 6*
*Eastchester, NY 10709-4419*
Phone: (914) 961-1263
Fax: (888) 336-4813

To:
**HOLLAND & KNIGHT LLP** - Answer pending
Marc L. Antonecchia, Esq.
Sarah Passeri, Esq.
Michael T. Maroney, Esq.
Attorneys for Defendant
JETBLUE AIRWAYS CORPORATION
**787 Seventh Avenue, 31st Floor,**
**New York, NY 10019**

AIRBUS AMERICAS, INC.
2550 Wasser Terrace, Suite 9100
Herndon, VA 20171

AIRBUS S.A.S.
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

AIRBUS SE
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

HONEYWELL INTERNATIONAL, INC.
101 Columbia Road
P.O. Box 4000
Morristown, NJ 07960

HONEYWELL AEROSPACE US INC.
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 63 of 248 PageID #: 90

HONEYWELL AEROSPACE TECHNOLOGIES
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

Case 1:25-cv-06682-ENV-TAM    Document 1-3    Filed 12/03/25    Page 64 of 248 PageID #: 91

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------------X
KATE SUZANNE DYBDAHL, PAUL CHRISTIAN
DYBDAHL, GRAHAM JEANINE LEHR, CHAD
RONALD LEHR,
AND JULIA MICHELE CRAIG,

 ,

                              Plaintiff,

      -against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS
SE, HONEYWELL INTERNATIONAL, INC.,
HONEYWELL AEROSPACE US INC., AND
HONEYWELL AEROSPACE TECHNOLOGIES, AND
JOHN DOES 1-10

 ,

                            Defendant.
-----------------------------------------------------------------------X

Index No.: 725646/2025

**AFFIRMATION IN
SUPPORT**

      THOMAS G CASCIONE, an attorney, duly admitted to practice in the court of New York

State, pursuant to CPLR 2106, affirms the following under penalty of perjury based upon a review

of the file and upon information and belief:

1.   I am a member of the firm CASCIONE PURCIGLIOTTI & GALLUZZI, P.C., the

     attorneys for the Plaintiffs in the above-entitled proceeding and am fully familiar with

     all the facts and circumstances herein.

2.   This affirmation is submitted in support of the Plaintiffs' motion for Michael S.

     Miska and Cynthia M. Devers to be admitted to the Bar of this Court *pro hac vice* to

     participate in the above captioned action.

3.   The Summons and Complaint is annexed hereto as EXHIBIT "A". No Answers have

     been filed to date, however counsel for JETBLUE AIRWAYS CORPORATION

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 65 of 248 PageID #: 92   INDEX NO. 726846/2025

have appeared to request an extension on their time to Answer, which we granted.

4. Cynthia M. Devers is a partner at Devers Miska Law located in Bala Cynwyd, Pennsylvania. The firm is devoted to civil litigation and specializes in the complex field of aviation litigation. As demonstrated by the Certificates of Good Standing annexed to her accompanying Affidavit, Ms. Devers is a member in good standing of the Bar of the Commonwealth of Pennsylvania and the Bar of the State of New Jersey. See Ms. Devers' Affidavit and Certificates of Good Standing annexed as EXHIBIT "B"

5. Michael S. Miska is a partner at Devers Miska Law located in Bala Cynwyd, Pennsylvania. The firm is devoted to civil litigation and specializes in the complex field of aviation litigation. As demonstrated by the Certificates of Good Standing annexed to her accompanying Affidavit, Mr. Miska is a member in good standing of the Bar of the Commonwealth of Pennsylvania and the Bar of the State of New Jersey. See Mr. Miska's Affidavit and Certificates of Good Standing annexed as EXHIBIT "C"

6. In this matter, Plaintiffs were all injured in fume events on JetBlue flights that utilized Airbus models of aircraft, and Honeywell APU's, and fell victim to all Defendants' decades' long systematic coverup of the frequency, severity, and dangers of fume events to Plaintiffs' detriment. Ms. Devers and Ms. Miska are experienced attorneys who are well qualified and regularly handle complex aviation matters. I shall be the attorney of record in this case, and I or my associate counsel Kelly L. Murtha shall appear with Mr. Miska and Ms. Devers on the matter and shall be the persons upon whom all papers in connection with the cause shall be served.

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 66 of 248 PageID #: 93

INDEX NO. 725646/2025

7.  Annexed as EXHIBIT "D" is a proposed Order we have drafted for the Court's

convenience, for the granting of this motion.

**WHEREFORE**, the undersigned respectfully requests the within motion to be granted.

DATED:      October 6, 2025
            Eastchester, New York

Thomas G Cascione

NYSCEF DOC. NO. 9
Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 67 of 248 PageID #: 94

# EXHIBIT "A"
# SUMMONS and COMPLAINT

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 68 of 248 PageID #: 95

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

----------------------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL CHRISTIAN          Index No.:
DYBDAHL, GRAHAM JEANINE LEHR, CHAD
RONALD LEHR,
AND JULIA MICHELE CRAIG,                       **SUMMONS**

,

                          Plaintiff,

          -against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS
SE, HONEYWELL INTERNATIONAL, INC.,
HONEYWELL AEROSPACE US INC., AND
HONEYWELL AEROSPACE TECHNOLOGIES, AND
JOHN DOES 1-10

,

                          Defendant.

----------------------------------------------------------------------X

To the above-named Defendants:

     **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons (exclusive of the day of service), or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York.

     **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear or answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

The Plaintiffs designate QUEENS County as the place of trial.

The basis for venue is.Defendant JETBLUE AIRWAYS CORPORATION'S principal place of business.

DATED:    September 3, 2025
           Eastchester, New York

                                Thomas G Cascione
                                Attorneys for Plaintiff
                                Cascione Purcigliotti & Galluzzi PC
                                274 White Plains Road, Suite 6
                                Eastchester, NY 10709

(914) 961-1263
Thomas.cascione@cpglawyers.com

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.
*(Pro Hac Vice Anticipated)*
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email: cdevers@dmllc.law
mmiska@dmllc.law

TO:

JETBLUE AIRWAYS CORPORATION
27-01 Queens Plaza North
Queens, NY 11101

AIRBUS AMERICAS, INC.
2550 Wasser Terrace, Suite 9100
Herndon, VA 20171

AIRBUS S.A.S.
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

AIRBUS SE
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

HONEYWELL INTERNATIONAL, INC.
101 Columbia Road
P.O. Box 4000
Morristown, NJ 07960

HONEYWELL AEROSPACE US INC.
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

HONEYWELL AEROSPACE TECHNOLOGIES
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF QUEENS

-----------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

        Plaintiffs,

          v.

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10

        Defendants.
-----------------------------------------------------------X

INDEX NO.:

## CIVIL ACTION COMPLAINT

Plaintiffs, Kate Suzanne Dybdahl; Paul Christian Dybdahl; Graham Jeanine Lehr; Chad

Ronald Lehr; and Julia Michele Craig, by their attorneys, complaining of the Defendants, JetBlue

Airways Corporation; Airbus Americas, Inc.; Airbus S.A.S.; Airbus SE; Honeywell International,

Inc.; Honeywell Aerospace US Inc.; Honeywell Aerospace Technologies; and John Does 1-10,

respectfully allege upon information and belief:

## THE PARTIES

### *Plaintiffs*

1.    Plaintiff Kate Suzanne Dybdahl is a Massachusetts citizen who resides at 26

Harrison Street, Melrose, Massachusetts 02176.

2.      Plaintiff Paul Christian Dybdahl is a Massachusetts citizen who resides at 26 Harrison Street, Melrose, Massachusetts 02176, and is the spouse of Plaintiff Kate Suzanne Dybdahl.

3.      Plaintiff Graham Jeanine Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060.

4.      Plaintiff Chad Ronald Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060, and is the spouse of Plaintiff Graham Jeanine Lehr.

5.      Plaintiff Julia Michele Craig is a Massachusetts citizen who resides at 250 Tremont Street, Melrose, Massachusetts 02176.

### *Defendant JetBlue*

6.      Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation and maintains a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101, in Queens County.

7.      Defendant JetBlue is a common carrier under 14 C.F.R. Part 121 engaged in the business of transporting passengers for hire by air and, in furtherance thereof, operates regularly scheduled flights and is bound by the law to follow the applicable regulations, guidance, agreements, and accepted industry practices.

8.      Defendant JetBlue owns and operates a fleet of Airbus 320 and Airbus 321 aircraft that are equipped with Honeywell auxiliary power units ("APU's").

9.      Defendant JetBlue has experienced numerous "fume events", which are incidents in which dangerous toxic chemicals are released into the cabin of the aircraft, which will be discussed in further detail below.

10. Plaintiffs were all injured in fume events on JetBlue flights that utilized Airbus models of aircraft, and Honeywell APU's, and fell victim to all Defendants' decades' long systematic coverup of the frequency, severity, and dangers of fume events to Plaintiffs' detriment.

## *Airbus Defendants*

11. Defendant Airbus Americas, Inc. is a Delaware Corporation with a principal place of business at 2550 Wasser Terrace, Suite 9100, Herndon, Virginia 20171, and is a wholly owned subsidiary of Airbus S.A.S.

12. Defendant Airbus Americas, Inc. designs, produces, manufactures, and delivers commercial aircraft to its customers in the United States, including JetBlue.

13. Defendant Airbus Americas, Inc. assembles and delivers aircraft in Alabama.

14. Airbus Americas Engineering, Inc. designed aircraft components in Mobile, Alabama, and Wichita, Kansas. AA Engineering was merged into Airbus Americas, Inc. on December 31, 2017.

15. Defendant Airbus Americas, Inc. is the successor-in-interest to AA Engineering.

16. Defendant Airbus S.A.S. is a French corporation with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

17. Defendant Airbus S.A.S. designs, manufactures, assembles, services, and sells civil commercial aircraft, including the Airbus A320 family of aircraft (including the Airbus A319, A320, A321 and variants of each) to customers in the United States and across the world.

18. Defendant S.A.S. is also the Type Certificate Holder for the Airbus A320 family of aircraft.

19. Defendant Airbus SE is a multinational aerospace corporation, based in Leiden, the

3

Netherlands, with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

20.     Airbus S.E. operates through its Commercial Aircraft, Defense and Space, and Helicopters divisions with more than one hundred subsidiaries and affiliated entities located in more than 41 countries around the world. Airbus SE is the ultimate parent company of the Airbus Defendants. Airbus SE, itself and through its subsidiaries and affiliates, has engaged in substantial and non-isolated business activity on a continuous and systemic basis in the United States and New York.

21.     Defendants Airbus Americas, Inc., Airbus S.A.S., and Airbus SE are collectively referred to herein as the "Airbus Defendants".

22.     The Airbus Defendants hold themselves out to the public as "Airbus", and acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, as joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject aircraft.

23.     The Airbus Defendants assumed responsibility for providing inspection, repair, services, maintenance, replacement, overhaul, repair, warnings, parts, maintenance manuals, maintenance instructions, instructions for continuing airworthiness, and other information with respect to aircraft they design, manufacture, sell, and for which they hold the Type Certificate and Production Certificate.

24.     The Airbus Defendants participated in the ongoing coverup to shield the defects in its aircraft that causes dangerous fume events that hurt those who fly aboard its aircraft, and failed to correct known defects in their aircraft.

4

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 74 of 248 PageID #: 101    INDEX NO. 725646/2025

## Honeywell Defendants

25.     Defendant Honeywell International, Inc. is a Delaware Corporation with its principal place of business at 101 Columbia Road, P.O. Box 4000, Morristown, New Jersey 07960.

26.     Defendant Honeywell Aerospace US Inc. is a Delaware Corporation with its principal place of business in Phoenix, Arizona and a registered agent at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

27.     Defendant Honeywell Aerospace US Inc. does business as Honeywell Aerospace Technologies, which also maintains its principal place of business at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

28.     Defendant Honeywell International, Honeywell Aerospace US Inc. and Honeywell Aerospace Technologies are collectively referred to herein as the "Honeywell Defendants".

29.     The Honeywell Defendants acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject APUs.

30.     The Honeywell Defendants manufacture of the auxiliary power units ("APUs") that are used in the A320 family of aircraft, including the Airbus 320 and 321 models.

31.     The Honeywell Defendants also coordinated in the coverup of the defects in the APU and harms associated with fume events, and failed to fix known defects in their products.

## Defendants John Does 1-10

32.     That John Does 1-10 are individuals who designed, manufactured, sold, distributed, maintained, overhauled, rebuilt, repaired, inspected, and/or modified the subject aircraft, true identities unknown.

5

## JURISDICTION AND VENUE

33.     Defendant JetBlue maintains its principal place of business in New York in Queens County.

34.     Defendant JetBlue also promulgates emails, service letters, service directives, and other information out of New York.

35.     The Airbus Defendants sold and/or purchased the Airbus family of aircraft, including the subject A320 and A321 models, to Defendant JetBlue, which is based in New York.

36.     The Airbus Defendants and the Honeywell Defendants investigated, coordinated, engaged in a continuous course of conduct, and conspired together to keep the severity and frequency of fume events that were occurring in the Airbus Defendants' fleet of aircraft from the FAA, crewmembers, and flying public.

37.     Defendant JetBlue, and the Airbus Defendants and Honeywell Defendants engaged in tortious activity in concealing the nature of fume events from the FAA, Plaintiffs and public through its business relationship centered in New York.

38.     All Defendants engaged in continuous and systematic business activities in the State of New York, including but not limited to, transacting business, contracting to supply goods and services, and engaging in tortious conduct in this state.

39.     All Defendants delivered their goods and services into the stream of commerce with the expectation that they would be purchased and used in the State of New York.

40.     All Defendants derive substantial revenue from their business and activities directed at the State of New York, and avail themselves of the privilege of doing business in New York such that jurisdiction is appropriate here.

6

41.     Upon information and belief, the aircraft was sold to JetBlue through Agreements, which include a New York choice-of-law clause, requiring parties to submit to the jurisdiction of New York.

42.     All Defendants have entered into contracts and warranty agreements with individuals and entities located in New York.

43.     As the holder of the Type Certificate with the continuous responsibility to ensure the continuing airworthiness of various aircraft, the Airbus Defendants maintain direct relationships and contact with the owners within the State of New York, including JetBlue.

44.     As the PMA holders with continuous responsibility to ensure the continuing airworthiness of the aircraft, and components, and APU, Defendants maintain direct relationships with owners and operators with New York, including JetBlue.

45.     All Defendants advertise in New York and advertise to New York customers.

46.     The contacts that each Defendant maintain in New York give rise to and caused the fume events at issue in this case.

47.     Thus, Jurisdiction and venue are appropriate in this Court.

## FACTUAL BACKGROUND

### *What is a Fume Event?*

48.     The Airbus 320 and 321 models draw in air from the outside through their engines, and send it into the aircraft cabin through the bleed air system, as shown in the illustration below:

7



49.     The bleed air system takes the air from the engine's compressor section and auxiliary power unit ("APU") to various parts of the aircraft and is used for pressurization and air conditioning, among other functions.

50.     A schematic of the Honeywell APU application is depicted below:



Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 78 of 248 PageID #: 105   INDEX NO. 719946/2025

51.     As noted in the DOT/FAA/AM-15/20 publication, "[t]he quality of air distributed throughout the cockpit and cabin during air transportation in a pressurized aircraft is critically important to human health."

52.     A "fume" event is when the cabin air becomes contaminated with aerosolized or pyrolyzed engine oil, lubricants, deicing or hydraulic fluid due to a breach in the bleed air system.

53.     Engine oil may be encountered if there was an oil leak or if oil has been absorbed into the bleed and air conditioning system.

54.     Cabin odors come from different sources and have been described as dirty sock smells or crayon smells, magic marker, acrid, wet dog, musty, as well as other smells.

55.     Also, some toxic fumes are odorless.

56.     HEPA filtration does not work on the air because it only addresses particulates, and not toxic fumes, so Defendants' attempt to resolve the fume event issue with HEPA filtration is ineffective.

57.     Inhalation of toxic cabin air can cause serious and permanent injuries to those who breathe it, which is what injured Plaintiffs in this matter.

***Chronology of Fume Events***

58.     The history of fume events in aircraft manufactured by the Airbus Defendants that utilize the Honeywell APU, and operated by JetBlue extends back decades, and has long been a problem that is well known to all Defendants.

59.     In 2004, Boeing introduced a safer alternative design in the Boeing 787 Dreamliner, which does not use a bleed air system, so it eliminates the fume event risks.

9

Case 1:25-cv-06682-ENV-TAM Document 1-3 Filed 12/03/25 Page 79 of 248 PageID #: 106

60. Unfortunately, due to the lack of honest reporting on behalf of Defendants, and misinformation they provide to crewmembers, many events go unreported and are kept from the public.

61. Defendants are motivated by profit by promoting sales of their products and services and by keeping the fleet out of maintenance.

62. All Defendants have downplayed the extraordinarily serious and dangerous nature that fume events pose, and gaslight those who raise their concern with fume events, as the following chronology illustrates:

*2001*

63. On November 29, 2001, JetBlue issued 2001-T040, "Cabin Oil Fumes From 131-9A APU", in reference to an event that occurred on November 27, 2001 to notify the crew that the Honeywell APU is a possible source of oil fumes in the aircraft cabin as a result to an advisement issued by Airbus.

64. Airbus advised JetBlue that an operator experienced significant oil fumes in the cabin due to the accumulation of APU oil in the aircraft Environmental Control System ("ECS") and bleed ducting.

65. Honeywell investigated the event and found the APU's Load Compression Carbon Seal was worn.

66. A result of the worn seal, the oil leaks in the APU Load Compressor air path and into the ECS.

67. Oil accumulates in the ECS, which worsens over time, especially during the descent phases of flight.

10

68.     As discussed in 2001-T040, Honeywell performed an investigation of APU carbon seals that were under-going shop repair and was supposed to advise of findings and corrective action.

69.     All Defendants were on notice of these events that occurred over 20 years ago, but no adequate corrective action has been taken by them to date.

*2003*

70.     On May 29, 2003, JetBlue issued 2003-T033, "Airbus 320 MEL 79-35-01 IAE V2527-A5 Engine 'Eng 1 (2) Oil Filter Clog' Message After Stabilized Engine Start and Inflight".

71.     According to this publication, IAE V2500 engines in service have experienced No. 3 bearing fractures, which are often accompanied by an "ENG 1 (2) OIL FILTER CLOG" (ECAM) message, oil odor and/or engine stall/surge.

*2014*

72.     On October 31, 2014, JetBlue issued FAM 2014-IF049TR, "Smoke/Odor/Fumes in the Cabin" instructing that the following information to be incorporated into the Flight Attendant Manual ("FAM"):

> NOTICE
> This information notice informs Flight Attendants of the actions to take if there is smoke, strange odor, or fumes present in the cabin.
>
> ACTION
>
> **H. SMOKE/NOXIOUS ODOR/FUMES IN THE CABIN**
>
> 1.  Notify Flight Deck by clearly stating location, smell, and color of smoke (if present), and the actions being taken by the crew. Certain circumstances may prohibit the Flight Deck from responding immediately.
>
> 2.  Locate the source of the smoke/ odor/fumes, if possible. If conditions change to a fire event, follow appropriate firefighting procedures. Notify the Flight Deck once the source of the smoke/odor/fumes is discovered.

11

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 81 of 248 PageID #: 108

3. If necessary, distribute wet towels and direct passengers to stay low, cover their nose and breathe through the wet towel or an article of clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

4. Make a PA to give clear assertive instructions to passengers to maintain control of the cabin, if necessary.

**NOTE:** Do not deploy passenger supplemental oxygen masks or use a POB. These masks do not filter smoke or fumes in the cabin.

73. No adequate protection or protective equipment were ever provided for use by the inflight or the passengers.

## *2017*

74. On April 27, 2017, JetBlue issued Maintenance Alert Bulletin MAB-12-04-17-012, "(ATA 12) A320/A321 Cabin Odors – Oil Servicing V2500-A5 Engines and 131-9A APU's" to emphasis the importance of APU and engine oil servicing procedures to avoid oil odor in the cabin in response to an "increased trend of 'Oil Smell in the Cabin' reports on the JetBlue A320/A321 fleet since mid-year 2016."

75. "Shop findings noted oil leakage from the Front Bearing Compartment No. 1 carbon seal which allows oil leakage into the Low Pressure Compressor (LPC) stages 2-2.5 and then high pressure compressor (HPC) to the engine bleed air system.

76. Reports of oil smell can result in aircraft out of service, component, engine and APU removals.

77. In June, 2017, JetBlue and Airbus held a meeting on cabin odor events to understand toxicity concerns.

78. On July 26, 2017, JetBlue issued 2017-IF013TR "Responding to Smoke, Cabin Odor, and Fumes" directing Inflight Crewmembers to contact MedAire Support if feeling unwell following a cabin event involving smoke/odor/fumes.

12

Case 1:25-cv-06682-ENV-TAM   Document 1-3   Filed 12/03/25   Page 82 of 248 PageID #: 109

79.     On August 17, 2017, Joanna Geraghty of JetBlue sent an alert to its crew members stating:

> It's normal for aircraft to have a variety of smells – these are not unique to JetBlue and odors have appeared on aircraft for decades. Our Safety team has researched and compiled credible scientific studies that have consistently found no evidence of long-term health and safety impacts from these type of odor events. Airbus has also reached the same conclusion. Experts have consistently found that aircraft cabin air meets safety standards, and our Pilots and our Tech Ops team are properly trained to handle any situation or odor event that may arise.

80.     The email states that JetBlue Vice President Safety, John Allen, was leading a working group to coordinate the response to cabin odor events.

81.     JetBlue represented that it aimed to take the following measures to address cabin odors:

    a.   Incorporate HEPA filters to remove odors;

    b.   Transition to new engine and APU oil that produces fewer odors;

    c.   New Environmental Control System (ECS) cleaning procedure, developed by the equipment manufacturer to help remove residual oil from leaks;

    d.   Sending engines that had repeat odor events for independent shop testing, and confirmed there were no problems with the engines;

    e.   Engaged with Airbus, the engine manufacturers, JetBlue's Tech Ops Business Partners, and other airlines for information sharing and best practices;

    f.   Revised JetBlue's servicing instructions for engine and APU; and

    g.   Instituted new Crewmember checklists and procedures to capture and track occurrences over time.

82.     None of these procedures fixed the core problem, and failed to protect the inflight or passengers, and merely paid lip service to appease those asking questions.

13

83. On August 25, 2017, JetBlue issued Information Notice 2017-T015C, "(ATA 05) TROUBLESHOOTING – ODOR IN THE CABIN". JetBlue noted that it "takes all reports of odor, smell, poor air quality and 'dirty sock smells' seriously" and keeps a Cabin Odor Sheet ("COS"), Flight Crew and In-Flight debriefs.

84. The Notice further notes that possible causes of dirty socks / musty / oil odors are APU or engine oil leaks, or possibility contaminated ECS.

85. On September 7, 2017, JetBlue issued Information Notice 2017-T027 "(ATA 49) Airbus A320 / A321 – Honeywell 131-9A – APU – Proper Shutdown Procedure" attributing improper APU shutdowns for causing oil retention in the bearings and scavenge systems because oil will not be drained back to the Gearbox.

86. On November 13, 2017, JetBlue issued Information Notice 2017-T036TR "(ATA 00) Cabin Odor Reports (MX-270 and MX-271)" and Information Notice 2017-F044TR, "Cabin Odor Reporting Forms" introducing new forms to report cabin odor events.

87. However, Defendants discouraged reporting.

*2018*

88. On January 18, 2018, JetBlue Manager, Inflight Standards and Regulatory Compliance, DeWayne Cook, issued Information Notice 2018-IF001TR "Responding to Smoke, Cabin Odor, and Fumes" to the Inflight Crewmembers to notify Crewmembers of the definitions, types, and sources of potential odors experienced onboard the aircraft, and their responses to aircraft odors.

89. Notice 2018-IF001TR defines potential odors which Crewmembers may experience during normal operations:

| | |
|---|---|
| **Smoke** | The byproduct of burning materials made visible by the presence of small particles. |

14

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 09/08/2025

| Odor | A distinctive smell, especially an unpleasant one. |
|------|---------------------------------------------------|
| Fumes | Odorous, gaseous compounds, which are not visible. |

90. JetBlue represented that its goal is "to create the safest possible working environment for our Crewmembers, Customers and Business Partners. Under normal operating conditions, odors, or fumes from these sources may be present in the cabin; however, when present, they very rarely exist at a concentration or level to cause concern."

91. JetBlue continues: "Environmental conditions change the sense of smell and may cause odors to appear stronger in nature. Moisture, in particular, enhances the sense of smell as humidity readily carries odor molecules to the nasal passage. These types of odors may begin to dissipate as the aircraft exists the moisture-laden environment."

92. JetBlue describes five categories of "aircraft odors", including (1) Smoke/Fire Odors; (2) Cabin-Source Odors; (3) External-Source Odors; (4) Aircraft Environmental System Odors; and (5) Undetermined Hypoxia. Note – None of the foregoing "aircraft odors" concern "Fumes".

93. This publication further tells Crewmembers:

**Note**
If Customers are exhibiting physiological effects from a persistent odor occurring during all phases of flight, that is strong in intensity, increases over time, detected by multiple members of the Crew and Customers and significantly irritates eyes, nose or throat; distribute wet paper towels and direct Customers to remain low and breathe through the wet paper towel or clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

94. On January 18, 2018, JetBlue issued Information Notice 2018-F002TR "Airbus Recognition and Isolation Guidance" to the Flight Crewmembers requiring them to use due diligence and sound judgment when they recognize an odor, and to immediately address health or safety concerns of Customers or Crew.

15

95.     Notice 2018-F00TR provides the following description of Aircraft Environmental

System Odor Levels:

| | |
|---|---|
| **Level 1** | • A Transient (non-Persistent) Odor.<br>• Odor is not strong and does not severely affect eyes, nose, or throat. Mild irritation may occur but not widespread and symptoms subside.<br>• Odor dissipates over time. |
| **Level 2** | • A Persistent Odor.<br>• Odor remains or may dissipate over time.<br>• Odor is detectable by multiple Crewmembers or Customers<br>• Mild to moderate irritation occurs in two or more Crewmembers or customers |
| **Level 3** | • A Persistent Odor<br>• Odor obvious to both Crewmembers and Customers<br>• Odor is strong in intensity, increases over time, or stabilizes with a significant intensity<br>• Odor significantly irritates eyes, nose, or throat |

96.     On January 18, 2018, JetBlue issued Information Notice 2018-F003TR "Flight

Deck and Cabin Odors and Fumes" recognizing the issue of cockpit and cabin odors, and issued

new FOM policies addressing cockpit and cabin odors.

97.     JetBlue again represented that it has a commitment to safety for its Customers and

Crewmembers, and that its goal is "to create the safest possible working environment."

98.     JetBlue stated:

NOTE

It is difficult to discern a fume from an odor.  Although the presence of an
unidentified odor does not necessarily indicate the presence of fumes,
Crewmembers shall address any odor which may be cause for concern.

The presence of an odor alone does not necessarily require Flight Crew action or a
medical response.

99. JetBlue further noted that:

16

Crewmembers should be aware that the longer they are exposed to a certain odor, the less they may be able to perceive it. This effect is known as "olfactory fatigue". To counteract olfactory fatigue, Flight Deck Crewmembers may consider utilizing their oxygen mask to isolate from the odor temporarily. This will allow the olfactory senses to recover and aid in determining if the odor is still present, if the intensity is changing, and how to describe the odor (what does it smell like).

100. JetBlue continuously told the Crewmembers that odors experienced on the plane are not harmful and did nothing meaningful to correct the fume event issue in an effort to keep its fleet in service at the risk of jeopardizing the safety of inflight and passengers.

101. On November 15, 2018, JetBlue issued Information Notice 2018-Y035TR concerning "Cabin Odor Notifications (Eff. 12/1/18)", recognizing the occurrence of odor events and the Safety Data and Analysis team.

102. Still, Defendants made no appropriate corrective action.

*2019*

103. On April 18, 2019, Ed Baklor, JetBlue Head of Customer Care and Programs notified the Crewmembers that determining whether an odor or fumes is normal or not, to avoid unnecessary disruptions, and "if Inflight decides not to operate once a plane has been cleared, it is considered a refusal to fly and the Crewmember may be subject to disciplinary action."

104. He further told Crewmembers to only call MedAire during cabin odor/fume events if it involves a non-normal odor or fume and they exhibit physical symptoms that prevents them from performing their duties as an inflight crewmember.

105. On September 19, 2019, Senator Richard Blumenthal and Congressman John Garamendi, sponsors of the *Cabin Air Safety Act of 2019*, wrote to JetBlue about their concern about fume events, and questioned JetBlue about them.

106. They also noted:

17

that the proper term for these events, is either 'fume event' or 'cabin air safety event'. There have been reports that your company is reclassifying these as 'odor events' in an apparent attempt to skirt Federal Aviation Administration reporting standards, as well as local workers' compensation laws. This raises significant doubt regarding JetBlue's intention to faithfully adhere to existing health, safety, and labor law.

107.    John M. Allen of JetBlue responded on October 10, 2019 and stated: "we have found this to be a very emotional issue and many myths have been propagated through social media to feed crewmember angst over this issue."

108.    Mr. Allen further stated: "Through our research from each reported odor event, we found that none of the reported odor events resulted in JetBlue crewmembers or customers receiving unhealthy air."

109.    In sum, Defendant JetBlue told Congress that the fume event issue is a product of emotional angst and not harmful, which was false.

110.    On September 6, 2022, JetBlue issued a publication to its Crewmembers stating that the "dirty sock smell" (the byproduct of oil decay) is not toxic, and attributed the headaches, nausea, and dizziness to their individual sensitivities.

### *2023*

111.    According to the JetBlue Flight Attendant Manual ("FAM") §17.23, (Rev. March 8, 2023) "Inflight Crewmembers may not make any written or verbal statements to the press or news media without prior briefing or approval. Direct all media inquiries to the JetBlue Media Relations Team at 718-709-3089."

112.    Essentially, the inflight was not allowed to disclose that which Defendants wish to keep out of the public eye: toxic chemicals can pour into the cabin and cause such severe injuries to the inflight, passengers, including those who are immunocompromised, small children and babies.

18

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 88 of 248 PageID #: 115

*2024*

113.    On May 21, 2024, JetBlue issued Information Notice 2017-T015 K, "(ATA 05) Troubleshooting Odor in the Cabin", which recognizes "extensive expert and industry research, document review and working with the JetBlue Safety Department," concerning odor in the cabin and supposedly implements a plan of action.

114.    This publication recognizes that APU oil leaks and Skydrol leaks from the landing gear area are responsible for the majority of cabin odor events and that it is "critical to thoroughly investigate all events using the Airbus TSM 05-50-00-0810-831-A, Identification of the Cause of Cabin Odor, Smoke or Fume."

115.    JetBlue further states in this document that "JetBlue takes all reports of odor, poor air quality and 'dirty sock smells' seriously and performs robust troubleshooting of the cause of these odors", which is far from the case.

116.    JetBlue also states "Ambient air may smell musty during precipitation/high humidity, or when passing through clouds. **If the odor is no longer present, there is no corrective action.**" (emphasis added).

117.    It is notable that toxic fumes do not always have an odor, and may dissipate over time – that does not mean no dangerous toxic fume event occurred that can seriously and permanently harm those exposed to this poison.

118.    This guidance allowed Defendants from investigating countless fume events by stating that corrective action is unnecessary after the air has dissipated.

119.    Still, crewmembers were repeatedly told that there was nothing to be concerned with.

19

120.    They were told to maintain a calm cabin environment throughout the event, and were not provided with appropriate equipment for them, or passengers, to use in the event of a fume event.

121.    They were told if the aircraft is cleared to fly, than the flight attendants must continue to fly, or else it would be considered a refusal to fly and the crewmember may be subject to disciplinary action.

## *Plaintiff Kate Dybdahl's Event*

122.    On September 3, 2022, JetBlue Flight Number 673, was operating an Airbus 321, Tail Number N988JT from Boston, Massachusetts to Aruba when it experienced a fume event.

123.    At the time of the incident, Plaintiff Kate Dybdahl was 44 years old and a flight attendant for 17 years.

124.    Just prior, the same aircraft, N988JT, Flight 509 diverted due to a customer having trouble breathing and was taken to the hospital.

125.    Instead of fixing the leak, (documented after the fume event on F1773 on August 24, 2022), JetBlue cleaned up the standing oil, turned off the APU, and put the aircraft back into service.

126.    The flight crew and inflight, including Plaintiff Kate Dybdahl, noticed a dirty sock smell, which was worsening, causing Plaintiff Kate Dybdahl to become nauseous.

127.    A family with a small child and infant moved to the back to get fresh air once the door was opened, mentioning that they were feeling nauseous.

128.    Other passengers were experiencing nausea, were complaining about the odor, and one child had a nosebleed.

20

Case 1:25-cv-06693-ENV-TAM Document 1-3 Filed 12/03/25 Page 90 of 248 PageID #: 117

129. Although customers were symptomatic, none of the Defendants notified them about the event.

130. Odor went throughout the cabin after the APU bleed was turned on.

131. Plaintiff Kate Dybdahl also repeatedly asked for Medlink, but no one responded.

132. Although Emergency Medical Servies eventually met the aircraft, and the crew was transported to the hospital, Defendant JetBlue failed to provide timely medical attention to the visibly effected crew.

133. While the passengers were deplaning, the flight crew had left during this emergency.

134. An FCIR was sent to the FAA with an inaccurate account of the event, which downplays the severity of the medical emergency that had occurred.

135. Plaintiff Kate Dybdahl noticed that fumes were still present, despite the winds, and warned the ground crew members that the airplane was contaminated and that everyone should deplane.

136. The ground crew ignored Plaintiff Kate Dybdahl's multiple warnings, they finished the turnaround, which caused one ground crew member to require medical attention, making it 5 in total.

137. Eventually, Plaintiff Kate Dybdahl and the others were taken to the hospital.

138. On September 4, 2022, Plaintiff Kate Dybdahl woke up with a persistent headache, nausea, and tingling/numbness in her hands, shins, and face.

139. Plaintiff Kate Dybdahl flew home on Flight F974, but was not on the electronic manifest, and her schedule was altered to remove any reference to the layover or the flight home, neither of which she was paid for.

21

140.    Plaintiff Kate Dybdahl also received disciplinary UNAs on her schedule.

141.    On September 5, 2022, Plaintiff Kate Dybdahl woke up with worsening numbness, tingling, headache, ringing ears, floating sensation and difficulty focusing. By the afternoon, the symptoms escalated, and Plaintiff Kate Dybdahl was confused, and could not drive.

142.    Plaintiff Kate Dybdahl and all four inflight crew members went to the hospital when they returned to Boston.

143.    The subject aircraft was ferried unpressurized to FLL, where Packs 1 and 2 were placed on MEL, and the aircraft was decontaminated.

144.    The subject aircraft was sent into service.

145.    The FAA Audit of this event confirmed that the APU was causing the foul odor due to an APU internal oil leak.

146.    This FAA Audit was triggered by Plaintiff Kate Dybdahl's complaint, and no SDRs were filed.

147.    On August 24, 2022, one week prior to Plaintiff's event, the same aircraft went into service following flight crew reports that the aircraft smelled like dirty socks and sour milk throughout the cabin.

148.    Following the August 24, 2022 event, the APU was placed on restrictions under the MEL and had evidence of an oil leak.

149.    It was also noted that the aircraft had a previous 30 day history of incidents.

150.    Plaintiff Kate Dybdahl had no history of cognitive impairment, tinnitus, skin irritation, depression, fatigue, or sleep disruption prior to the subject incident.

151.    As a result of the incident, Plaintiff Kate Dybdahl was seriously injured, including nausea, tingling, numbness, cognitive impairment, disorientation, confusion, lightheadedness,

22

FILED: QUEENS COUNTY CLERK 09/08/2025 01:25 PM

NYSCEF DOC. NO. 9

Case 1:25-cv-06692-ENV-TAM Document 13 Filed 12/03/25 Page 92 of 248 PageID

#: 119

INDEX NO. 716846/2025

RECEIVED NYSCEF: 09/08/2025

tinnitus, skin irritation, headaches, memory deficits, brain fog, anxiety, depression, fatigue, sleep disruption, mood swings, visual changes, chemical sensitivity, and hot flashes.

152.    As a result of the incident, Plaintiff Kate Dybdahl also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

153.    Plaintiff Kate Dybdahl underwent therapies and treatments for her injuries, including chelation therapy, autoimmune treatment, vitamin IV therapy, hydro colon therapy, hyperbaric chamber therapy, oxygen therapy, visual therapy, infrared sauna treatment, vestibular therapy, neuropsychological testing, multistep oxygen therapy, and other various testing and will require future treatment for their ongoing nature.

154.    As a result of this incident, Plaintiff Kate Dybdahl was forced to spend money on medical treatments and therapies and is permanently scarred.

155.    As a result of this incident, Plaintiff Kate Dybdahl has further experienced mental anguish, physical and cognitive impairments, and depression.

156.    This has produced anxiety about going or being anywhere that Plaintiff Dybdahl could be exposed to chemicals, which make here symptomatic.

157.    As a result of this incident, Plaintiff Kate Dybdahl was deprived of her ability to work and enjoyment of life.

158.    As a result of this incident, Plaintiff Kate Dybdahl has suffered the following damages:

a.    Bodily injury;

b.    Disability;

c.    Pain and suffering

23

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 93 of 248 PageID
#: 120

    d.      Mental anguish;

    e.      Loss of the capacity for the enjoyment of life;

    f.      Medical expenses;

    g.      Lost past earnings and net accumulations;

    h.      Lost future earnings and net accumulations;

    i.      Pre-judgment interest;

    j.      Post-judgment interest; and

    k.      Other damages to be determined at trial.

159.    But for this incident, Plaintiff Kate Dybdahl would not have sustained the serious injuries and damages set forth above.

160.    Further, Plaintiff Paul Dybdahl had to care for Kate Dybdahl as she received treatment for the injuries she sustained in the fume event.

161.    As a result of this incident, Plaintiff Paul Dybdahl has suffered the following damages:

    a.      Loss of consortium;

    b.      Pain and suffering;

    c.      Mental anguish;

    d.      Pre-judgment interest;

    e.      Post-judgment interest; and

    f.      Other damages to be determined at trial.

### *Plaintiff Graham Lehr's Event*

162.    At the time of the incident, Plaintiff Graham Lehr was 49 years old and a flight attendant since February 3, 2002.

24

163. On December 16, 2022, JetBlue Flight Number 673, was operating an Airbus 320, Tail Number N523JB from Boston, Massachusetts to Aruba when it experienced a fume event during final descent.

164. All inflight crew members detected the presence of the dirty musty sock smell, which was confirmed by both pilots.

165. Once on the ground, the outbound pilots also confirmed fumes, as well as the contract MX in AUA.

166. Plaintiff Graham Lehr was exposed for over 30 minutes before she was able to exist the aircraft.

167. The flight experienced turbulence upon descent, and Plaintiff Graham Lehr put on a surgical mask due to experiencing burning in the back of her throat and a headache and became woozy and unsteady on her feet.

168. The entire flight crew contacted Medlink, and were sent to the emergency room in AUA, and received a UNA code on their schedule as a result.

169. Defendant Jetblue's MSR did not report crew injuries for Flight Number 673, nor were there any SDRs submitted.

170. Rather Defendant Jetblue ferried (no pressure, no bleed, due to APU issues) N523JB on flight Number 8362 on December 17, 2022, in which the reported fume event was linked, and SDRs were submitted for this flight.

171. The APU was leaking for Flight Number 673 on December 16, 2022.

172. Plaintiff Graham Lehr flew to base December 17, 2022, then returned home on December 18, 2022.

25

173.    On December 20, 2022, Plaintiff Graham Lehr's symptoms were persistent and concerning; she went to urgent care.

174.    Plaintiff Graham Lehr went to six ED's in 10 months as a result of her injuries including, but not limited to: shortness of breath, headaches, heart palpitations, chest tightness, cognitive delays, brain fog, fatigue, ringing in ears, soreness in back of throat, numbness, tingling, disorientation, unsteady on feet.

175.    The subject aircraft had a previous 30-day history of fume events, including one on December 9, 2022, one week prior to the incident.

176.    As a result of the accident, Plaintiff Graham Lehr has been experiencing fatigue, respiratory issues, chest tightness, dizziness, headaches, burning in the throat, cognitive impairment, brain fog, memory loss, trouble sleeping, numbness and tingling in upper half of body, redness and swelling in face and neck, difficulty standing and walking, and anxiety.

177.    Plaintiff Graham Lehr has been receiving multi-step oxygen therapy, therapy by use of protective breathing equipment, infrared sauna treatment, red light therapy, vitamin IVs, acupuncture, chiropractic treatments, mental health therapy, vitamins, nutrition, reiki, and heart rate variability therapy, hyperbaric oxygen therapy, hydro-colon cleanse, autoimmune treatment, and chelation.

178.    Plaintiff Graham Lehr's methacholine test demonstrates a 43% decrease in pulmonary function.

179.    Plaintiff Graham Lehr's has undergone various tests that indicate toxic exposure.

180.    Plaintiff Graham Lehr had no history of cognitive impairment, fatigue, or respiratory issues prior to the subject incident.

26

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 96 of 248 PageID #: 123

181.    As a result of the incident, Plaintiff Graham Lehr was seriously injured, including physical and cognitive impairment, sleep disruptions, mental anguish, redness and swelling in face and neck, respiratory distress, major physical fatigue, autonomic dysfunction, reactive airways disease, neurocognitive disorder, sensitivity to occupational chemical, deficit of vestibulo-ocular reflex, toxic encephalopathy, organophosphate toxicity, shortness of breath, palpitations, numbness, tingling, brain fog, post-exertion malaise, wheezing.

182.    As a result of this incident, Plaintiff Graham Lehr also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

183.    As a result of this incident, Plaintiff Graham Lehr further is also unable to travel by plane, train, boat or public transportation and cannot stay in hotels.

184.    As a result of this incident, Plaintiff Graham Lehr was forced to spend money on medical treatments and therapies and is permanently scarred.

185.    As a result of this incident, Plaintiff Graham Lehr has been deprived of her ability to work and enjoyment of life.

186.    As a result of this incident, Plaintiff Graham Lehr has suffered the following damages:

    a.    Bodily injury;

    b.    Disability;

    c.    Pain and suffering

    d.    Mental anguish;

    e.    Loss of the capacity for the enjoyment of life;

    f.    Medical expenses;

27

    g.  Lost past earnings and net accumulations;

    h.  Lost future earnings and net accumulations;

    i.  Pre-judgment interest

    j.  Post-judgment interest; and

    k.  Other damages to be determined at trial.

187.    But for this incident, Plaintiff Graham Lehr would not have sustained the serious injuries and damages set forth above.

188.    Further, Plaintiff Chad Lehr had to care for Plaintiff Graham Lehr as she received treatment for the injuries she sustained in the fume event, and assumed the role as primary parent to a neurodivergent child.

189.    As a result of this incident, Plaintiff Chad Lehr has suffered the following damages:

    a.  Loss of consortium;

    b.  Pain and suffering;

    c.  Mental anguish;

    d.  Pre-Judgment Interest;

    e.  Post-Judgment Interest; and

    f.  Other damages to be determined at trial.

### *Plaintiff Julia Michele Craig's Event*

190.    At the time of the 2024 incident, Plaintiff Julia Craig was 60 years old and was a flight attendant since January, 2003.

191.    Plaintiff Julia Craig was involved in four separate fume event incidents on Airbus 320 and 321 aircraft.

28

192.    The first fume event occurred in approximately 2013 in an Airbus 320 when Plaintiff Julia Craig noticed an odor and blue cloud and stuck on the airplane for over 30 minutes, which the pilot explained to be a fume event.

193.    The second fume event occurred on March 29, 2023, Flight Number 673, N948 from Boston to Aruba in an Airbus 321.

194.    Plaintiff Julia Craig sought medical attention.

195.    Plaintiff Julia Craig filed a report after being assigned a return flight that landed with less than the FAA-mandatory 8 hours of rest.

196.    Despite this, Plaintiff Craig was not removed from her flight the next day, and as a result received disciplinary points and lost pay.

197.    Plaintiff Julia Craig filed a complaint with the FAA regarding violation of the minimum rest requirements, as well as a whistleblower complaint with OSHA for retaliation after reporting the fume event and experiencing disciplinary action and loss of pay.

198.    The third fume event occurred on April 10, 2023, Flight Number 673, N971, from Aruba to Boston in an Airbus 321.

199.    The fourth fume event occurred on August 21, 2024, JetBlue Flight Number 256, was operating an Airbus 321, Tail Number 563 from Bozeman, Montana to Boston, Massachusetts.

200.    The Safety Action report provided that the "APU was found to have oil on it. Removed and replaced in accordance with AMM-49-91-00.

201.    As a result of the accident, Plaintiff Julia Craig experienced visual difficulties, impaired executive function, autonomic dysfunction, nausea, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping and headaches.

29

FILED: QUEENS COUNTY CLERK 09/08/2025 02:23 PM
RECEIVED NYSCEF: 09/08/2025

202. Plaintiff Julia Craig had no history of visual difficulties, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping or headaches prior to the subject incident.

203. As a result of this incident, Plaintiff Julia Craig was diagnosed with: chemical sensitivity; cognitive dysfunction; inspiratory obstruction; convergence insufficiency; visual Discomfort – Visual Motion Sensitivity; and aero toxic syndrome.

204. As a result of this incident, Plaintiff Juila Craig also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

205. Plaintiff Julia Craig underwent eye therapy, vocal cord therapy, and has been recommended to undergo cognitive therapy, bio-feedback, testing with neuropsychiatrist and will require future treatment.

206. As a result of this incident, Plaintiff Julia Craig was forced to spend money on medical treatments and therapies and is permanently scarred.

207. As a result of this incident, Plaintiff Julia Craig has been deprived of her ability to work and enjoyment of life.

208. As a result of this incident, Plaintiff Julia Craig has suffered the following damages:

a. Bodily injury;

b. Disability;

c. Pain and suffering

d. Mental anguish;

e. Loss of the capacity for the enjoyment of life;

f. Medical expenses;

30

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 100 of 248 PageID #: 127

g.  Lost past earnings and net accumulations;

h.  Lost future earnings and net accumulations;

i.  Pre-Judgment Interest

j.  Post-Judgment Interest; and

k.  Other damages to be determined at trial.

209.   But for this incident, Plaintiff Julia Craig would not have sustained the serious injuries and damages set forth above.

## COUNT I
### Plaintiffs v. Defendant JetBlue
### (Negligence)

210.   Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

211.   Defendant JetBlue was the owner, operator, and maintainer of the subject aircraft.

212.   Defendant JetBlue failed to exercise reasonable care in the operation of the subject aircraft.

213.   Further, Defendant JetBlue failed to exercise reasonable care for the protection of their flight crew and passengers in the operation of the aircraft during the subject flights.

214.   Defendant JetBlue failed to exercise reasonable care or take adequate corrective action to address the pervasive issue with fume events in its fleet that caused the injuries to Plaintiffs.

215.   Defendant JetBlue breached its duty and was negligent, grossly negligent, reckless, willful and/or wanton in that it, among other things:

31

a. failed to provide air transportation and protection in a manner reasonably calculated to ensure the safety of the flight crew and passengers on the subject aircraft and the safe completion of the subject flights;

b. failed to safely transport Plaintiffs Kate Dybdahl, Julia Craig, and Graham Lehr;

c. failed to adequately warn Plaintiffs of the dangers of the subject flight;

d. failed to maintain the subject aircraft in a safe manner;

e. failed to own or operate the subject aircraft with due care and caution in accordance with applicable procedures and safe practices;

f. failed to provide safe operating procedures, training, instructions, guidelines, and equipment for the incident flight;

g. failed to exercise safe and effective control over the aircraft and to protect against unreasonable risk of injury;

h. failed to equip the subject flight with adequate equipment to protect those aboard;

i. failed to properly and adequately inspect, overhaul, repair, equip, modify, and maintain the subject aircraft;

j. failed to exercise the high degree of care required of a common carrier in the exercise of its activities;

k. failed to provide air taxi transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

l. providing a defective bleed air system;

32

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 102 of 248 PageID #: 129

INDEX NO. 714346/2025

m.      providing a defective aircraft;

n.      providing a defective aircraft APU;

o.      providing inadequate instructions to deal with fume events;

p.      failed to provide adequate warnings on how to deal with fume events;

q.      failed to report defects;

r.      failed to investigate or report fume events;

s.      failed to take corrective action to respond to and prevent fume events;

t.      discouraged reporting of fume events;

u.      penalizing those injured on reporting fume events;

v.      failed to correct known defects caused by the defective bleed air system;

w.      failed to warn about the effects of fume events and frequency and severity of fume events;

x.      failed to respond to fume events that are brought to Defendant's attention;

y.      failed to provide those onboard with appropriate protective equipment to utilize in the face of a fume event;

z.      misrepresented the severity and frequency of fume events;

aa.     provided improper and misleading information on how to deal with fume events;

33

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 103 of 248 PageID #: 130

     bb.    carelessly, recklessly, and negligently failed to comply with applicable Federal Aviation Rules and Regulations;

     cc.    carelessly, recklessly, and negligently failed to comply with Part 121 of the Federal Aviation Rules and Regulations; and

     dd.    failed in other respects to be shown at trial.

216.    That as a direct and proximate result of the conduct of Defendant JetBlue, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT II
### Plaintiffs v. Defendant JetBlue
### (Negligent Misrepresentation and Fraud)

217.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

218.    Defendant JetBlue engaged in false representations concerning the severity and frequency of fume events.

219.    As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

220.    Defendant told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

221.    After experiencing a fume event, Plaintiffs Kate Dybdahl and Julia Craig were subjected to disciplinary action and lost pay.

34

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 104 of 248 PageID #: 131

222. Plaintiffs Kate Dybdahl, Graham Lehr, and Julia Craig have been unable to return to work following the fume events that they encountered.

223. Defendant threatened all of the inflight that they could also be subject to disciplinary action and lost pay in similar circumstances.

224. Defendant also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

225. Defendant also failed to provide the inflight or passengers with sufficient protective equipment.

226. Defendant underreported fume events and created protocols to ensure that fume events were kept quiet.

227. Defendant knew that the statements it made were false.

228. Instead, Defendant systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

229. Plaintiffs, and each of them, relied upon Defendant's statements, which turned out to be false.

230. As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT III
### Plaintiffs v. Airbus Defendants
### (Strict Liability)

231. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 105 of 248 PageID #: 132

232. The Airbus Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject aircraft for each Plaintiff.

233. They are also the holder of the Type Certificate Holders for the Airbus family of aircraft.

234. Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

235. The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

236. The design defects which rendered the aircraft unreasonably dangerous and defective were, but are not limited to, the following:

237. The subject aircraft' ventilation systems allowed for bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

238. The subject aircraft lacked adequate air quality monitors, sensor, or alarms.

239. The subject aircraft contain no systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

240. The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

241. The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

242. As a result of the design defect, Plaintiffs suffered injuries and damages.

36

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IV
### Plaintiffs v. Airbus Defendants
### (Negligence)

243. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

244. The Airbus Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

245. The Airbus Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

246. The Airbus Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft, such that their ventilation systems allowed contaminated bleed air to enter the cabin of the subject aircraft.

247. The Airbus Defendants failed to disclose the serious and pervasive issues involving fume events.

248. The Airbus Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft without an adequate air quality monitor, sensor or alarm to detect bleed air contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events.

249. The Airbus Defendants, in the face of known defects, failed to correct such defects to the detriment of those who were onboard.

37

Case 1:25-cv-06693-ENV-TAM    Document 1-3    Filed 12/03/25    Page 107 of 248 PageID #: 134

250.   As a direct and proximate result of the conduct of the Airbus Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT V**
**Plaintiffs v. Airbus Defendants**
**(Breach of Express and Implied Warranties of Merchantability)**

251.   Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

252.   The Airbus Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

253.   The Plaintiffs relied upon such warranties.

254.   The Airbus Defendants breached their warranties to the Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the subject aircraft that were not reasonably safe for its intended use or purpose.

255.   As a direct and proximate result of the Airbus Defendants' breach, Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

256.   The Airbus Defendants engaged in false representations concerning the severity and frequency of fume events.

38

257. The Airbus Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

258. After experiencing a fume event, Plaintiffs Kate Dybdahl and Julia Craig were subjected to disciplinary action and lost pay.

259. The Airbus Defendants threatened all of the inflight flight attendants that they could also be subject to disciplinary action and lost pay in similar circumstances.

260. The Airbus Defendants also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

261. The Airbus Defendants also failed to provide the inflight or passengers with sufficient protective equipment.

262. The Airbus Defendants underreported fume events and created protocols to ensure that fume events were kept quiet.

263. The Airbus Defendants knew that the statements it made were false.

264. Instead, the Airbus Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

265. Plaintiffs, and each of them, relied upon the Airbus Defendants' statements, which turned out to be false.

266. As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 109 of 248 PageID #: 136

## COUNT VI
### Plaintiffs v. Airbus Defendants
### (Negligent Misrepresentation and Fraud)

267. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

268. The Airbus Defendants engaged in false representations concerning the severity and frequency of fume events.

269. As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

270. The Airbus Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

271. The Airbus Defendants, individually and in conjunction with Defendant JetBlue and the Honeywell Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

272. The Airbus Defendants also failed to provide the inflight or passengers with sufficient protective equipment.

273. The Airbus Defendants underreported fume events, and created protocols to ensure that fume events were kept quiet.

274. The Airbus Defendants knew that the statements they made were false.

275. Instead, the Airbus Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

276. Plaintiffs, and each of them, relied upon the Airbus Defendants' statements, which turned out to be false.

277. As a result, Plaintiffs were seriously and permanently injured.

40

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 110 of 248 PageID #: 137

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VII
### Plaintiffs v. Honeywell Defendants
### (Strict Liability)

278. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

279. The Honeywell Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject APU.

280. The Honeywell Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

281. The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

282. The design defects which rendered the aircraft and APU unreasonably danger and defective were, but are not limited to, the following:

283. The subject aircraft' ventilation systems allowed for bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

284. The subject aircraft and APU lacked adequate air quality monitors, sensor, or alarms.

285. The subject aircraft contain no systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

286. The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

41

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 111 of 248 PageID #: 138

287. The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

288. As a result of the design defect, Plaintiffs suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VIII
### Plaintiffs v. Honeywell Defendants
### (Negligence)

289. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

290. The Honeywell Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

291. The Honeywell Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

292. The Honeywell Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft APUs.

293. The Honeywell Defendants negligently designed, manufactured, tested, certified, distributed, and sold the subject APUs without an adequate air quality monitor, sensor or alarm to detect contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events.

294. As a direct and proximate result of the conduct of the Honeywell Defendants, Plaintiffs sustained injuries and damages.

42

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IX
### Plaintiffs v. Honeywell Defendants
### (Breach of Express and Implied Warranties of Merchantability)

295.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

296.    The Honeywell Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

297.    Plaintiffs relied upon such warranties.

298.    The Honeywell Defendants breached its warranties to Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the APU's that were not reasonably safe and effective for its intended use or purpose.

299.    As a direct and proximate result of the defendant's breach, the Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT X
### Plaintiffs v. Honeywell Defendants
### (Negligent Misrepresentation and Fraud)

300.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

301.    The Honeywell Defendants engaged in false representations concerning the severity and frequency of fume events.

302.    As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

303.    The Honeywell Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

304.    The Honeywell Defendants, individually and in conjunction with JetBlue and the Airbus Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

305.    The Honeywell Defendants also provides faulty and defective APUs, which the Honeywell Defendants know are defective and risk the safety of anyone flying on an aircraft equipped with their APUs.

306.    The Honeywell Defendants underreported fume events, and failures in their APUs to ensure that fume events were kept quiet.

307.    The Honeywell Defendants knew that the statements they made were false.

308.    Instead, the Honeywell Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

309.    Plaintiffs, and each of them, relied upon the Honeywell Defendants' statements, which turned out to be false.

44

Case 1:25-cv-06693-ENV-TAM Document 1-3 Filed 12/03/25 Page 114 of 248 PageID #: 141

310. As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XI
### Plaintiffs v. All Defendants
### (Negligent Infliction of Emotional Distress)

311. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

312. Defendants owed duties to Plaintiffs, as described above.

313. Defendants breach of duties proximately caused the accident and was a proximate cause of the emotional distress that naturally resulted to Plaintiffs as a result of Defendants' actions.

314. Plaintiffs were flight attendants aboard the subject flights when the fume events occurred, and therefore experienced and observed the sequence of events that led to their injuries and were within the zone of danger of the accident, and witnessed the injuries sustained by passengers and fellow crew members.

315. The impact left no doubt in Plaintiffs' minds that they would be injured, and they were.

316. As a direct and proximate result of Defendants' negligence and/or breach of contract, Plaintiffs suffered and continue to suffer emotional and physical injuries which were a direct result of the incident and were foreseeable to Defendants.

317. Plaintiffs suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the events and serious bodily injury.

45

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 115 of 248 PageID #: 142

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XII
### Plaintiffs Paul Christian Dybdahl and Chad Ronald Lehr v. All Defendants
### (Loss of Consortium)

318.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

319.    Plaintiff Paul Dybdahl was 44 years old at the time of the incident.

320.    Plaintiff Chad Lehr was 54 years old at the time of the incident.

321.    At the time of the accident, the Lehr Plaintiffs had a minor child, and he had to assume additional responsibility to account for Plaintiff Graham Lehr's injuries.

322.    Plaintiffs Paul Dybdahl and Chad Lehr at all times relevant hereto was the spouses of Kate Dybdahl and Graham Lehr, respectively.

323.    The aforementioned fume events required Plaintiffs Paul Dybdahl and Chad Lehr to take time away from their work and family to care for the injuries sustained by their wives in the fume events.

324.    Further, Plaintiffs Paul Dybdahl and Chad Lehr lost society, companionship, consortium and the support of Plaintiffs Kate Dybdahl and Graham Lehr, respectively, due to the actions of Defendants resulting in the fume events.

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment and relief on all Causes of Action as follows:

1. An order awarding Plaintiffs compensatory, general, and special damages, and punitive

   damages in an amount to be proven at trial;

2. For medical monitoring;

3. Pre-judgment and post-judgment interest;

4. Attorney fees and costs; and

5. Such other relief as determine by the Court.

## JURY DEMAND

Plaintiffs respectfully request that a jury be convened to try the factual issues of this case.

Dated: September 3, 2025

CASCIONE PURCIGLIOTTI AND GALLUZZI P.C.

Thomas G. Cascione, Esq.
Kelly Murtha, Esq.
Cascione Purcigliotti and Galluzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY 10709-4419
(914) 961-1263

*Attorneys for Plaintiffs*

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.

47

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 117 of 248 PageID #: 144

INDEX NO. 725846/2025

(*Pro Hac Vice Anticipated*)
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email: cdevers@dmllc.law
mmiska@dmllc.law

48

Case 1:25-cv-06693-ENV-TAM    Document 1-3    Filed 12/03/25    Page 118 of 248 PageID #: 145

## ATTORNEY VERIFICATION

STATE OF NEW YORK           )

                                    ) ss

COUNTY OF WESTCHESTER     )

I, the undersigned, an attorney admitted to practice in the courts of New York State, under penalty of perjury state that I am one of the attorneys for the Plaintiff(s) in the action herein.

I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof; the same is true to my own knowledge except as to those matters stated therein to be alleged on information and belief, and as to those matters I believe to be true.

This verification is made by me and not by my client(s) because my client(s) are presently residing out-of-state and outside the County of where I maintain my offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigations conducted by my office.

DATED:      Eastchester NY
               September 3, 2025

_____

THOMAS G CASCIONE, ESQ

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 119 of 248 PageID #: 146

INDEX NO. 726846/2025

# EXHIBIT "B"
# CYNTHIA M DEVERS, ESQ.'s
# AFFIDAVIT IN SUPPORT with
# CERTIFICATES OF GOOD STANDING

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Index No. 725646 / 2025

-------------------------------------------------------------------

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG

Plaintiffs,

v.

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES

Defendants.

-------------------------------------------------------------------

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
ADMISSION PRO HAC VICE
OF CYNTHIA M. DEVERS, ESQ.**

STATE OF PENNSYLVANIA      )
                          ) ss.:
COUNTY OF MONTGOMERY       )

Cynthia M. Devers, being duly sworn, hereby deposes and says:

1.    I make this Affidavit in support of a motion by plaintiffs to admit me to appear and participate in this action *pro hac vice*.

2.    I am a partner at Devers Miska Law located at One Bala Plaza, Suite 635, Bala Cynwyd, Pennsylvania 19004, Telephone Number: (215) 714-4030.   I am fully familiar with the proceedings in this case, have personal knowledge of the facts set forth herein and make this affidavit in support of my admission as counsel *pro hac vice* to assist Plaintiffs' counsel in representing Plaintiffs at trial in this matter pursuant to 22 NYCRR 520.11(a)(1) and 22 NYCRR 602.2(a).

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 121 of 248 PageID #: 148

3.     My practice is devoted to civil litigation, and I specialize in the complex field of aviation litigation.

4.     I am a member in good standing of the Commonwealth of Pennsylvania, to which I was admitted on October 16, 2008, and the Bar of the State of New Jersey on November 10, 2008.  I have never been denied admission to the Bar of any jurisdiction, nor have I been the subject of disciplinary or contempt proceedings in any Court.

5.     I am familiar with and agree to be bound by the standards of professional conduct imposed upon members of the New York bar, including the rules of Court governing the conduct of attorneys and the Disciplinary Rules of the Code of Professional Responsibility.  I acknowledge and agree that I shall be subject to the jurisdiction of the courts of the State of New York with respect to any acts occurring during the course of my participation in the matter.

6.     Accordingly, I respectfully request to be admitted to the Court *pro hac vice.*

Cynthia M. Devers

Sworn to before me this

1st day of October, 2025

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Regina Carol Sykes, Notary Public
Montgomery County
My commission expires December 24, 2025
Commission number 1410777
Member, Pennsylvania Association of Notaries

2

FILED: QUEENS COUNTY CLERK 10/06/2025 01:45 PM    INDEX NO. 725646/2025

NYSCEF DOC. NO. 10                                              RECEIVED NYSCEF: 10/06/2025



## Supreme Court of Pennsylvania

# CERTIFICATE OF GOOD STANDING

## *Cynthia Marie Devers, Esq.*

### DATE OF ADMISSION

### *October 16, 2008*

The above named attorney was duly admitted to the bar of the Commonwealth of Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated: September 25, 2025**

Elizabeth E. Zisk
Chief Clerk

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 123 of 248 PageID #: 150

# Supreme Court of New Jersey



# Certificate of Good Standing

This is to certify that **CYNTHIA MARIE DEVERS**
(No. **037122008** ) *was constituted and appointed an Attorney at Law of New Jersey on* **November 10, 2008** *and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.*

*I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.*

*Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.*



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this 30th day of September, 2025.*

Clerk of the Supreme Court

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 124 of 248 PageID #: 151

INDEX NO. 716646/2025

EXHIBIT "C"
MICHAEL S. MISKA, ESQ.'s
AFFIDAVIT IN SUPPORT with
CERTIFICATES OF GOOD STANDING

FILED: QUEENS COUNTY CLERK 10/06/2025 01:45 PM          INDEX NO. 725646/2025
NYSCEF DOC. NO. 11                                        RECEIVED NYSCEF: 10/06/2025

SUPREME COURT OF THE STATE OF NEW YORK          Index No. 725646 / 2025
COUNTY OF QUEENS

-------------------------------------------------------------------

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG

    Plaintiffs,

      v.

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES

    Defendants.

-------------------------------------------------------------------

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
ADMISSION PRO HAC VICE
OF MICHAEL S. MISKA, ESQ.**

STATE OF PENNSYLVANIA    )
                          ) ss.:
COUNTY OF MONTGOMERY    )

Michael S. Miska, being duly sworn, hereby deposes and says:

1.     I make this Affidavit in support of a motion by plaintiffs to admit me to appear and participate in this action *pro hac vice.*

2.     I am a partner at Devers Miska Law located at One Bala Plaza, Suite 635, Bala Cynwyd, Pennsylvania 19004, Telephone Number: (215) 714-4030. I am fully familiar with the proceedings in this case, have personal knowledge of the facts set forth herein and make this affidavit in support of my admission as counsel *pro hac vice* to assist Plaintiffs' counsel in representing Plaintiffs at trial in this matter pursuant to 22 NYCRR 520.11(a)(1) and 22 NYCRR 602.2(a).

Case 1:25-cv-06693-ENV-TAM    Document 1-3    Filed 12/03/25    Page 126 of 248 PageID #: 153

3.      My practice is devoted to civil litigation, and I specialize in the complex field of aviation litigation.

4.      I am a member in good standing of the Commonwealth of Pennsylvania, to which I was admitted on October 18, 2010, and the Bar of the State of New Jersey on December 13, 2010. I have never been denied admission to the Bar of any jurisdiction, nor have I been the subject of disciplinary or contempt proceedings in any Court.

5.      I am familiar with and agree to be bound by the standards of professional conduct imposed upon members of the New York bar, including the rules of Court governing the conduct of attorneys and the Disciplinary Rules of the Code of Professional Responsibility. I acknowledge and agree that I shall be subject to the jurisdiction of the courts of the State of New York with respect to any acts occurring during the course of my participation in the matter.

6.      Accordingly, I respectfully request to be admitted to the Court *pro hac vice*.

_____
Michael S. Miska

Sworn to before me this

1st day of October, 2025

_____
Notary Public

| Commonwealth of Pennsylvania - Notary Seal |
| --- |
| Regina Carol Sykes, Notary Public |
| Montgomery County |
| My commission expires December 24, 2025 |
| Commission number 1410777 |
| Member, Pennsylvania Association of Notaries |

2



## Supreme Court of Pennsylvania

## CERTIFICATE OF GOOD STANDING

### *Michael Stanley Miska, Esq.*

#### DATE OF ADMISSION

*October 18, 2010*

The above named attorney was duly admitted to the bar of the Commonwealth of Pennsylvania, and is now a qualified member in good standing.



**Witness my hand and official seal**
**Dated:  September 25, 2025**

Elizabeth E. Zisk
Chief Clerk

# Supreme Court of New Jersey



# Certificate of Good Standing

*This is to certify that* **MICHAEL STANLEY MISKA**
*(No.* **022792010** *) was constituted and appointed an Attorney at Law of New Jersey on* **December 13, 2010** *and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.*

*I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.*

*Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.*



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this 30th day of September, 2025.*

Clerk of the Supreme Court

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 129 of 248 PageID #: 156

# EXHIBIT "D"
# PROPOSED ORDER

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 130 of 248 PageID #: 157

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------------------

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM                          INDEX NO.: 725646 / 2025
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG

    Plaintiffs,                                        **ORDER**

      v.

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES

    Defendants.

-------------------------------------------------------------------------

Plaintiffs having moved for the admission of attorney Cynthia M. Devers, Esq. *Pro Hac Vice*, it is hereby ORDERED that the aforesaid Motion seeking the admission *Pro Hac Vice* of attorney Cynthia M. Devers, Esq. of DEVERS MISKA LAW, in the within matters before the Court is **GRANTED**.

Dated: _____, 2025

_____

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 131 of 248 PageID #: 158

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

### Supreme COURT, COUNTY OF Queens

Index No: _____725646/2025_____     Date Index Issued: ___09/03/2025___

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Filed Date |
| | |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, Julia Michele Craig

Plaintiff(s)/Petitioner(s)

-against-

Jetblue Airways Corporation, Airbus Americas, Inc., Airbus S.A.S., Airbus SE, Honeywell International, Inc, Honeywell Aerospace US Inc., Honeywell Aerospace Technologies, John Does 1-10

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:**   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

**NOTE:** For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.

**TORTS**
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☒ Products Liability (specify):  Aviation _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration   [see **NOTE** in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify):   ☐ Initial   ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested
  - **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.
  - For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.

**REAL PROPERTY** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential      ☐ Commercial
  - Property Address: _____
  - **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.
- ☐ Partition
  - **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.
- ☐ Tax Certiorari (specify):   Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see **NOTE** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**STATUS OF ACTION OR PROCEEDING**   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: _____09/03/2025_____ |
| Has a summons and complaint or summons with notice been served? | ☒ | ☐ | If yes, date served: _____09/10/2025_____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☒ Notice of Motion   Relief Requested: Pro Hac Vice   Return Date: ___10/22/2025___
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☐ Order to Show Cause   Relief Requested: _____   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

## RELATED CASES

List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## PARTIES

For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties (List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants (For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email.) | Issue Joined (For each defendant, indicate if issue has been joined.) | Insurance Carriers (For each defendant, indicate insurance carrier, if applicable.) |
|---|---|---|---|---|
| ☐ | Name: Dybdahl, Kate S.<br><br>Role(s): Plaintiff/Petitioner | KELLY MURTHA, CASCIONE, PURCIGLIOTTI & GALLUZZI, 274 White Plains Road, Suite 6 , Eastchester, NY 10709, 914-961-1263, kelly.murtha@cpglawyers.com | ☒ YES  ☐ NO |  |
| ☐ | Name: Dybdahl, Paul C.<br><br>Role(s): Plaintiff/Petitioner | KELLY MURTHA, CASCIONE, PURCIGLIOTTI & GALLUZZI, 274 White Plains Road, Suite 6 , Eastchester, NY 10709, 914-961-1263, kelly.murtha@cpglawyers.com | ☒ YES  ☐ NO |  |
| ☐ | Name: Lehr, Graham J.<br><br>Role(s): Plaintiff/Petitioner | KELLY MURTHA, CASCIONE, PURCIGLIOTTI & GALLUZZI, 274 White Plains Road, Suite 6 , Eastchester, NY 10709, 914-961-1263, kelly.murtha@cpglawyers.com | ☒ YES  ☐ NO |  |
| ☐ | Name: Lehr, Chad R.<br><br>Role(s): Plaintiff/Petitioner | KELLY MURTHA, CASCIONE, PURCIGLIOTTI & GALLUZZI, 274 White Plains Road, Suite 6 , Eastchester, NY 10709, 914-961-1263, kelly.murtha@cpglawyers.com | ☒ YES  ☐ NO |  |
| ☐ | Name: Craig, Julia M.<br><br>Role(s): Plaintiff/Petitioner | KELLY MURTHA, CASCIONE, PURCIGLIOTTI & GALLUZZI, 274 White Plains Road, Suite 6 , Eastchester, NY 10709, 914-961-1263, kelly.murtha@cpglawyers.com | ☒ YES  ☐ NO |  |
| ☐ | Name: Jetblue Airways Corporation<br><br>Role(s): Defendant/Respondent | MARC ANTONECCHIA, HOLLAND & KNIGHT LLP, 787 Seventh Avenue, 31st Floor , New York, NY 10019, 9175775383, marc.antonecchia@hklaw.com | ☐ YES  ☒ NO |  |
| ☒ | Name: Airbus Americas, Inc.<br><br>Role(s): Defendant/Respondent | 2550 Wasser Terrace, Suite 9100 , Herndon, VA 20171 | ☐ YES  ☒ NO |  |
| ☒ | Name: Airbus S.A.S.<br><br>Role(s): Defendant/Respondent | 2, Rond-Point Emile Deqoitine, Blagnac, FR 31700 | ☐ YES  ☒ NO |  |
| ☒ | Name: Airbus SE<br><br>Role(s): Defendant/Respondent | 2, Rond-Point Emile Deqoitine, Blagnac, FR 31700 | ☐ YES  ☒ NO |  |
| ☒ | Name: Honeywell International, Inc<br><br>Role(s): Defendant/Respondent | 101 Columbia Road, P.O. Box 4000, Morristown, NJ 07960 | ☐ YES  ☒ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:  10/06/2025

          2932606

Attorney Registration Number

KELLY L MURTHA

Signature

KELLY L MURTHA

Print Name

*This form was generated by NYSCEF*

Case 1:25-cv-06682-ENV-TAM    Document 1-3    Filed 12/03/25    Page 133 of 248 PageID #: 160

# Request for Judicial Intervention Addendum

UCS-840A (7/2012)

Supreme COURT, COUNTY OF Queens

**Index No:** 725646/2025

For use when additional space is needed to provide party or related case information.

**PARTIES:**   For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☒ | Name: Honeywell Aerospace US Inc.<br>Role(s): Defendant/Respondent | 7955 S. Priest Drive, Suite 102, Tempe, AZ  85284 | ☐ YES  ☒ NO | |
| ☒ | Name: Honeywell Aerospace Technologies<br>Role(s): Defendant/Respondent | 7955 S. Priest Drive, Suite 102, Tempe, AZ  85284 | ☐ YES  ☒ NO | |
| ☒ | Name: Does, John<br>Role(s): Defendant/Respondent | | ☐ YES  ☒ NO | |

**RELATED CASES:**    List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases.

*This form was generated by NYSCEF*

1 of 1

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 134 of 248 PageID #: 161

 **321 A**—Affirmation of service of papers by mail, personal service, electronic means, overnight delivery, 9-90.

© 1990 by **Blumberg**Excelsior, Inc., Publisher. NYC 10013
www.blumberg.com

Index No. 725646/2025

KATE SUZANNE DYBDAHL, PAUL CHRISTIAN DYBDAHL,
GRAHAM JEANINE LEHR, CHAD RONALD LEHR,

Plaintiff(s)

against

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS SE,

Defendant(s)

**ATTORNEY'S
AFFIRMATION
OF SERVICE**

STATE OF NEW YORK, COUNTY OF Westchester                    SS.:

The undersigned, attorney at law of the State of New York affirms: that deponent is
an associate counsel of Cascione Purcigliotti & Galluzzi PC                    attorney(s) of record for

Plaintiffs

On October 7, 2025                    I served the annexed RJI with Notice of Motion and Supporting Documents

☑ **Service By Mail** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:
see service list below

☐ **Personal Service on Individual** by delivering a true copy thereof personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein:*

☐ **Service by Electronic Means** by transmitting the papers by electronic means to the telephone number listed below, which number was designated by the attorney for such purpose. I received a signal from the equipment of the attorney served indicating that the transmission was received. I also deposited a true copy of the papers, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, addressed to the attorney at the address set forth after the name:

☐ **Overnight Delivery Service** by depositing a true copy thereof. enclosed in a wrapper addressed as shown below, into the custody of for overnight
delivery, prior to the latest time designated by that service for overnight delivery.

AIRBUS AMERICAS, INC.
2550 Wasser Terrace, Suite 9100
Herndon, VA 20171

AIRBUS S.A.S.
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

AIRBUS SE
2, Rond-Point Emile Deqoitine, 31700 Blagnac, France

HONEYWELL INTERNATIONAL, INC.
101 Columbia Road
P.O. Box 4000
Morristown, NJ 07960

HONEYWELL AEROSPACE US INC.
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

HONEYWELL AEROSPACE TECHNOLOGIES
7955 S. Priest Drive, Suite 102
Tempe, AZ 85284

*incoming counsel for JetBlue served via
NYSCEF

The undersigned affirms the foregoing statement to be true under the penalties of perjury.

Dated October 7, 2025

_____ *Attorney at Law*
Kelly L. Murtha, Esq.

1 of 1

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 135 of 248 PageID #: 162

## IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS

| | |
|---|---|
| **Kate Suzanne Dybdahl; Paul Christian Dybdahl; Julia Michele Craig; Graham Jeanine Lehr; Chad Ronald Lehr**<br><br>Plaintiff/Petitioner<br><br>VS.<br><br>**Airbus S.A.S.; ET AL; JetBlue Airways Corporation; Airbus Americas, Inc.; Airbus SE; Honeywell Aerospace Technologies; Honeywell Aerospace US Inc.; HONEY WELL INTERNATIONAL**<br><br>Defendant/Respondent | Hearing Date:<br><br>INDEX NO: **725646/2025**<br>Index Date: **09/03/2025**<br>AFFIRMATION OF SERVICE OF:<br>**SUMMONS; CIVIL ACTION COMPLAINT; ATTORNEY VERIFICATION** |

Received by **Michel Meza Chacon**, on the **30th day of September, 2025 at 2:33 PM** to be served upon **Honeywell International, Inc.** at **855 S Mint St, Charlotte, Mecklenburg County, NC 28202.**

The undersigned, affirms: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **3rd day of October, 2025 at 1:39 PM** at the address of **855 S Mint St, Charlotte, Mecklenburg County, NC 28202**, this affiant served the **SUMMONS; CIVIL ACTION COMPLAINT; ATTORNEY VERIFICATION** upon **Honeywell International, Inc.** in the manner described below:

**PERSONAL SERVICE**, by personally delivering 1 true and correct copy(ies) of the **SUMMONS; CIVIL ACTION COMPLAINT; ATTORNEY VERIFICATION**, with the date and hour of service endorsed thereon by this affiant, to the named defendant.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY(IES) OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**Honeywell International, Inc.,** I delivered the documents to Honeywell International, Inc. with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a gray-haired white female contact 35-45 years of age, 5'6"-5'8" tall and weighing 160-180 lbs.

The undersigned asked the indicated person whether the defendant and/or present occupant was presently in the military service of the United States Government or in active duty in the military service of the State of New York or a dependent of anybody in the military and was told defendant and/or present occupant was not.

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Executed on ___10/03/25___.

_(signature)_

**Michel Meza Chacon, NC**

ABC Legal Services, LLC
DCA Lic. #1380619 Exp, 02/28/26
147 Prince St, Suite 4-6, Brooklyn, NY 11201

Page 1 of 1
FOR: **Devers Miska Law**
REF: **Fume Events**

Tracking #: **0189420276**

FILED: QUEENS COUNTY CLERK 10/08/2025 04:18 PM                    INDEX NO. 725646/2025
NYSCEF DOC. NO. 16                                              RECEIVED NYSCEF: 10/08/2025

New York State Unified Court System

## Additional Notice of Lawsuit

UCS-CCR1 (04/2022)
Page 1 of 2
nycourthelp.gov

| | |
|---|---|
| Name of Court: | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF |
| County: | QUEENS |
| Street Address: | 88-11 Sutphin Blvd. |
| City, State, Zip Code: | Jamaica, New York 11435 |
| | |
| Name of Defendant: | Airbus S.A.S.; ET AL; JetBlue Airways Corporation; Airbus Americas, Inc.; |
| Defendant Address: | 855 S Mint St, Charlotte, NC 28202 |
| | |
| Plaintiff: | Kate Suzanne Dybdahl; Paul Christian Dybdahl; Julia Michele Craig; Graham |
| Defendant: | Airbus S.A.S.; ET AL; JetBlue Airways Corporation; Airbus Americas, Inc.; |
| Original Creditor: | |
| Index Number: | 725646/2025 |

**Attention:** a lawsuit has been filed against you claiming that you owe money for an unpaid consumer debt.

You may wish to contact an attorney.

You should respond to the lawsuit as soon as possible by filing an "answer" which may be done at the court clerk's office listed above.

If you do not respond to the lawsuit, the court may enter a money judgment against you. Once entered, a judgment is good and can be used against you for twenty years, and your personal property and money, including a portion of your paycheck and/or bank account, may be taken from you. Also, a judgment may affect your credit score and can affect your ability to rent a home, find a job, or take out a loan.

You CANNOT be arrested or sent to jail for owing a debt.

Additional information can be found at the New York State Court System website.

### Sources of information and assitance:

The court encourages you to inform yourself about your options as a defendant in this lawsuit. In addition to seeking assistance from a private attorney or legal aid office, there are free legal assistance computer programs that you can use online to help you represent yourself in this lawsuit.

For further information, or to locate a legal aid program near you, you may visit the LawHelpNY website or the New York State Court System website, which has information for representing yourself and links to other resources at:

https://www.nycourts.gov/courthelp/MoneyProblems/whenYouOwe.shtml.

---

 **ADA Accommodations**
ada@nycourts.gov

 **Spoken or Sign Language**
interpreter@nycourts.gov
2 of 4

**COURT Help**
1-800-COURT-NY
(268-7869)

FILED: QUEENS COUNTY CLERK 10/08/2025 04:18 PM          INDEX NO. 725646/2025
NYSCEF DOC. NO. 16                                       RECEIVED NYSCEF: 10/08/2025



New York State Unified Court System

# Notificación Adicional de Demanda

**UCS-CCR1 (04/2022)**
**Page 2 of 2**
nycourthelp.gov

| | |
|---|---|
| Tribunal: | SUPREME COURT OF THE STATE OF NEW YORK, COUNTY |
| Condado: | QUEENS |
| Dirección: | 88-11 Sutphin Blvd. |
| Ciudad, estado, Código postal: | Jamaica, New York 11435 |
| | |
| Nombre de la parte demandada: | Airbus S.A.S.; ET AL; JetBlue Airways Corporation; Airbus |
| Dirección: | 855 S Mint St, Charlotte, NC 28202 |
| | |
| Parte Demandante: | Kate Suzanne Dybdahl; Paul Christian Dybdahl; Julia Michele |
| Parte Demandada: | Airbus S.A.S.; ET AL; JetBlue Airways Corporation; Airbus |
| Acreedor Original: | |
| Número de causa: | 725646/2025 |

**Atención:** Se ha entablado una demanda en su contra reclamándole una deuda de consumo.

Si quiere, consulte con un abogado.

Conteste a la demanda lo antes posible al entablar una "contestación" en la secretaría del tribunal arriba mencionado.

El tribunal podría emitir un fallo monetario en su contra si no contesta la demanda. Una vez que se emita el fallo, este tendrá validez y podría usarse en su contra por 20 años y le podrían quitar sus bienes personales y dinero, incluso una porción de su sueldo y/o cuenta bancaria. También, un fallo monetario podría afectarle su puntuación crediticia y podría impactar su capacidad para alquilar una vivienda, conseguir empleo, o solicitar un préstamo.

NO se le arrestará ni encarcelará por deudas.

Para más información visite la página web del Sistema de los Tribunales del estado de Nueva York.

**Fuentes de información y ayuda:**

El tribunal le anima a informarse acerca de las opciones disponible como persona demandada. Además de buscar ayuda con abogados privados o la oficina de ayuda legal, sepa que existen programas de computadora de asesoría legal, en línea, a su disposición si se representará por derecho propio en esta demanda.

Para más información, o para localizar un programa de asesoría legal cercano a usted, visite la página web LawHelpNY o la página web del Sistema de los Tribunales del estado de Nueva York que ofrece información y enlaces para recursos de representación por derecho propio https://www.nycourts.gov/courthelp/MoneyProblems/whenYouOwe.shtml.

| | | | |
|---|---|---|---|
| ♿ **ADA Accommodations** ada@nycourts.gov |  **Spoken or Sign Language** interpreter@nycourts.gov | **COURT Help** | **1-800-COURT-NY** (268-7869) |

FILED: QUEENS COUNTY CLERK 10/08/2025 04:18 PM

NYSCEF DOC. NO. 16

RECEIVED NYSCEF: 10/08/202

## IN THE COURT OF COMMON PLEAS OF THE STATE OF SOUTH CAROLINA FOR YORK COUNTY

**Portfolio Recovery Associates LLC**

Plaintiff/Petitioner

vs.

**Leonard E. Adams**

Defendant/Respondent

DOCKET NO: **2025CP4603865**

FILING DATE: **10/02/2025**

AFFIDAVIT OF SERVICE OF:
**Summons; Complaint**

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **6th day of October, 2025**, at **2:45 PM**, at the address of **1540 Lawrence Rd, Clover, York County, SC 29710;** this affiant served the above described documents upon **Leonard E. Adams** by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Leonard E. Adams, I delivered the documents to Leonard E. Adams with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired black male contact over 65 years of age, 5'10"-6'0" tall and weighing 180-200 lbs with an accent..**

Date: **10/06/25**

_____
**Michel Meza Chacon**

SUBSCRIBED AND SWORN to before me this _08_ day of _OCTOBER_, 20_25_

_____
NOTARY PUBLIC in and for the State of **South Carolina**
My commission expires _____

---

REF: **3006050**
FOR: **Scott & Associates, P.C.**

PAGE 1 OF 1
ORIGINAL AFFIDAVIT OF SERVICE





Tracking #: **0189591833**

4 of 4

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 139 of 248 PageID #: 166

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF QUEENS

| | |
|---|---|
| KATE SUZANNE DYBDAHL, PAUL CHRISTIAN DYBDAHL, GRAHAM JEANINE LEHR, CHAD RONALD LEHR, and JULIA MICHELE CRAIG, <br><br> Plaintiffs, <br><br> -against- <br><br> JETBLUE AIRWAYS CORPORATION, AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS SE, HONEYWELL INTERNATIONAL, INC., HONEYWELL AEROSPACE US INC., and HONEYWELL AEROSPACE TECHNOLOGIES, and JOHN DOES 1-10., <br><br> Defendants. | Index No. 725646/2025 <br><br> **STIPULATION TO EXTEND TIME** |

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned counsel for defendant Airbus Americas, Inc. and plaintiffs Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, and Julia Michele Craig ("Plaintiffs") that Airbus Americas, Inc.'s time to answer, move to dismiss, or otherwise appear in response to Plaintiffs' Civil Action Complaint in the above-captioned matter is hereby extended by 30 days to November 17, 2025. The Parties agree that by entering into this Stipulation, Airbus Americas, Inc. does not waive any defenses it may have to the Civil Action Complaint.

**IT IS FURTHER STIPULATED AND AGREED**, that a photocopy, email copy, or facsimile copy of this Stipulation fully executed by the Parties or their attorneys shall be deemed an original for all purposes.

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 140 of 248 PageID #: 167

Dated: October 22, 2025


By: ___*Thomas G. Cascione*___
Thomas G. Cascione
Kelly Murtha
Cascione Purcigliotti and Galuzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY 10709-4419
Tel: (914) 961-1263
thomas.cascione@cpglawyers.com

and

DEVERS MISKA LAW
Cynthia M. Devers
Michael S. Miska
(*Pro Hac Vice Anticipated*)
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
cdevers@dmllc.law
mmiska@dmllc.law
*Attorneys for Plaintiffs*

By: ___*Christopher M. Odell*___
Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2400
Fax: (713) 576-2499
Christopher.Odell@arnoldporter.com

David J Weiner (*to be admitted pro hac vice*)
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
David.Weiner@arnoldporter.com

*Counsel for Defendant*
*Airbus Americas, Inc.*

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 141 of 248 PageID #: 168

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

| | |
|---|---|
| KATE SUZANNE DYBDAHL, PAUL CHRISTIAN DYBDAHL, GRAHAM JEANINE LEHR, CHAD RONALD LEHR, and JULIA MICHELE CRAIG,<br><br>Plaintiffs,<br><br>-against-<br><br>JETBLUE AIRWAYS CORPORATION, AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS SE, HONEYWELL INTERNATIONAL, INC., HONEYWELL AEROSPACE US INC., and HONEYWELL AEROSPACE TECHNOLOGIES, and JOHN DOES 1-10.,<br><br>Defendants. | Index No. 725646/2025<br><br><br>**STIPULATION TO WAIVE SERVICE, EXTEND TIME, AND VOLUNTARILY DISMISS** |

**IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned counsel for defendants Airbus S.A.S. and Airbus SE and plaintiffs Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, and Julia Michele Craig ("Plaintiffs") that Airbus S.A.S. waives its right to service properly effectuated under the Hague Service Convention and that the below-signed counsel accepts service on Airbus S.A.S.'s behalf. Airbus S.A.S.'s time to answer, move to dismiss, or otherwise appear in response to Plaintiffs' Civil Action Complaint in the above-captioned matter is hereby extended by 30 days to November 17, 2025. The Parties agree that by entering into this Stipulation, Airbus S.A.S. does not waive any defenses it may have to the Civil Action Complaint, other than improper service.

**IT IS FURTHER STIPULATED AND AGREED**, that Plaintiffs voluntarily dismiss their claims against Airbus SE without prejudice, and Airbus SE need not respond to Plaintiffs' Civil Action Complaint in the above-captioned matter. Plaintiffs agree to file a Notice of

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 142 of 248 PageID #: 169

Discontinuance pursuant to NY CPLR § 3217 voluntarily dismissing Airbus SE without prejudice

from the above-captioned matter within 14 days of the signing of this Stipulation.

**IT IS FURTHER STIPULATED AND AGREED,** that a photocopy, email copy, or

facsimile copy of this Stipulation fully executed by the Parties or their attorneys shall be deemed

an original for all purposes.

Dated: October 27, 2025

By: /s/ Thomas G. Cascione
    Thomas G. Cascione
    Kelly Murtha
    Cascione Purcigliotti and Galuzzi P.C.
    274 White Plains Road
    2nd Floor, Suite 6
    Eastchester, NY 10709-4419
    Tel: (914) 961-1263
    thomas.cascione@cpglawyers.com

    and

    DEVERS MISKA LAW
    Cynthia M. Devers
    Michael S. Miska
    (*Pro Hac Vice Anticipated*)
    One Bala Plaza, Suite 635
    Bala Cynwyd, PA 19004
    Tel: (215) 714-4030
    cdevers@dmllc.law
    mmiska@dmllc.law
    *Attorneys for Plaintiffs*

By: /s/ Christopher M. Odell
    Christopher M. Odell
    ARNOLD & PORTER KAYE SCHOLER LLP
    700 Louisiana Street, Suite 4000
    Houston, TX 77002-2755
    Telephone: (713) 576-2400
    Fax: (713) 576-2499
    Christopher.Odell@arnoldporter.com

    David J Weiner (*to be admitted pro hac vice)*
    601 Massachusetts Ave., N.W.
    Washington, DC 20001
    Telephone: (202) 942-5000
    Fax: (202) 942-5999
    David.Weiner@arnoldporter.com

    *Counsel for Defendant*
    *Airbus S.A.S., Inc.*

-2-

Case 1:25-cv-06682-ENV-TAM    Document 1-2    Filed 12/03/25    Page 143 of 248 PageID #: 170

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

                              Plaintiffs,

    -against-

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10,

                            Defendants.

Index No. 725646/2025

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that, upon the annexed memorandum of law, and all other pleadings and proceedings in this case, defendant JetBlue Airways Corporation ("JetBlue"), by and through its counsel, will move this Court before the Hon. Scott Dunn, at the Courthouse located at 25-10 Court Square, Long Island City, NY 11101, at Part 5 thereof on November 20, 2025 at 10:00 a.m., or as soon thereafter as counsel can be heard, for an order pursuant to CPLR § 3211(a)(7), dismissing all claims in Plaintiff's Civil Action Complaint against JetBlue.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR § 2214(b), answering papers, if any, are required to be served at least seven (7) days before the return date of this motion, and reply papers, if any, shall be served at least one (1) day prior to the return date.

1

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 144 of 248 PageID #: 171

Dated: New York, New York
October 30, 2025

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: /s/ Marc Antonecchia
    Steven Raffaele
    Sarah Korapaty
    Marc Antonecchia
    Holland & Knight LLP
    787 Seventh Avenue, 31st Floor
    New York, New York 10019
    Tel: (212) 513-3200
    steven.raffaele@hklaw.com
    sarah.korapaty@hklaw.com
    marc.antonecchia@hklaw.com

    Michael Maroney
    Holland & Knight LLP
    10 St. James Avenue, 11th Floor
    Boston, Massachusetts 02116
    Tel: (617) 523-2700
    michael.maroney@hklaw.com

    *Attorneys for Defendant JetBlue Airways Corporation*

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of October, 2025, a copy of the foregoing

Notice of Motion was filed electronically this day and is available for viewing from the Court's

ECF system. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*/s/ Marc Antonecchia*
Marc Antonecchia

3

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 146 of 248 PageID #: 173

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

          Plaintiffs,

   -against-


JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10,

          Defendants.

Index No. 725646/2025

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JETBLUE AIRWAYS CORPORATION'S MOTION TO DISMISS

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 147 of 248 PageID #: 174

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND...................................................................................................2

LEGAL STANDARD ...........................................................................................................3

ARGUMENT.......................................................................................................................4

I.    Plaintiffs' Claims Against JetBlue Are Barred By New York's Workers'
Compensation Law .......................................................................................4

    A.    Negligence (Count I), Negligent Misrepresentation and Fraud
(Count II), and Negligent Infliction of Emotional Distress (Count
XI) Claims Against JetBlue Are Barred By the Exclusivity
Provisions of New York Workers' Compensation Law........................4

    B.    Plaintiffs' Claims Against JetBlue Do Not Invoke Any Exception
to the Exclusivity Provisions of New York's Workers'
Compensation Law........................................................................6

II.    Plaintiffs' Loss Of Consortium (Count XII) Claim Against JetBlue Is
Derivative, And Thus, Fails As A Matter Of Law ...........................................7

CONCLUSION ...................................................................................................................7

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Consol. Edison Co. of N.Y., Inc.,*
189 A.D.2d 497 (1st Dep't 1993) ..........................................................................6

*Barbetta v. NBCUniversal Media, LLC,*
227 A.D.3d 763 (2d Dep't 2024) ..........................................................................3

*Cohen v. Avanade, Inc.,*
874 F. Supp. 2d 315 (S.D.N.Y. 2012) ....................................................................4

*Connaughton v. Chipotle Mexican Grill, Inc.,*
29 N.Y.3d 137 (2017) ............................................................................................3

*Gagliardi v. Trapp,*
221 A.D.2d 315 (2d Dep't 1995) ..........................................................................6

*Heritage v. Van Patten,*
59 N.Y.2d 1017 (1983) ..........................................................................................4

*Holmes v. City of New Rochelle,*
190 A.D.2d 713 (2d Dep't 1993) ..........................................................................7

*Kruger v. EMFT, LLC,*
87 A.D.3d 717 (2d Dep't 2011) ............................................................................4

*Leon v. Martinez,*
84 N.Y.2d 83 (1994) ..............................................................................................3

*Orzechowski v. Warner-Lambert Co.,*
92 A.D.2d 110 (2d Dep't) ......................................................................................5

*Paisley v. Coin Device Corp.,*
5 A.D.3d 748 (2d Dep't 2004) ..............................................................................7

*Reich v. Manhattan Boiler & Equip. Corp.,*
91 N.Y.2d 772 (1998) ............................................................................................1

*Rys v. Dubois,*
216 A.D.3d 689 (2d Dep't 2023) ..........................................................................1

*T.V. v. N.Y. State Dep't of Health,*
88 A.D.3d 290 (2d Dep't 2011) ............................................................................3

ii

*Tompkins v. Int'l Bus. Machines Corp.*,
   247 A.D.2d 465 (2d Dep't 1998) ....................................................................................4

*Zaborowski v. Roman Catholic Diocese of Brooklyn*,
   195 A.D.3d 884 (2d Dep't 2021) ....................................................................................6

**Statutes**

N.Y. Workers' Comp. Law § 11 ......................................................................................4

N.Y. Workers' Comp. Law § 29(6)..................................................................................4

WCL §§ 11, 29(6)............................................................................................................6

**Other Authorities**

CPLR § 3211(a)(7) ...................................................................................................1, 3, 7

iii

Defendant JetBlue Airways Corporation ("JetBlue") respectfully submits this memorandum of law in support of its motion, pursuant to CPLR § 3211(a)(7), to dismiss all claims and requests for relief asserted against it in the Civil Action Complaint filed on September 3, 2025 (the "Complaint"), by plaintiffs Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, and Julia Michele Craig (collectively, "Plaintiffs"). NYSCEF Dkt. No. 1.

## PRELIMINARY STATEMENT

Plaintiffs are three JetBlue flight attendants and their spouses who allege tort claims arising out of workplace injuries in a transparent attempt to evade the clear and exclusive remedies of the New York's Workers' Compensation Law. As it is undisputed that Plaintiff's alleged injuries arose from their duties as JetBlue employees, in the course of their employment, aboard JetBlue-operated aircraft, their claims against JetBlue are barred as a matter of law and must be dismissed.

The New York Workers' Compensation Law ("WCL") (§§ 11, 29(6)) provides the *exclusive remedy* for employees seeking recovery for injuries allegedly sustained in the workplace. New York courts have long and unequivocally held that employees may not circumvent that bar by artful pleading or rebranding workplace accidents as common-law torts. *See, e.g., Reich v. Manhattan Boiler & Equip. Corp.*, 91 N.Y.2d 772, 780 (1998) ("Approval of the practice would jeopardize the workers' compensation system ... by holding employers subject to the no-fault liability envisioned by the statute but denying them the protection from tort actions and large damage verdicts which the statute was intended to foreclose."); *Rys v. Dubois*, 216 A.D.3d 689, 690 (2d Dep't 2023) (holding that in exchange for swift payment of benefits for injuries sustained in the course of employment, employees forfeit their right to maintain a common-law tort action against their employer for work-related injuries). Nor may Plaintiffs invoke an "intentional tort"

1

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 151 of 248 PageID #: 178

exception, because their Complaint is devoid of a single allegation suggesting that JetBlue or any of its employees committed an intentional or deliberate act directed at causing harm to the Plaintiffs.

The derivative loss of consortium claims brought by the spouses of two of the employee Plaintiffs only compound the overreach. The Court must dismiss these claims because they rise and fall with the barred underlying claims.

In short, the Complaint is an improper attempt to recast workplace injury claims, exclusively governed by the New York Workers' Compensation statute, as common law torts. Accordingly, Counts I, II, XI, and XII of the Complaint asserted against JetBlue must be dismissed with prejudice.

## FACTUAL BACKGROUND

As alleged in the Complaint,[1] Plaintiffs Kate Dybdahl, Graham Lehr, and Julia Craig were exposed to so-called "fume events" during the course of their employment with JetBlue that purportedly caused them injury. Compl. ¶¶ 122-59, 162-187, 190-209. "Plaintiffs were flight attendants aboard the subject flights when the fume events occurred, and therefore experienced and observed the sequence of events that led to their injuries." *Id.* ¶ 314.

Plaintiff Kate Dybdahl asserts that her alleged exposure occurred on or about September 3, 2022 during the course of her employment as a JetBlue flight attendant. Compl. ¶¶ 122-23, 126. Plaintiff Graham Lehr alleges that her exposure occurred on or about December 16, 2022 during the course of her employment as a JetBlue flight attendant. Compl. ¶¶ 162-64. Plaintiff Julia Craig

---

[1] JetBlue disputes many of the "facts" alleged by Plaintiffs, but reproduces those facts here as they appear in the complaint because this Court must accept the facts alleged as true for purposes of this motion to dismiss. JetBlue expressly reserves its right, if necessary, to contest the truth of these allegations at an appropriate juncture of this litigation.

2

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 152 of 248 PageID #: 179

alleges that she experienced four separate "fume events," occurring approximately in 2013, March 29, 2023, April 10, 2023, and August 21, 2024, each during the course of her employment as a JetBlue flight attendant. Compl. ¶¶ 190-93, 198-99.

Plaintiffs Kate Dybdahl, Graham Lehr, and Julia Craig (the "Plaintiff Flight Attendants") assert claims against JetBlue for negligence (Compl. ¶¶ 210-16), negligent misrepresentation and fraud (Compl. ¶¶ 217-30), negligent infliction of emotional distress (Compl. ¶¶ 311-317), and seek monetary damages for each.

Plaintiff Paul Dybdahl asserts a derivative loss of consortium claim arising out of the alleged injuries to his spouse, Plaintiff Kate Dybdahl. Complaint ¶¶ 160-61, 319, 322-24. Plaintiff Chad Lehr asserts a derivative loss of consortium claim arising out of the alleged injuries to his spouse, Plaintiff Graham Lehr. Compl. ¶¶ 188-89, 320-24.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to CPLR § 3211(a)(7) should be granted when the plaintiff fails to allege facts sufficient to state a cause of action. *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994); *see also T.V. v. N.Y. State Dep't of Health*, 88 A.D.3d 290, 306 (2d Dep't 2011). While the Court must accept the facts as alleged in the complaint as true, dismissal is warranted where the allegations fail to establish a legally cognizable claim or otherwise demonstrate that recovery is barred as a matter of law. *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017); *Barbetta v. NBCUniversal Media, LLC*, 227 A.D.3d 763, 765-66 (2d Dep't 2024).

## ARGUMENT

**I.** **Plaintiffs' Claims Against JetBlue Are Barred By New York's Workers' Compensation Law**

**A. Negligence (Count I), Negligent Misrepresentation and Fraud (Count II), and Negligent Infliction of Emotional Distress (Count XI) Claims Against JetBlue Are Barred By the Exclusivity Provisions of New York Workers' Compensation Law**

Each of Plaintiffs' claims are barred by the exclusivity provisions of the WCL. Section 11

of the WCL provides, in pertinent part:

> The liability of an employer prescribed by the last preceding section shall be exclusive **and in place of any other liability whatsoever, to such employee, his or her** personal representatives, . . . **spouse,** . . . or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom[.]

N.Y. Workers' Comp. Law § 11 (emphasis added).

Section 29(6) of the WCL provides, in pertinent part:

> The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured or killed by the negligence or wrong of another in the same employ[.]

N.Y. Workers' Comp. Law § 29(6). WCL is the exclusive remedy of an employee injured "by the

negligence or wrong of another in the same employ." *Heritage v. Van Patten*, 59 N.Y.2d 1017,

1018 (1983); *Tompkins v. Int'l Bus. Machines Corp.*, 247 A.D.2d 465, 466 (2d Dep't 1998) ("[T]he

Workers' Compensation Law bars an employee from maintaining a common-law action to recover

damages arising out of an employer's negligence[.]") (internal citations omitted); *Cohen v.

Avanade, Inc.*, 874 F. Supp. 2d 315, 327 (S.D.N.Y. 2012) ("Even if the complaint adequately

alleged negligence and negligent misrepresentation, these causes of action still would fail because

the New York Workers' Compensation Law is 'the exclusive remedy to an employee ... when such

employee is injured ... by the negligence or wrong of another in the same employ.'"); *Kruger v.*

4

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 154 of 248 PageID #: 181

*EMFT, LLC*, 87 A.D.3d 717, 719 (2d Dep't 2011) (finding claim for negligent infliction of emotional distress barred by the Worker's Compensation Law).

Accepting the allegations in the Complaint as true for present purposes, "Plaintiffs were flight attendants aboard the subject flights when the fume events occurred," (Compl. ¶ 314), and therefore there can be no dispute that the Plaintiff Flight Attendants' alleged injuries arose during and out of their employment with JetBlue. Each alleges that she was on duty and performing her job responsibilities aboard JetBlue-operated aircraft at the time of the alleged incidents:

- Plaintiff Kate Dybdahl – "On September 3, 2022 JetBlue Flight Number 673 was operating Airbus 321 … when it experienced a fume event … At the time of the incident, Plaintiff Kate Dybdahl … was a flight attendant … As a result of the incident Plaintiff Kate Dybdahl was seriously injured" Compl. ¶¶ 122-23, 151.

- Plaintiff Graham Lehr – "At the time of the incident, Plaintiff Graham Lehr was … a flight attendant … On December 16, 2022, JetBlue Flight Number 673 was operating Airbus 320 … when it experienced a fume event … As a result of the incident, Plaintiff Graham Lehr was seriously injured" Compl. ¶¶ 162-63, 181.

- Plaintiff Julia Craig – "At the time of the 2024 incident, Plaintiff Julia Craig … was a flight attendant … involved in four separate fume event incidents on Airbus 320 and 321 aircraft … But for this incident, Plaintiff Julia Craig would not have sustained the serious injuries" Compl. ¶¶ 190-91, 209.

Indeed, the Complaint contains no allegations that any Plaintiff was acting outside the scope of her employment or that her alleged exposure occurred other than during the performance of her assigned job duties. Thus, Plaintiffs' claims therefore fall squarely within the WCL statutory bar. *Orzechowski v. Warner-Lambert Co.*, 92 A.D.2d 110, 112-13 n. 1 (2d Dep't 1983).

Simply put, Plaintiffs cannot bring a claim against JetBlue under any negligence theory of recovery. Accordingly, the Court must dismiss Counts I, II, and XI against JetBlue.

## B. Plaintiffs' Claims Against JetBlue Do Not Invoke Any Exception to the Exclusivity Provisions of New York's Workers' Compensation Law

To overcome the exclusivity bar, Plaintiffs must allege "an intentional or deliberate act by the employer directed at causing harm to the particular employee." *Acevedo v. Consol. Edison Co. of N.Y., Inc.*, 189 A.D.2d 497, 501 (1st Dep't 1993); *see also Zaborowski v. Roman Catholic Diocese of Brooklyn*, 195 A.D.3d 884, 885 (2d Dep't 2021) (same); *Gagliardi v. Trapp*, 221 A.D.2d 315, 316 (2d Dep't 1995) ("To warrant an exclusion from the exclusive remedy provision set forth under Workers' Compensation Law § 29(6), the plaintiff ''must allege an intentional or deliberate act by the employer directed at causing harm to the plaintiff"). Mere knowledge or recklessness is not enough; the Complaint must allege that the conduct was deliberate, targeted, and malicious. *Acevedo* instructs:

> In order to constitute an intentional tort, the conduct must be engaged in with the desire to bring about the consequences of the act. A mere knowledge and appreciation of a risk is not the same as the intent to cause injury. . . A result is intended if the act is done with the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue.

*Acevedo*, 189 A.D.2d at 501. The Complaint contains no such allegations. Plaintiffs do not – and cannot – allege that JetBlue intended or deliberately acted to expose them to fumes or to cause them harm. At most, Plaintiffs allege actions taken by JetBlue were not adequate and/or JetBlue should have taken corrective action or exercised reasonable care. Compl. ¶¶ 69, 73, 82, 102, 212-15. Such allegations strictly sound in negligence, *not* intentional tort.

Count II of the Complaint, labeled in part, "Fraud," contains mere conclusory and general statements that JetBlue engaged in "false representations" concerning fume events. Compl. ¶¶ 218-19. Although paragraph 219 of the Complaint generally refers back to the allegations in previous sections of the Complaint, there is no allegation that there were false statements made to specific

6

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 156 of 248 PageID #: 183

flight attendants that resulted in their injuries. Paragraph 220 of the Complaint, which alleges "Defendant told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst" lacks any specificity, and, in any event, fails to allege any resulting harm (since seemingly the fume exposure had already occurred). Paragraph 221 of the Complaint alleges disciplinary action and lost pay directed to plaintiffs Kate Dybdahl and Julia Craig, but does not constitute an allegation of fraud. The remaining paragraphs in Count II also do not constitute acts directed at causing harm to the Plaintiff Flight Attendants.

## II. Plaintiffs' Loss Of Consortium (Count XII) Claim Against JetBlue Is Derivative, And Thus, Fails As A Matter Of Law

As set forth, *supra*, Section 11 of the Workers' Compensation statute provides that the liability of an employer shall be exclusive and in place of any other liability whatsoever to the employee's spouse. Because a loss of consortium claim is purely derivative of an injured spouse's underlying tort claim, it must be dismissed when the primary cause of action is dismissed. *See Paisley v. Coin Device Corp.*, 5 A.D.3d 748, 750 (2d Dep't 2004) (dismissing loss of consortium claim where primary claim was barred by the Workers' Compensation law); *see also Holmes v. City of New Rochelle*, 190 A.D.2d 713, 714 (2d Dep't 1993) ("Since the cause of action to recover damages for loss of consortium is derivative in nature, the dismissal of the primary causes of action necessitates the dismissal of that cause of action as well[.]").

Accordingly, the Court must dismiss Count XII against JetBlue.

## CONCLUSION

For the foregoing reasons, JetBlue respectfully requests that the Court enter an Order pursuant to CPLR § 3211(a)(7) dismissing Plaintiffs' Complaint in its entirety as against JetBlue.

7

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 157 of 248 PageID #: 184

Dated: New York, New York
October 30, 2025

Respectfully submitted,
HOLLAND & KNIGHT LLP

By: /s/ Marc Antonecchia
Steven Raffaele
Sarah Korapaty
Marc Antonecchia
Holland & Knight LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
Tel: (212) 513-3200
steven.raffaele@hklaw.com
sarah.korapaty@hklaw.com
marc.antonecchia@hklaw.com

Michael Maroney
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, Massachusetts 02116
Tel: (617) 523-2700
michael.maroney@hklaw.com

*Attorneys for Defendant JetBlue Airways Corporation*

8

Case 1:25-cv-06682-ENV-TAM Document 1-2 Filed 12/03/25 Page 158 of 248 PageID #: 185

## WORD COUNT CERTIFICATION

I hereby certify that this Memorandum of Law in Support of Defendant JetBlue Airways Corporation's Motion to Dismiss complies with 22 NYCRR 202.8-b(a)-(c) word count limit. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this Memorandum of Law in Support of Defendant JetBlue Airways Corporation's Motion to Dismiss exclusive of the caption, table of contents, table of authorities, and signature block is 2,097 words.

Dated: New York, New York
      October 30, 2025

*/s/ Marc Antonecchia*
Marc Antonecchia

9

Case 1:25-cv-06682-ENV-TAM    Document 1-2    Filed 12/03/25    Page 159 of 248 PageID #: 186

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of October, 2025, a copy of the foregoing Memorandum of Law in Support of Defendant JetBlue Airways Corporation's Motion to Dismiss was filed electronically this day and is available for viewing from the Court's ECF system. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*/s/ Marc Antonecchia*
Marc Antonecchia

10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

                                Plaintiffs,

   -against-

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10,

                              Defendants.

Index No. 725646/2025

**[PROPOSED] ORDER
GRANTING DEFENDANT
JETBLUE AIRWAYS
CORPORATION'S MOTION
TO DISMISS THE CIVIL
ACTION COMPLAINT
PURSUANT TO CPLR §
3211(a)(7)**

**THIS MATTER** having come before the Court upon the motion of defendant JetBlue Airways Corporation ("JetBlue") through its counsel, on notice to all parties, on a Motion to Dismiss pursuant to CPLR § 3211(a)(7), and the Court having reviewed the moving and responding papers and the arguments of the parties, it is:

**ORDERED** that JetBlue's motion to dismiss pursuant to CPLR § 3211(a)(7) is GRANTED in its entirety;

**ORDERED** that all claims in Plaintiff's Civil Action Complaint against JetBlue are dismissed with prejudice; and

**IT IS FURTHER ORDERED** that a true copy of this Order shall be deemed served upon all counsel of record upon upload to NYSCEF.

Dated:_____, 2025

                                                          _____
                                                            Hon. Scott Dunn

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 161 of 248 PageID #: 188

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------X
KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

Index No.: 725646/2025

                      Plaintiffs,          **STIPULATION TO EXTEND TIME**

        v.

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES, and JOHN
DOES 1-10.

                     Defendants.
-------------------------------------------------------------X

    **IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned counsel for Defendant HONEYWELL INTERNATIONAL INC. (also improperly named as HONEYWELL AEROSPACE US INC. and HONEYWELL AEROSPACE TECHNOLOGIES) ("Honeywell") and Plaintiffs Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad Ronald Lehr, and Julia Michele Craig (collectively "Plaintiffs") that Honeywell's time to answer, move to dismiss, or otherwise appear in response to Plaintiffs' Civil Action Complaint in the above-captioned matter is hereby extended by 30 days to December 5, 2025, or 30 days after an Amended Complaint is filed, whichever is later. The Parties agree that by entering into this Stipulation, Honeywell does not waive any defenses it may have to the Civil Action Complaint.

**IT IS FURTHER STIPULATED AND AGREED**, that a photocopy, email copy, or facsimile copy of this Stipulation fully executed by the Parties or their attorneys shall be deemed an original for all purposes.

Dated: October 30, 2025

By: _Kelly Murtha_

Thomas G. Cascione
Kelly Murtha
Cascione Purcigliotti and Galluzzi P.C.
274 White Plaines Road
2nd Floor, Suite 6
Eastchester, NY 10709
Thomas.Cascione@cpglawyers.com

and

Cynthia M. Devers (PHV anticipated)
Michael S. Miska (PHV anticipated)
Devers Miska Law
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
cdevers@dmllc.law
mmiska@dmllc.law

*Attorneys for Plaintiffs*

By: _Evan Kwarta_

Evan M. Kwarta
Roosevelt B. Ettienne
HINSHAW & CULBERTSON LLP
800 Third Avenue, Thirteenth Floor
New York, New York 10022
ekwarta@hinshawlaw.com
rettienne@hinshawlaw.com

*Attorneys for Honeywell International Inc.*

2

Case 1:25-cv-06683-ENV-TAM    Document 1-2    Filed 12/03/25    Page 163 of 248 PageID #: 190

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| KATE SUZANNE DYBDAHL, PAUL CHRISTIAN DYBDAHL, GRAHAM JEANINE LEHR, CHAD RONALD LEHR, and JULIA MICHELE CRAIG,<br><br>       Plaintiffs,<br><br>  -against-<br><br>JETBLUE AIRWAYS CORPORATION, AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS SE, HONEYWELL INTERNATIONAL, INC., HONEYWELL AEROSPACE US INC., and HONEYWELL AEROSPACE TECHNOLOGIES, and JOHN DOES 1-10.,<br><br>       Defendants. | Index No. 725646/2025<br><br>**NOTICE OF APPEARANCE** |

**PLEASE TAKE NOTICE** that Christopher M. Odell of the firm of Arnold & Porter Kaye Scholer LLP appear as counsel of record for Defendant, Airbus S.A.S. in the above-referenced action.

Dated: October 31, 2025

Respectfully submitted,

By    *Christopher M. Odell*

    Christopher M. Odell
    NY Bar No. 6024822
    700 Louisiana Street, Suite 4000
    Houston, TX 77002-2755
    Telephone: (713) 576-2400
    Fax: (713) 576-2499
    Christopher.Odell@arnolporter.com

    *Counsel for Airbus S.A.S.*

To:
Thomas G. Cascione
Kelly Murtha

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 164 of 248 PageID
#: 191

Cascione Purcigliotti and Galuzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY 10709-4419
Tel: (914) 961-1263
Thomas.cascione@cpgalawyers.com


and

DEVERS MISKA LAW
Cynthia M. Devers
Michael S. Miska
(*Pro Hac Vice Anticipated*)
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
cdevers@dmllc.law
mmiska@dmllc.law

*Attorneys for Plaintiffs*

-2-

FILED: QUEENS COUNTY CLERK 11/13/2025 05:33 PM INDEX NO. 725646/2025

NYSCEF DOC. NO. 24 RECEIVED NYSCEF: 11/14/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG,

                                         INDEX NO.: 725646/2025

      Plaintiffs,

         v.

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES,
HONEYWELL AEROSPACE US LLC and
JOHN DOES 1-10,

      Defendants.
-------------------------------------------------------------X

## **AMENDED CIVIL ACTION COMPLAINT**

      Plaintiffs, Kate Suzanne Dybdahl, Paul Christian Dybdahl, Graham Jeanine Lehr, Chad

Ronald Lehr, and Julia Michele Craig, by their attorneys, complaining of the Defendants, JetBlue

Airways Corporation, Airbus Americas, Inc., Airbus S.A.S., Airbus SE, Honeywell International,

Inc., Honeywell Aerospace US Inc., and Honeywell Aerospace Technologies, hereby amend their

Complaint as of right pursuant to CPLR §3025(a), and respectfully allege the following upon

information and belief:

## **THE PARTIES**

### ***Plaintiffs***

      1.    Plaintiff Kate Suzanne Dybdahl is a Massachusetts citizen who resides at 26

Harrison Street, Melrose, Massachusetts 02176.

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 166 of 248 PageID #: 193

2.     Plaintiff Paul Christian Dybdahl is a Massachusetts citizen who resides at 26 Harrison Street, Melrose, Massachusetts 02176.

3.     Plaintiff Graham Jeanine Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060.

4.     Plaintiff Chad Ronald Lehr is a Virginia citizen who resides at 10222 Acworth Drive, Glen Allen, Virginia 23060.

5.     Plaintiff Julia Michele Craig is a Massachusetts citizen who resides at 250 Tremont Street, Melrose, Massachusetts 02176.

### *Defendant JetBlue*

6.     Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation and maintains a principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101, in Queens County.

7.     Defendant JetBlue is a common carrier under 14 C.F.R. Part 121 engaged in the business of transporting passengers for hire by air and, in furtherance thereof, operates regularly scheduled flights.

8.     Defendant JetBlue operates a fleet of Airbus 319, 320 and 321 aircraft that are equipped with Honeywell auxiliary power units ("APU's").

9.     Defendant JetBlue has experienced numerous "fume events," which are incidents in which dangerous toxic chemicals are released into the cabin of the aircraft, and will be discussed in further detail below.

10.    Plaintiffs were all injured in fume events on JetBlue flights that utilized the Airbus model of aircraft, and Honeywell APU's, and fell victim to Defendant JetBlue's decades long systematic coverup of the frequency, severity, and dangers of fume events to Plaintiffs' detriment.

2

11. The defendants knew of these and has concealed these from their flight crews and flying public despite the health dangers they pose.

12. JetBlue and their agents have refused to provide workers compensation and have rather elected to act in a retaliatory manner against the Plaintiffs to this matter.

13. JetBlue and their agents acted as a maintainer separate and apart from its capacity as a common aircraft carrier.

14. JetBlue and its agents knowingly and intentionally exposed its crew and passengers to toxic chemicals and deliberately lied about its knowledge of the existence of these defects.

### *Airbus Defendants*

15. Defendant Airbus Americas, Inc. is a Delaware Corporation with a principal place of business at 2550 Wasser Terrace, Suite 9100, Herndon, Virginia 20171, and is a wholly owned subsidiary of Airbus S.A.S.

16. Defendant Airbus Americas, Inc. designs, produces, manufactures, and delivers commercial aircraft to its customers in the United States, including JetBlue.

17. Defendant Airbus Americas, Inc. assembles and delivers aircraft in Alabama.

18. Airbus Americas Engineering, Inc. designed aircraft components in Mobile, Alabama, and Wichita, Kansas. AA Engineering was merged into Airbus Americas, Inc. on December 31, 2017.

19. Defendant Airbus Americas, Inc. is the successor-in-interest to AA Engineering.

20. Defendant Airbus S.A.S. is a French corporation with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

3

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 168 of 248 PageID #: 195

21.     Defendant Airbus S.A.S. designs, manufactures, assembles, services, and sells civil commercial aircraft, including the Airbus A320 family of aircraft (including the Airbus A319, A320, A321 and variants of each) to customers in the United States and across the world.

22.     Defendant S.A.S. is also the Type Certificate Holder for the Airbus A319, A320 and A321 family of aircraft.

23.     Defendant Airbus S.E. is a multinational aerospace corporation, based in Leiden, the Netherlands, with a principal place of business at 2, Rond-Point Emile Deqoitine, 31700 Blagnac, France.

24.     Airbus S.E. operates through its Commercial Aircraft, Defense and Space, and Helicopters divisions with more than one hundred subsidiaries and affiliated entities located in more than 41 countries around the world. Airbus SE is the ultimate parent company of the Airbus Defendants. Airbus SE, itself and through its subsidiaries and affiliates, has engaged in substantial and non-isolated business activity on a continuous and systemic basis in the United States and New York.

25.     Defendants Airbus Americas, Inc., Airbus S.A.S., and Airbus SE are collectively referred to herein as the "Airbus Defendants."

26.     The Airbus Defendants hold themselves out to the public as "Airbus", and acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, as joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject aircrafts which caused the Plaintiffs injuries.

27.     The Airbus Defendants assumed responsibility for providing inspection, repair, services, maintenance, replacement, overhaul, repair, warnings, parts, maintenance manuals, maintenance instructions, instructions for continuing airworthiness, and other information with

4

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 169 of 248 PageID #: 196

INDEX NO. 735646/2025

respect to aircraft they design, manufacture, sell, and for which they hold the Type Certificate and Production Certificate.

28.     The Airbus Defendants participated in the ongoing coverup to shield the defects in its aircraft models which cause dangerous fume events that hurt those who fly aboard its aircraft, and failed to correct known defects in their aircraft models.

*__Honeywell Defendants__*

29.     Defendant Honeywell International, Inc. is a Delaware Corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

30.     Defendant Honeywell Aerospace US Inc. is a Delaware Corporation with its principal place of business in Phoenix, Arizona and a registered agent at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

31.     Defendant Honeywell Aerospace US LLC is a Delaware Corporation with its principal place of business at 1944 E. Sky Harbor Circle North, Phoenix, Arizona 85034 and a registered agent at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

32.     Defendant Honeywell Aerospace US Inc. is now known as Honeywell Aerospace US LLC as of September 26, 2025.

33.     Defendant Honeywell Aerospace US LLC is the successor-in-interest to Defendant Honeywell Aerospace US Inc.

34.     Defendant Honeywell Aerospace US Inc. and subsequently Defendant Honeywell Aerospace US LLC, does business as Honeywell Aerospace Technologies, which also maintains its principal place of business at 7955 S. Priest Drive, Suite 102, Tempe, Arizona 85284.

35.     Defendant Honeywell International, Honeywell Aerospace US Inc., Honeywell Aerospace US LLC, and Honeywell Aerospace Technologies are collectively referred to herein as the "Honeywell Defendants."

36.     The Honeywell Defendants acted in concert with each other, as corporate alter egos, successors-in-interest, predecessors-in-interest, joint venturers, as agents, as an enterprise, and/or otherwise collaborated in the design, manufacture, and sale of the subject APUs.

37.     The Honeywell Defendants manufacture of the auxiliary power units ("APUs") that are used in the Airbus 319 and A320 family of aircraft, including the Airbus 320 and 321 models.

38.     The Honeywell Defendants also coordinated in the coverup of the defects in the APU and harms associated with fume events, and failed to fix known defects in their products.

## JURISDICTION AND VENUE

39.     Defendant JetBlue maintains its principal place of business in New York in Queens County.

40.     Defendant JetBlue also promulgates emails, service letters, service directives, and other information out of New York.

41.     The Airbus Defendants sold and/or purchased the Airbus family of aircraft, including the subject A320 and A321 models, to Defendant JetBlue, which is based in New York.

42.     The Airbus Defendants and the Honeywell Defendants investigated, coordinated, engaged in a continuous course of conduct, and conspired together to keep the severity and frequency of fume events that were occurring in the Airbus Defendants' fleet of aircraft from the FAA, crewmembers, and flying public.

6

43.     Defendant JetBlue, and the Airbus Defendants and Honeywell Defendants engaged in tortious activity in concealing the nature of fume events from the FAA, Plaintiffs and public through its business relationship centered in New York.

44.     All Defendants engaged in continuous and systematic business activities in the State of New York, including but not limited to, transacting business, contracting to supply goods and services, and engaging in tortious conduct in this state.

45.     All Defendants delivered their goods and services into the stream of commerce with the expectation that they would be purchased and used in the State of New York.

46.     All Defendants derive substantial revenue from their business and activities directed at the State of New York, and avail themselves of the privilege of doing business in New York such that jurisdiction is appropriate here.

47.     Upon information and belief, the aircraft was sold to JetBlue through Agreements, which include a New York choice-of-law clause, requiring parties to submit to the jurisdiction of New York.

48.     All Defendants have entered into contracts and warranty agreements with individuals and entities located here.

49.     As the holder of the Type Certificate with the continuous responsibility to ensure the continuing airworthiness of various aircraft, the Airbus Defendants maintain direct relationships and contact with the owners within the State of New York, including JetBlue.

50.     As the PMA holders with continuous responsibility to ensure the continuing airworthiness of the aircraft, and components, and APU, Defendants maintain direct relationships with owners and operators with New York, including JetBlue.

51.     All Defendants advertise in New York and advertise to New York customers.

7

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 172 of 248 PageID #: 199

52. The contacts that each Defendant maintain in New York give rise to and caused the fume events at issue in this case.

53. Thus, Jurisdiction and venue are appropriate in this Court.

## FACTUAL BACKGROUND

### *What is a Fume Event?*

54. The Airbus 319, 320 and 321 models draw in air from the outside through their engines, and send it into the aircraft cabin through the bleed air system, as shown in the illustration below:



55. The bleed air system takes the air from the engine's compressor section and auxiliary power unit ("APU") to various parts of the aircraft and is used for pressurization and air conditioning, among other functions.

56. As noted in the DOT/FAA/AM-15/20 publication, "[t]he quality of air distributed throughout the cockpit and cabin during air transportation in a pressurized aircraft is critically important to human health."

8

Case 1:25-cv-06682-ENV-TAM   Document 1-3   Filed 12/03/25   Page 173 of 248 PageID #: 200

57.     A "fume" event is when the cabin air becomes contaminated with aerosolized or pyrolyzed engine oil, lubricants, deicing or hydraulic fluid due to a breach in the bleed air system.

58.     The term "fume" describes both visible and invisible emissions that may or may not be detectable through bodily senses.

59.     These toxic chemicals include TriCresyl Phosphates ("TCP"), N-phenyl-L-naphthylamine ("PNA"), and carbon monoxide ("CO").

60.     TCP is frequently used as an additive in engine oil, which can be toxic when inhaled.

61.     Carbon monoxide has no odor, taste, or color that comes from burning fuels, and can cause poisoning when it builds up in the blood.

62.     According to the Mayo Clinic, when excessive carbon monoxide is in the air, it replaces oxygen in the red blood cells, which can lead to serious tissue damage or death.

63.     Symptoms of carbon monoxide poisoning can include: headache; weakness; dizziness; nausea or vomiting; shortness of breath; confusion; blurred vision; sleepiness; loss of muscle control; and loss of consciousness.

64.     The inhalation of these toxic substances can cause a physiological and psychological disorder, "aerotoxic syndrome", which is uniquely present in those flying on aircraft that have been exposed to these chemicals.

65.     Engine oil may be encountered if there was an oil leak or if oil has been absorbed into the bleed air and air conditioning system.

66.     Cabin odors come from different sources and have been described as dirty sock smells or crayon smells, magic marker, acrid, wet dog, musty, as well as other smells.

67.     Also, some toxic fumes are odorless.

9

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 174 of 248 PageID #: 201

68.     HEPA filtration does not work on the air because it only addresses particulates, and not toxic fumes, so Defendants' attempt to resolve the fume event issue with HEPA filtration is useless.

69.     Inhalation of toxic cabin air can cause serious and permanent injuries to those who breathe it, which is what injured Plaintiffs in this matter.

70.     Some short-term health effects include irritation of eyes, nose, and throat, headaches, dizziness, and tingling in the hands, feet, and face.

71.     Some symptoms of long-term effects include neurological symptoms such as headaches, fatigue, weakness, problems with balance, pain, numbness, memory problems, psychological symptoms such as depression, anxiety, and poor concentration, and skin problems, including respiratory or gastrointestinal issues.

72.     EASA regulations require that "Crew and passenger compartment air must be free from harmful or hazardous concentrations of gases."

73.     Defendant JetBlue advised that odors and fumes "rarely exist at a concentration or level to cause concern."

### *Chronology of Fume Events*

74.     The history of fume events in aircraft manufactured by the Airbus Defendants that utilize the Honeywell APU, and operated by JetBlue extends back decades, and has long been a problem that is well known to all Defendants.

75.     During all times relevant, Defendant JetBlue kept a compilation of "Odor Weekly Reports," which shows a pattern of fume events – not just "odor reports, including repeated fume events occurring within short periods of time on the same aircraft.

10

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 175 of 248 PageID #: 202
INDEX NO. 725646/2025

76.     The Odor Weekly Reports also demonstrate that the fume events were caused by issues with the APU.

77.     At times, Defendant JetBlue would disarm the APU, rather than fix the issue, and put it on the minimum equipment list ("MEL") and operate the aircraft with passengers and crew without providing notice.

78.     Many reports of fume events have been documented internally in Defendant JetBlue's database, but have not been made public, particularly when medical attention was not provided to those onboard, or when no residual odors were found after landing.

79.     Unfortunately, due to the lack of honest reporting on behalf of Defendants, retaliatory practices and misinformation they provide to crewmembers, many events go uncounted for.

80.     Defendants are motivated by profit by keeping the fleet out of maintenance, and downplay the extraordinarily serious and dangerous nature that fume events pose, and gaslight those who raise these fume events as a concern, as the following chronology illustrates.The flight attendants' job is primarily for safety and to evacuate, bomb squad, organizing, readiness, and passenger comfort and to solve problems before they exist.

81.     Assessment of the people on board.

### *1950's*

82.     In the 1950's, after a series of fume events that adversely affected the health of those onboard, studies have shown that human exposure to cabin air could result in illness.

### *1988*

11

Case 1:25-cv-06693-ENV-TAM    Document 1-3    Filed 12/03/25    Page 176 of 248 PageID #: 203

83.    On December 8, 1988, the Airbus Defendants reissued Service Information Letter 26-015 (original version dated October 20, 1987) applicable to the A300, A310, and A300-600 Aircraft concerning "Avionics or Battery Spurious Smoke Warnings Subsequent to Air Conditioning System Contamination or Incorrect System Installation" in response to several Airbus operators experiencing smoke warnings on the ground, during take-off or in cruise.

84.    The Airbus Defendants noted "This can be caused by burnt oil, hydraulic fluid or dust contamination of the air conditioning system or by incorrect installation of detectors and ventilation system."

85.    The Airbus Defendants continued:

On all Airbus wide bodies, avionics or batteries are ventilated to various extent by fresh air from the aircraft air conditioning packs.

The aircraft packs are supplied with hot high pressure air from the engines or APU, these operate at high temperatures and are subject to the various contamination sources given below:

- APU - Internal and external oil leaks or presence of grease inducts after APU change.
- Engines - Internal oil leaks and presence of grease in ducts after engine replacement.
- Ground carts - Internal oil leaks.
- Hydraulic system - pressurization line non return valve leakage/failure and hydraulic reservoir overfilling.
- De-icing fluid ingestion by engines during winter season.
- External fumes ingested by engines or APU.

86.    The Airbus Defendants stated that they have worked to eliminate the contamination sources and to minimize the inconvenience caused to operators.

*1994*

87.    In 1994, Congress passed the Public Law, 103-305, § 304, "Aircraft Cabin Air Quality Research Program" to establish a program to determine "(1) what, if any, aircraft cabin air

12

conditions, including pressure altitude systems, on flights within the United States are harmful to the health of airline passengers and crew, as indicated by physical symptoms such as headaches, nausea, fatigue, and lightheadedness; and (2) the risk of airline passengers and crew contracting infectious diseases during flight."

88. This Law also required the FAA to contract with the Center for Disease Control to carry out studies on harmful conditions experienced on domestic flights, what changes can be made to reduce or eliminate the risk of illness, and to establish a long-term research program to study potential health problems to passengers and crew.

### 1999

89. In 1999, "aerotoxic syndrome" was termed to explain the health effects of crew and passengers resulting from contamination in an aircraft.

### 2001

90. On November 29, 2001, JetBlue issued 2001-T040, "Cabin Oil Fumes From 131-9A APU", in reference to an event that occurred on November 27, 2001 to notify the crew that the Honeywell APU is a possible source of oil fumes in the aircraft cabin as a result to an advisement issued by Airbus.

91. Airbus advised JetBlue that an operator experienced significant oil fumes in the cabin due to the accumulation of APU oil in the aircraft Environmental Control System ("ECS") and bleed ducting.

92. Honeywell investigated the event and found the APU's Load Compression Carbon Seal was worn.

93. A result of the worn seal, the oil leaks in the APU Load Compressor air path and into the ECS.

13

94.     Oil accumulates in the ECS, which worsens over time, especially during the all phases of flight.

95.     As discussed in 2001-T040, Honeywell performed an investigation of APU carbon seals that were under-going shop repair and was supposed to advise of findings and corrective action.

96.     All Defendants were on notice of these events that occurred over 20 years ago, but no adequate corrective action has been taken by them to date.

*2003*

97.     On May 29, 2003, JetBlue issued 2003-T033, "Airbus 320 MEL 79-35-01 IAE V2527-A5 Engine 'Eng 1 (2) Oil Filter Clog' Message After Stabilized Engine Start and Inflight".

98.     According to this publication, IAE V2500 engines in service have experienced No. 3 bearing fractures, which are often accompanied by an "ENG 1 (2) OIL FILTER CLOG" (ECAM) message, oil odor and/or engine stall/surge.

*2004*

99.     In 2004, Boeing introduced a safer alternative design in the Boeing 787 Dreamliner, which uses a dedicated air inlet instead of a bleed air system, which in turn eliminates the risks associated with the bleed air system.

*2007*

100.    The Aerotoxic Association was established to raise awareness of toxic air exposure in aircraft and Aerotoxic Syndrome victims.

*2010*

14

101.    On December 19, 2010, an Airbus 319 operated by Germanwings experienced a fume events where both pilots were almost fully incapacitated and landed with the last bit of mental capacity.

### 2011

102.    On January 6, 2011, the FAA issued InFO 11002 "Smoke/Fumes in the Cabin/Cockpit of Transport Category Aircraft" that discusses the approximately 900 smoke or fume events that occur annually in transport category airplanes.

103.    The FAA requested operators to put special emphasis on the smoke events data and track separately for trend analysis.

104.    The FAA also "recommended that documentation from each event be reviewed and maintenance and inspection requirements be updated regularly."

105.    "Air carrier/operators should ensure all data is used to definitively resolve and thereby reduce incidents of smoke and fumes entering the aircraft."

### 2012

106.    In 2012, "Congress directed the FAA to initiate a study of air quality in aircraft cabins to: 1) assess bleed air quality on the full range of commercial aircraft operating in the United States; 2) identify oil-based contaminants, hydraulic fluid toxins, and other air toxins that appear in cabin air and measure the quantity and prevalence, or absence, of those toxins through a comprehensive sampling program; 3) determine the specific amount and duration of toxic fumes present in aircraft cabins that constitutes [sic] a health risk to passengers; 4) develop a systematic reporting standard for smoke and fume events in aircraft cabins; and 5) identify the potential health risks to individuals exposed to toxic fumes during flight ."

15

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 180 of 248 PageID #: 207

107.    Congress further directed the FAA, to the extent practicable, "implement a research program for the identification or development of appropriate and effective air cleaning technology and sensor technology for the engine and auxiliary power unit bleed air supplied to the passenger cabin and flight deck of a pressurized aircraft" (Public Law 112-95, 2012).

108.    Since then, the Airbus Defendants have been monitoring air quality in real time.

*2013*

109.    On October 9, 2013, an Airbus A320-200, N213FR, Frontier Flight 419 from Washinton National, DC to Denver, Colorado, with 171 people on board was en route when passengers noticed a foul odor on board, and the crew reported hydraulic problems.

110.    Flight 419 was diverted to Indianapolis about 45 minutes later.

*2014*

111.    On October 31, 2014, JetBlue issued FAM 2014-IF049TR, "Smoke/Odor/Fumes in the Cabin" instructing that the following information to be incorporated into the Flight Attendant Manual ("FAM"):

> NOTICE
> This information notice informs Flight Attendants of the actions to take if there is smoke, strange odor, or fumes present in the cabin.
>
> ACTION
>
> **H. SMOKE/NOXIOUS ODOR/FUMES IN THE CABIN**
>
> 1.    Notify Flight Deck by clearly stating location, smell, and color of smoke (if present), and the actions being taken by the crew.  Certain circumstances may prohibit the Flight Deck from responding immediately.
>
> 2.    Locate the source of the smoke/ odor/fumes, if possible.  If conditions change to a fire event, follow appropriate firefighting procedures.  Notify the Flight Deck once the source of the smoke/odor/fumes is discovered.

16

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 181 of 248 PageID #: 208

3. If necessary, distribute wet towels and direct passengers to stay low, cover their nose and breathe through the wet towel or an article of clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

4. Make a PA to give clear assertive instructions to passengers to maintain control of the cabin, if necessary.

**NOTE:** Do not deploy passenger supplemental oxygen masks or use a POB. These masks do not filter smoke or fumes in the cabin.

112. No adequate protection or protective equipment were ever provided for use by the inflight or the passengers.

*2015*

113. On July 17, 2015, an Airbus A319-100, FAA Registration NK-708 from Chicago to O'Hare, Illinois to Boston, Massachusetts operated by Spirit Airlines experienced a fume event, which left the captain sunk into his seat and incapacitated. The flight crew landed the aircraft without recalling how they managed to taxi or land the aircraft.

114. The flight crew rested in the hotel for the evening, and flew two more legs after that, and when they later went to the hospital, both pilots had abnormal blood levels consistent with ToCP poisoning and internal bleeding.

115. After returning to work, the captain continued to show symptoms of poisoning, and died on September 5, 2015 as a result of a heart attack, which is consistent with long term exposure to contaminated fumes in the aircraft according to scientific studies.

116. The FAA received a FOIA request, but responded that it had no records of this fume event.

117. The first officer aboard the July 17, 2025 flight gave a presentation at the pilot's association APA (Allied Pilot's Association) on October 17, 2016 concerning fume events, which is discussed below.

17

118. In November 2015, the FAA issued a Report titled "Aircraft Cabin Bleed Air Contaminants: A Review", which stated:

> The quality of air distributed throughout the cockpit and cabin during air transportation in a pressurized aircraft is critically important to human health. Since 1984, public law in the United States has directed research in cabin air quality, including investigation of health risks among individuals exposed to toxic fumes during flight.
>
> Quantification of the potential health risks associated with exposure to bleed-air contaminants in cabin air is not possible without broad identification and measurement of the representative hazardous constituents of bleed air during contaminated air events. Such broad identification and measurement does not exist.

119. The Report further recognized "[e]xposure to particles may result in a variety of health effects that range from irritation of eyes, nose, and throat to respiratory and other system disorders."

120. The Report mistakenly described fume events as a "rare occurrence".

121. However, the information available was lacking, additional work necessary included:

- the ongoing study of air quality in aircraft cabins through a comprehensive sampling program for broad characterization and evaluation of the constituents of contaminated bleed air;

- assessment of bleed air quality on the full range of commercial aircraft operating in the U.S.;

- continued assessment of health risks to passengers who maybe exposed during bleed air events;

- continued development of instrumentation for sensing bleed air and cleaning contaminated air in pressurized aircraft cockpits and cabins;

- continued development and evaluation of current measurement technologies both on the ground and in flight; and

- development of a systematic reporting standard for contaminated bleed air events.

18

122.    The FAA concluded: "Quantification of the potential health risks associated with exposure to bleed-air contaminants in cabin air is not possible without broad identification and measurement of the representative hazardous constituents of bleed air during contaminate air events."

123.    Unfortunately, fume events are not "rare occasions" and are systematically and deliberately underreported through a series of tactics among the defendants in this case as detailed throughout this complaint.

### *2016*

124.    According to the September 13, 2025 Wall Street Journal article, "Toxic Fumes are Leaking Into Airbus, Sickening Crews and Passengers" Airbus changed its maintenance practices for fume events in 2016.

125.    Prior to this change, Airbus required an inspection and deep-clean following a fume event.

126.    According to the Airbus manual from 2016, Airbus cautioned that if the foregoing procedures were not followed, that the aircraft would experience "repeated encounters". *Id.*

127.    Under the relaxed standards, no such requirements were in place if the smell was not strong and if the fume event had not occurred in the last 10 days. *Id.*

128.    While Airbus was aware that lapsed maintenance practices would result in "repeated encounters," it changed the requirements anyway. *Id.*

129.    Airbus was quoted:

[JetBlue] have experienced a number of transient oil or "sweaty sock" odours which are a minor comfort issue.  When entering the relevant [troubleshooting manual] procedure, the maintenance procedures required for troubleshooting and rectification seem to be out of proportion to a transient odour causing a minor comfort issue.

19

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 184 of 248 PageID #: 211

NYSCEF DOC. NO. 24

INDEX NO. 725646/2025
RECEIVED NYSCEF: 11/14/2025

*Id.*

130.    On October 17, 2016, the first officer aboard the July 17, 2015 Spirit Airlines Flight from O'Hare to Boston, which experienced a fume event that took the life of the Captain gave a presentation to the Allied Pilots Association in which he discussed the following information about fume events:

a.    The Kansas State University's research revealed that there have been 5.3 fume events per 24,000 daily flights in the USA or 1955 fume events a year, with only 6 fume events getting reported to the FAA per year.

b.    During production flights, the Airbus Defendants received reports of odors, and flight test engineers sometimes reported about physiological symptoms, such as respiratory issues or eye irritation for example.

c.    The Airbus Defendants developed an In-Flight Cabin Air Analysis Project.

d.    Symptoms range from dizziness, fatigue, sweating, headaches, inability to concentrate, cognitive impairment, weakness, anxiety, tremors, pupil constriction, and chest tightness in mild poisoning.

e.    In addition, in moderate poisoning symptoms include salivation, lacrimation, abdominal cramps, nausea, vomiting, slow pulse, bradycardia, low blood pressure, and muscle tremors.

f.    Severe poisoning symptoms include non-reactive pupils, twitching, wheezing, bronchial secretion, difficulty breathing, cough, pulmonary edema, cyanosis, diarrhea, loss of sphincter and urinary bladder control, tachycardia, high blood pressure, convulsions, coma, heart block and possibly death.

20

g.     Symptoms generally onset within 5 to 60 minutes, but in some individuals, may not develop for 24-48 hours, neurologic symptoms can take even longer.

h.     TCP is an organophosphate, which were developed for use in pesticides and never agents, and most are neurotoxic.

i.     TCP is used as an additive to aviation engine oils to reduce wear and to stabilize the engine temperature

j.     TCP is not intended for consumption and can cause acute symptoms include stomach cramping, muscle aches and sinus congestion which may be mistaken for flu or food poisoning and can lead to delayed onset of OPICN (OrganoPhosphate Induced Chronic Neurotoxicity).

k.     A captain and a first officer were diagnosed with "Effects from Cholinergic drug" after exposure to oil fumes.

l.     Before smoking on the airlines was banned, fumes were often masked by cigarette smoke in the cabin.

m.     Hypemic Hypoxia can occur as result of exposure to carbonmonoxide, which causes the reduced ability for the blood to carry oxygen.

n.     Smoke events are required to be reported except those not accompanied by visible smoke are only required to be reported when associated with a mechanical discrepancy and inflight (*not at the gate*), unless flight safety could be compromised.

o.     Lack of training, poor understanding, underreporting and weak FAA regulations prevent the FAA from adequately stating the problem.

p.     Most Fume/Smoke Checklists do not correctly address environmental control system fumes.

21

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 186 of 248 PageID #: 213

q.    Alternative solutions include non-bleed aircraft, such as the Boeing 787, or non-bleed conversions or installations.

*2017*

131.    On January 31, 2017, JetBlue issued Information Notice 2017-T002, which discusses the design changes incorporating the Flight Warning Computer that monitors the APU leak detection fault annunciation, and improved alerts for the engine bleed monitoring system.

132.    In January, 2017, a JetBlue Captain and First Officer participated in ground testing to troubleshoot possible maintenance issues and strong fumes were detected, and the Captain remained in the cabin for some time afterwards, which required the Captain to undergo medical treatment and testing.

133.    On April 19, 2017, JetBlue Flight 338 from MCO-BDL was delayed due to an inbound write for a dirty sock smell in the cabin, and the APU bleed was placed on MEL.

134.    On April 27, 2017, JetBlue issued Maintenance Alert Bulletin MAB-12-04-17-012, "(ATA 12) A320/A321 Cabin Odors – Oil Servicing V2500-A5 Engines and 131-9A APU's" to emphasis the importance of APU and engine oil servicing procedures to avoid oil odor in the cabin in response to an "increased trend of 'Oil Smell in the Cabin' reports on the JetBlue A320/A321 fleet since mid-year 2016."

135.    "Shop findings noted oil leakage from the Front Bearing Compartment No. 1 carbon seal which allows oil leakage into the Low Pressure Compressor (LPC) stages 2-2.5 and then high pressure compressor (HPC) to the engine bleed air system.

136.    Reports of oil smell can result in aircraft out of service, component, engine and APU removals.

22

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 187 of 248 PageID #: 214

137. On June 2, 2017, an Airbus A320, Frontier Flight 1630 from Los Angeles to Orlando experienced an air quality event accompanied with physical distress, passing out, choking, coughing, and eye irritation from the passengers, which required an emergency landing in Phoenix, Arizona.

138. In June, 2017, JetBlue and Airbus held a meeting on cabin odor events to understand toxicity concerns.

139. On June 14, 2017, JetBlue Flight 886 RDU-JFK returned to the gate due to a smoke smell.

140. On July 26, 2017, JetBlue issued 2017-IF013TR "Responding to Smoke, Cabin Odor, and Fumes" directing Inflight Crewmembers to contact MedAire Support if feeling unwell following a cabin event involving smoke/odor/fumes.

141. On August 17, 2017, Joanna Geraghty of JetBlue sent an alert to its crew members stating:

> It's normal for aircraft to have a variety of smells – these are not unique to JetBlue and odors have appeared on aircraft for decades. Our Safety team has researched and compiled credible scientific studies that have consistently found no evidence of long-term health and safety impacts from these type of odor events. Airbus has also reached the same conclusion. Experts have consistently found that aircraft cabin air meets safety standards, and our Pilots and our Tech Ops team are properly trained to handle any situation or odor event that may arise.

142. The email states that JetBlue Vice President Safety, John Allen, was leading a working group to coordinate the response to cabin odor events.

143. JetBlue represented that it aimed to take the following measures to address cabin odors:

a. Incorporate HEPA filters to remove odors;

b. Transition to new engine and APU oil that produces fewer odors;

23

c.  New Environmental Control System (ECS) cleaning procedure, developed by the equipment manufacturer to help remove residual oil from leaks;

d.  Sending engines that had repeat odor events for independent shop testing, and confirmed there were no problems with the engines;

e.  Engaged with Airbus, the engine manufacturers, JetBlue's Tech Ops Business Partners, and other airlines for information sharing and best practices;

f.  Revised JetBlue's servicing instructions for engine and APU; and

g.  Instituted new Crewmember checklists and procedures to capture and track occurrences over time.

144.  None of these procedures fixed the core problem, and failed to protect the inflight or passengers, and merely paid lip service to appease those asking questions.

145.  On August 25, 2017, JetBlue issued Information Notice 2017-T015C, "(ATA 05) TROUBLESHOOTING – ODOR IN THE CABIN". JetBlue noted that it "takes all reports of odor, smell, poor air quality and 'dirty sock smells' seriously" and keeps a Cabin Odor Sheet ("COS"), Flight Crew and In-Flight debriefs.

146.  The Notice further notes that possible causes of dirty socks / musty / oil odors are APU or engine oil leaks, or possibility contaminated ECS.

147.  On September 5, 2017, JetBlue issued a notice to advise its crew of the January 2017 event that caused the Captain's need for medical treatment after exposure to a fume event on the ground and offered their support during his recovery.

148.  However, JetBlue made a specific point to differentiate his experience with exposure to the fumes from fume events experienced by crewmembers during various phases of flight.

24

149. On September 7, 2017, JetBlue issued Information Notice 2017-T027 "(ATA 49) Airbus A320 / A321 – Honeywell 131-9A – APU – Proper Shutdown Procedure" attributing improper APU shutdowns for causing oil retention in the bearings and scavenge systems because oil will not be drained back to the Gearbox.

150. In September 2017, researched introduced at the "International Aircraft Cabin Air Conference 2018" in London, shows that the cabin air can be contaminated on each flight, regardless of whether odors or health effects are present.

151. On November 13, 2017, JetBlue issued Information Notice 2017-T036TR "(ATA 00) Cabin Odor Reports (MX-270 and MX-271)" and Information Notice 2017-F044TR, "Cabin Odor Reporting Forms" introducing new forms to report cabin odor events.

152. However, Defendants discouraged reporting.

153. On November 14, 2017, JetBlue Flight 248 LGK-OAK experienced an odor event.

154. Also, on November 14, 2017, JetBlue Flight 447 from OAK-LGB, the aircraft experienced a fume event and had to return to the gate, the customers were deplaned, and was operated with no customers after maintenance MEL'd both packs.

155. On October 19, 2017, an Airbus A320 aircraft, JetBlue Flight 19 from Boston to San Diego with 126 passengers had to divert to Buffalo due to fume events.

156. One passenger on board the flight reported a massive headache and described the incident as "terrifying".

157. On November 22, 2017, an Airbus A320-200, N218FR, Frontier Flight 1686 from Las Vegas, Nevada to Nashville, Tennessee, with 178 passengers and 6 crew members, was en route when the crew reported an odor in the cockpit and diverted to Albuquerque.

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 190 of 248 PageID #: 217

158. On December 14, 2017, JetBlue Flight 1043 experienced a fume event, the crew refused to accept the aircraft, and the F1 and F2 contacted Medlink for medical attention.

### *2018*

159. On January 18, 2018, JetBlue Manager, Inflight Standards and Regulatory Compliance, DeWayne Cook, issued Information Notice 2018-IF001TR "Responding to Smoke, Cabin Odor, and Fumes" to the Inflight Crewmembers to notify Crewmembers of the definitions, types, and sources of potential odors experienced onboard the aircraft, and their responses to aircraft odors.

160. Notice 2018-IF001TR defines potential odors which Crewmembers may experience during normal operations:

| | |
|---|---|
| **Smoke** | The byproduct of burning materials made visible by the presence of small particles. |
| **Odor** | A distinctive smell, especially an unpleasant one. |
| **Fumes** | Odorous, gaseous compounds, which are not visible. |

161. JetBlue represented that its goal is "to create the safest possible working environment for our Crewmembers, Customers and Business Partners. Under normal operating conditions, odors, or fumes from these sources may be present in the cabin; however, when present, they very rarely exist at a concentration or level to cause concern."

162. JetBlue continues: "Environmental conditions change the sense of smell and may cause odors to appear stronger in nature. Moisture, in particular, enhances the sense of smell as humidity readily carries odor molecules to the nasal passage. These types of odors may begin to dissipate as the aircraft exists the moisture-laden environment."

163. JetBlue describes five categories of "aircraft odors", including (1) Smoke/Fire Odors; (2) Cabin-Source Odors; (3) External-Source Odors; (4) Aircraft Environmental System

26

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 191 of 248 PageID #: 218

Odors; and (5) Undetermined Hypoxia. Note – None of the foregoing "aircraft odors" concern "Fumes".

164.   This publication further tells Crewmembers:

**Note**

If Customers are exhibiting physiological effects from a persistent odor occurring during all phases of flight, that is strong in intensity, increases over time, detected by multiple members of the Crew and Customers  and significantly irritates eyes, nose or throat; distribute wet paper towels and direct Customers to remain low and breathe through the wet paper towel or clothing, which will assist in filtering the smoke/odor/fumes in the cabin.

165.   On January 18, 2018, JetBlue issued Information Notice 2018-F002TR "Airbus Recognition and Isolation Guidance" to the Flight Crewmembers requiring them to use due diligence and sound judgment when they recognize an odor, and to immediately address health or safety concerns of Customers or Crew.

166.   Notice 2018-F00TR provides the following description of Aircraft Environmental System Odor Levels:

| Level 1 | • A Transient (non-Persistent) Odor.<br>• Odor is not strong and does not severely affect eyes, nose, or throat. Mild irritation may occur but not widespread and symptoms subside.<br>• Odor dissipates over time. |
|---|---|
| Level 2 | • A Persistent Odor.<br>• Odor remains or may dissipate over time.<br>• Odor is detectable by multiple Crewmembers or Customers<br>• Mild to moderate irritation occurs in two or more Crewmembers or customers |
| Level 3 | • A Persistent Odor<br>• Odor obvious to both Crewmembers and Customers<br>• Odor is strong in intensity, increases over time, or stabilizes with a significant intensity<br>• Odor significantly irritates eyes, nose, or throat |

27

167. On January 18, 2018, JetBlue issued Information Notice 2018-F003TR "Flight Deck and Cabin Odors and Fumes" recognizing the issue of cockpit and cabin odors, and issued new FOM policies addressing cockpit and cabin odors.

168. JetBlue again represented that it has a commitment to safety for its Customers and Crewmembers, and that its goal is "to create the safest possible working environment."

169. JetBlue stated:

NOTE

It is difficult to discern a fume from an odor. Although the presence of an unidentified odor does not necessarily indicate the presence of fumes, Crewmembers shall address any odor which may be cause for concern.

The presence of an odor alone does not necessarily require Flight Crew action or a medical response.

170. JetBlue further noted that:

Crewmembers should be aware that the longer they are exposed to a certain odor, the less they may be able to perceive it. This effect is known as "olfactory fatigue". To counteract olfactory fatigue, Flight Deck Crewmembers may consider utilizing their oxygen mask to isolate from the odor temporarily. This will allow the olfactory senses to recover and aid in determining if the odor is still present, if the intensity is changing, and how to describe the odor (what does it smell like).

171. Following a fume event in which a JetBlue flight attendant became ill in early 2018, an FAA safety inspector shared concern and wrote: "These toxic chemicals are present in today's modern synthetic jet oils and are passing into the aircraft cabin/cockpit unfiltered, affecting the air that crew and passengers breathe in." *September 13, 2025 Wall Street Journal Article*.

172. JetBlue continuously told the Crewmembers that odors experienced on the plane are not harmful and did nothing meaningful to correct the fume event issue in an effort to keep its fleet in service at the risk of jeopardizing the safety of inflight and passengers.

28

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 193 of 248 PageID #: 220

INDEX NO. 705646/2025
RECEIVED NYSCEF: 11/14/2025

173.    On March 26, 2018, the FAA issued Safety Alert for Operators 18003 "Procedures for Addressing Odors, Smoke and/or Fumes in Flight" which provided:

> **Discussion:** Air carriers should ensure their procedures and checklists specifically address recognition, differentiation and mitigation of odors, smoke and/or fumes in the cabin and/or flight deck. Odors, smoke and/or fumes may be introduced to the cabin atmosphere as a result of aircraft equipment malfunction/failure or by inadvertent or intentional actions. While the presence of an odor alone does not necessarily require crew action or medical response, events involving odor, smoke and/or fumes require targeted and timely action to protect aircraft occupants.

> **Recommended Action:** Operators, under their existing Safety Management System structure, should review their company's odor, smoke and/or fumes procedures to ensure they address benign odor events as well as toxic odor, smoke and/or fumes, in an expeditious manner to limit exposure of passengers and crew. Operators should:

> • Review International Civil Aviation Organization Document 9481 (2017-2018 Edition), titled Emergency Response Guidance for Aircraft Incidents Involving Dangerous Goods, which recommends emergency responses to fire, explosion, spillage, or leakage, specific for over 3500 dangerous goods;

> • Assess current policy and procedures regarding odor, smoke and/or fumes recognition, differentiation and mitigation;

> • Collaborate with original equipment manufacturers, other operators and regulators to continuously enhance mitigation procedures and to identify potential risks; and

> • Create guidance for crews including, when appropriate, security information which can be disseminated through appropriate internal channels (e.g. Sensitive Security Information bulletins, manuals, etc.) as specific concerns are identified.

174.    On April 16, 2018, JetBlue Flight 774 returned to the gate due to a cabin odor, and the cabin crew reported eye irritation.

175.    The Flight 774 crew called out and refused to accept the aircraft.

176.    On April 17, 2018, JetBlue Flight 8074 the same aircraft with the same crew reported a similar odor.

29

177.    On May 14, 2018, an Airbus A319-100, N927FR, Frontier Flight 1286 from Denver, Colorado to Chicago O'Hare, Illinois, was climbing out of Denver when the crew reported an unidentified odor on board and returned back to Denver 55 minutes after departure.

178.    On May 20, 2018, an Airbus A320-200, N223FR, Frontier Flight 1839 from Tulsa, Oklahoma to San Diego, California, with 129 passengers and 6 crew members was en route when the crew diverted to Alburquerque, New Mexico, due to a chemical odor in the rear of the cabin, and landed about 40 minutes later.

179.    The flight was cancelled and the passengers were rebooked for flights the next day and had to stay in hotels.

180.    On May 27, 2018, an Airbus A320-200, N238FR, Frontier Flight 1764 from San Diego, California to Tulsa, Oklahoma was en route when an odor inside of the cabin caused the flight to be diverted to Phoenix, Arizona, about an hour into the flight.

181.    Seventeen people were examined at the gate, and a 62-year-old man was taken to the hospital.

182.    On August 15, 2018, an Airbus 321-200, N715FR, Frontier Flight 1674 from Orlando, Florida to Philadelphia, Pennsylvania with 230 passengers and 7 crew members was en route when the crew decided to divert the flight to Raleigh due to an unknown cabin odor, accompanied by sick passengers and crew.  Seven passengers and a flight attendant were treated at the airport, and 2 of the passengers, including an infant, and the flight attendant were sent to the hospital.

183.    On November 1, 2018, an Airbus A321-200, N702FR, Frontier Flight F9-1851 from Islip, New York to Myrtle Beach, South Carolina, with 218 passengers onboard was climbing out of Islip when the crew stopped climbing and landed 15 minutes later.

30

184. The crew declared an emergency due to fumes in the cockpit.

185. One crew member and 2 passengers were taken to the hospital for medical evaluation, and 7 passengers were treated at the airport.

186. Frontier reported that the odor was detected in the cabin, there was no smoke, and the aircraft landed safely.

187. On November 15, 2018, JetBlue issued Information Notice 2018-Y035TR concerning "Cabin Odor Notifications (Eff. 12/1/18)", recognizing the occurrence of odor events and the Safety Data and Analysis team.

188. Still, Defendants made no appropriate corrective action.

*2019*

189. On January 1, 2019, an Airbus A321-200, N715FR, Frontier Flight 1397 from Cleveland, Ohio to Tampa, Florida, was en route when 6 passengers (4 adults and 2 children) became ill, vomited, and were nauseous.

190. On April 10, 2019, JetBlue Flight 209 from JFK-SDQ had to divert to SJU due to a customer and 4 inflight crew's medical issues, including burning eyes and throat.

191. On April 18, 2019, Ed Baklor, JetBlue Head of Customer Care and Programs notified the Crewmembers that determining whether an odor or fumes is normal or not, to avoid unnecessary disruptions, and "if Inflight decides not to operate once a plane has been cleared, it is considered a refusal to fly and the Crewmember may be subject to disciplinary action."

192. He further told Crewmembers to only call MedAire during cabin odor/fume events if it involves a non-normal odor or fume and they exhibit physical symptoms that prevents them from performing their duties as an inflight crewmember.

31

193. On June 30, 2019, an Airbus A320, N7152JB, JetBlue Flight 531 experienced an odor event that was noticed by the inflight crew during descent into DFW, and the aircraft was removed for further inspection.

194. On August 28, 2019, an Airbus A320, N712JB, JetBlue Flight 1039 from Boston to Aruba experienced an odor event.

195. On August 31, 2019, the same aircraft, N712JB, experienced a fume event.

196. On September 19, 2019, Senator Richard Blumenthal and Congressman John Garamendi, sponsors of the *Cabin Air Safety Act of 2019*, wrote to JetBlue about their concern about fume events, and questioned JetBlue about them.

197. They also noted:

that the proper term for these events, is either 'fume event' or 'cabin air safety event'. There have been reports that your company is reclassifying these as 'odor events' in an apparent attempt to skirt Federal Aviation Administration reporting standards, as well as local workers' compensation laws. This raises significant doubt regarding JetBlue's intention to faithfully adhere to existing health, safety, and labor law.

198. John M. Allen of JetBlue responded on October 10, 2019 and stated: "we have found this to be a very emotional issue and many myths have been propagated through social media to feed crewmember angst over this issue."

199. Mr. Allen further stated: "Through our research from each reported odor event, we found that none of the reported odor events resulted in JetBlue crewmembers or customers receiving unhealthy air."

200. In sum, Defendant JetBlue told Congress that the fume event issue is a product of emotional angst and not harmful, which was false.

201. On November 3, 2019, JetBlue flight 1481 experienced an odor during the APU start up.

32

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 197 of 248 PageID #: 224

*2021*

202.    On October 23, 2021, an Airbus A320-200N, N304FR, Frontier Flight 1159 from Norfolk, Virginia to Orlando, Florida experienced a fume event onboard with 102 passengers (including young children) and crew onboard, which prompted the flight to divert to Raleigh/Durham.

203.    The aircraft was evacuated via slides.

204.    On December 2, 2021, a Frontier flight from Las Vegas to San Antonio experienced a fume event that forced an emergency landing in El Paso.

205.    Six passengers aboard that flight were ill.

206.    Emergency services were told about a possible carbon monoxide leak.

207.    Frontier reported that the aircraft diverted due to a medical emergency and fumes on board.

208.    One passenger aboard the flight said that they were not made aware of what was going on, were not told that they were exposed to a carbon monoxide leak, and merely told if they feel nauseous or sick to let them know.

*2022*

209.    On March 4, 2022, an Airbus A320, N504JB, JetBlue Flight 2895 from Boston to PUJ experienced a fume event.

210.    On April 27, 2022, the same aircraft, N5041JB, experienced a fume event.

211.    On September 6, 2022, JetBlue issued a publication to its Crewmembers stating that the "dirty sock smell" (the byproduct of oil decay) is not toxic, and attributed the headaches, nausea, and dizziness to their individual sensitivities.

33

212. On December 31, 2022, an Airbus A321, N702FR, Frontier Flight 111 from San Juan, Puerto Rico to Orlando, Florida, was about two hours into the flight while passing over the Bahamas and requested a diversion to Miami, Florida due to several illness onboard.

213. Eight crew members and one passenger reported dizziness and went to local hospitals.

214. This is the same aircraft that experienced the fume event in 2018 from Islip, New York to Myrtle Beach, Florida in which 1 crew member and 2 passengers were sent to the hospital, and 7 others were treated at the airport.

*2023*

215. According to the JetBlue Flight Attendant Manual ("FAM") §17.23, (Rev. March 8, 2023) "Inflight Crewmembers may not make any written or verbal statements to the press or news media without prior briefing or approval. Direct all media inquiries to the JetBlue Media Relations Team at 718-709-3089."

216. Essentially, the inflight was not allowed to disclose that which Defendants wish to keep out of the public eye: toxic chemicals can pour into the cabin and cause such severe injuries to the inflight, passengers, including small children and babies.

217. On March 22, 2023, an Airbus A321-200, N958JB, JetBlue Flight 787 from Las Vegas, Nevada to JFK in New York was delayed due to a dirty sock smell in the aft and forward galley, which is outlined in a Service Difficulty Report.

218. The same aircraft had an issue on March 31, 2023 during JetBlue Flight 148 from Las Vegas to JF?K due to a fume event.

219. During that event, an inflight crewmember had to be replaced due to sickness.

34

220. On April 9, 2023, the same aircraft, JetBlue N958JN, on the flight from Santo Domingo, Dominican Republic to JFK had to return to the gate due to a customer passed out after a passenger passed out.

221. The next day, on April 10, 2023, the same aircraft, JetBlue N958JN from Sando Domingo to JFK had a medical emergency after a customer became dizzy and the emergency kit had to be used.

222. On September 19, 2023, an Airbus A321-200, N717FR, Frontier Flight 560 from Denver, Colorado (DEN) to Raleigh/Durham, North Carolina (RDU) with 160 people on board performed its initial climb before leveling off at 11,000 feet.

223. About ten minutes into the flight, the inflight crew alerted the pilots that fumes filled the cabin, and they declared an emergency and returned to Denver about 30 minutes after departure.

224. While some passengers and crew were seen by emergency medical services at the gate, there are no reports of anyone receiving medical treatment after being exposed to toxic chemicals.

*2024*

225. On March 27, 2024, an Airbus A321-200N, N611FR, Frontier Flight 1759 from Charlotte, North Carolina to Orlando, Florida with 226 people on board, was preparing for departure at the gate.

226. After a strong odor was detected on the aircraft, the captain issued an evacuation notice, and the passengers were evacuated via the slides and jetway in the front.

227. Frontier stated that it was investigating the source of the odor and stated that there had been no visible smoke or fire.

35

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 200 of 248 PageID #: 227

228. *Note – fume events more often than not occur without the presence of smoke or fire.*

229. On May 21, 2024, JetBlue issued Information Notice 2017-T015 K, "(ATA 05) Troubleshooting Odor in the Cabin", which recognizes "extensive expert and industry research, document review and working with the JetBlue Safety Department," concerning odor in the cabin and supposedly implements a plan of action.

230. This publication recognizes that APU oil leaks and Skydrol leaks from the landing gear area are responsible for the majority of cabin odor events and that it is "critical to thoroughly investigate all events using the Airbus TSM 05-50-00-0810-831-A, Identification of the Cause of Cabin Odor, Smoke or Fume."

231. JetBlue further states in this document that "JetBlue takes all reports of odor, poor air quality and 'dirty sock smells' seriously and performs robust troubleshooting of the cause of these odors", which is far from the case.

232. JetBlue also states "Ambient air may smell musty during precipitation/high humidity, or when passing through clouds. **If the odor is no longer present, there is no corrective action.**" (emphasis added).

233. This guidance allowed Defendants from investigating countless fume events by stating that corrective action is unnecessary after the air has dissipated.

234. Still, crewmembers were repeatedly told that there was nothing to be concerned with.

235. They were told to maintain a calm cabin environment throughout the event.

236. They were told if the aircraft is cleared to fly, than the flight attendants must continue to fly, or else it would be considered a refusal to fly and the crewmember may be subject to disciplinary action.

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 201 of 248 PageID #: 228

237.    On November 12, 2024, the FAA issued InFO 24013, "Voluntary Reporting of Fume or Smoke Events Onboard Passenger-Carrying Aircraft Operating Under Title 14 of the Code of Federal Regulations (14 CFR) Part 121" to provide standardization for Part 121 service difficulty reports (SDR) for smoke, vapor, or toxic or noxious fumes utilizing the SDR System.

*2025*

238.    On January 7, 2025, the FAA stated that it is "committed to protecting the safety and health of passengers and cabin crews on our nation's airlines. The agency has strict cabin air standards, and studies have shown cabin air is as good or better than the air found in offices and homes. In rare instances, mechanical issues such as failures of an engine oil seal or recirculation fan bearings can cause fumes to enter the cabin. Airlines are required to report these instances to the FAA."

239.    The FAA further stated:

- The FAA requires airplane manufacturers to show that the crew and passenger compartment air is free from harmful or hazardous concentrations of smoke, vapor, or toxic or noxious fumes during normal operating conditions and in the event of any probable failure conditions.

- FAA regulations require airliners' ventilation systems to supply clean air to both passengers and crew members. Airplanes must be designed to provide the equivalent of 0.55 pounds of fresh air per minute per occupant, a ventilation rate that is consistent with other public environments.

- Most of today's large transport category airplane ventilation systems provide a mix of fresh air/engine bleed air and recirculated airflow. The mix is approximately 50 percent but can vary depending upon the flight altitude and power settings.

- Most U.S. commercial airplanes use High Efficiency Particulate Air (HEPA) filters in the recirculated airflow, which remove 99.97 percent of particulate material.

- While the FAA does not have a definition for a "fume event," airlines are required to file Service Difficulty Reports (SDRs) when smoke, vapor or noxious odors enter the cockpit or passenger cabin.

37

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 202 of 248 PageID #: 229

- The FAA, airplane manufacturers, and air carriers maintain cabin air quality by defining appropriate design standards, designing the environmental control systems to meet those standards, and conducting proper maintenance, respectively.

*Id.*

240.    On February 23, 2025, an Airbus 321, N956JT, JetBlue Flight 881 from JFK to UVF experienced a fume event.

241.    On March 4, 2025, the same aircraft, N956JT, JetBlue Flight from Aruba to Boston experienced a "level 1" fume event, an flew the next day, and there were reports of illness on the flights in the days following the fume event.

242.    On March 11, 2025, JetBlue Flight 873 from Boston to Aruba, the same aircraft, N956JT, experienced a fume event due to the APU.

243.    On March 13, 2025, N956JT APU was put on MEL.

244.    N956JT had continuous issues with fume events for months, but was still being operated with the pilots, inflight, and passengers.

245.    On June 18, 2025, an Airbus A321, N708FR, Frontier Flight 1824 from Orlando, Florida to San Juan, Puerto Rico, was returned to Orlando after an "unusual odor" filled the cabin which caused 4 crew members to receive medical treatment.

246.    On July 31, 2025, passengers were boarding a Frontier flight from San Francisco, California to Atlanta, Georgia when they began to notice a strange odor in the cabin that one passenger described as exhaust from an old diesel car.

247.    The flight attendant then asked if anyone on board was feeling nauseous or faint, and several passengers raised their hands.

248.    The flight returned to the gate and the aircraft was evacuated.

38

249. Frontier spokesperson, Jennifer de la Cruz stated: "The original plane was thoroughly evaluated and no issues were identified," "No subsequent cabin odor events have occurred with the aircraft in question. It is possible the odor stemmed from ground equipment in operation at SFO."

250. Frontier spokesperson de la Cruz also said the safety of passengers and crew members is "our top priority," such incidents are rare, and are taken "very seriously."

251. Frontier further stated that it thoroughly evaluates aircraft to determine the causes of such incidents.

252. On September 13, 2025, the Wall Street Journal issued "How the Journal Analyzed More Than One Million FAA Reports" which discussed the database that it created a database of more than one million "service difficulty reports" or "SDRs" from 2010 through mid-2025.

253. These reports came from classified SDRs compiled by the Association of Flight Attendants – CWA union.

254. The instances of fume events have increased from approximately 12 per million departures in 2014 to nearly 108 per million in 2024.

255. Since aircraft lacked sensors, reporting of fume events relies upon the crew to notice and documentation of such events.

256. Instances of fume events in Airbus have increased from 32% to 57% in that same period.

257. The Wall Street Journal found instances of oil or hydraulic fluid contamination of the air supply which caused fumes to enter the cabin or flight deck.

258. The Wall Street Journal also published "Toxic Fumes are Leaking Into Airplanes, Sickening Crews and Passengers on September 13, 2025.

259.    This article cites an Airbus spokesperson mispresenting the safety of its aircraft said: "'Airbus aircraft are designed and manufactured according to all relevant and applicable airworthiness requirements". *Id.*

260.    A JetBlue spokesman similarly mispresented the safety risks, stating: "We take nothing more seriously than the safety and health of our crewmembers and customers." *Id.*

261.    The article points out that while the FAA's website describes fume events as "rare", and cites the 2015 report that suggests that the rate was "less than 33 events per million aircraft departures", the Wall Street Journal uncovered more than double that number of service difficulty reports in 2024 in the U.S. alone. *Id.*

262.    The Wall Street Journal also notes that its review of the International Air Transport Association, the rate is about 800 per million departures. *Id.*

263.    Due to underreporting, that rate is likely to be even higher.

264.    The Wall Street Journal article notes that most of the fume event incidents occur in Airbus 320's. *Id.*

265.    The increase in Airbus fume event incidents increased starting approximately in 2016 when Airbus loosened its maintenance practices applicable to fume events in response to the airlines' complaints that fume events were keeping their aircraft out of service, as described above. *Id.*

266.    According to this article, the aircraft lobby group encouraged their members to lobby against increased safety standards in 2022 at the risk of them being used in litigation. *Id.*

267.    On September 25, 2025, 39 United States Congressional leaders wrote a letter directed to Administrator Bryan Bedford of the FAA outlining their concerns on fume events, which is set forth in full below:

40

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 205 of 248 PageID #: 232

We write with concerns following recent reports of increased incidences of oil and hydraulic fluid fumes in the cabin and flight deck (fume events) on U.S. commercial aircraft.1 We are deeply concerned about the health risks and potential for comprised flight safety this exposure presents to our constituents, who you are responsible for protecting, and urge you to expeditiously implement the requirements laid out in the 2024 Federal Aviation Administration (FAA) Reauthorization law to ensure the safety of the flying public.

As you know, nearly all commercial aircraft ventilation air supplied to the cabin and flight deck is first compressed either in the main aircraft engines or a small auxiliary engine in the tail. "Bleed air" comprises the majority of the air on most flights, the remaining portion having been recirculated throughout the aircraft. This "bleed air" design has dominated all aircraft markets since the early 1950s, and while aircraft have seals to prevent oils from leaching into the air bound for the cabin, these seals can wear and degrade allowing oil to be vaporized and releasing unknown quantities of contaminants into the air that passengers and crew members inhale.

Recent reporting has indicated an uptick in fume events reported by flight crew members in the last year, though this issue has existed for decades.2 While this may be due in part to the recent change in guidance for airlines reporting fume events, there has been a stark increase over the last decade, with thousands of events reported to the FAA since 2010.3

Furthermore, reports indicate that multiple airline crew members have been forced to leave their jobs as pilots and flight attendants following fume events where their exposure led to injuries; one doctor even noted that "matched the symmetrical injuries seen in soldiers exposed to chemicals in combat."4 This is also not a new phenomenon, with flight crew reporting injuries from these fume events for decades.

The 2024 FAA Reauthorization required the FAA to develop a standardized submission system for air carrier employees to voluntarily report fume or smoke events onboard passenger-carrying aircraft.5 This reporting system is required to, among others, include the type of aircraft, the intensity of the fumes or smoke, the duration of the fume or smoke event, and any required onboard medical attention for passengers or crew members. The law also requires the National Academies to issue recommendations on improving overall cabin air quality; as well as allows the FAA to issue rulemaking regarding training for flight and ground crew members, installation of onboard detectors, and airlines' response to fume and smoke events.

In light of recent reporting and investigations that show the extent of these events and the serious health impacts they can cause, we urge you to expeditiously complete the work of standing up this required reporting system and request an update on the implementation timeline. We also request that you take steps to

41

create a similar reporting system for passengers to report fume or smoke events they experience to ensure that all concerning events are captured.

Fume and smoke incidents on commercial aircraft, the leading source of which being from oil and hydraulic fluid, are serious events with the potential for lasting consequences. It is vital that the FAA continue its strong oversight of aircraft to ensure crew member and passenger safety – this includes ensuring fume and smoke events are properly reported, investigated, and prevented. We welcome the opportunity to partner to keep our skies safe. We look forward to your prompt response.

1 Bejamin Katz, John West, and Andrew Tangel, *Toxic Fumes Are Leaking Into Airplanes, Sickening Crews and Passengers*,
Wall Street Journal, (Sept. 13, 2025), *available at:*
https://www.wsj.com/business/airlines/air-travel-toxic-fumes
2 *Id.*
3 Suzanne Rowan Kelleher, *FAA And Airlines Slow To Address Toxic Jet Fume Events On Planes*, Forbes, (Sept. 15, 2025),
*available at:* https://www.forbes.com/sites/suzannerowankelleher/2025/09/15/faa-airlines-toxic-jet-fume-events/
4 *Supra* at 1.
5 *FAA Reauthorization Act of 2024*, Pub. L. No. 118-63.

268.    On October 25, 2025, JetBlue was operating N957JB, which has experienced a number of fume events, experienced an air bleed issue and was placed on MEL.

**_Kate Dybdahl's Event_**

269.    On September 3, 2022, JetBlue Flight Number 673, was operating an Airbus 321, Tail Number N988JT from Boston, Massachusetts to Aruba when it experienced a fume event.

270.    At the time of the incident, Kate Dybdahl was 44 years old and a flight attendant for 17 years.

271.    Just prior, the same aircraft, N988JT, Flight 509 diverted due to a customer having trouble breathing and was taken to the hospital.

272.    Instead of fixing the leak, (documented after the fume event on F1773 on August 24, 2022), JetBlue cleaned up the standing oil, turned off the APU, and put the aircraft back into service.

42

273.    The flight crew and inflight, including Kate Dybdahl, noticed a dirty sock smell, which was worsening, causing Plaintiff Dybdahl to become nauseous.

274.    A family with a small child and infant moved to the back to get fresh air, mentioning that they were feeling nauseous.

275.    Other passengers were experiencing were complaining about the odor and one child had a nosebleed.

276.    Odor went throughout the cabin after the APU bleed was turned on.

277.    The FAA Audit of this event confirmed that the APU was causing the foul odor due to an APU internal oil leak.

278.    This FAA Audit was triggered by Plaintiff Kate Dybdahl's complaint, and no SDRs were filed.

279.    Plaintiff Dybdahl also repeatedly asked for Medlink, but no one responded.

280.    Emergency Medical Servies met the aircraft, and the crew was transported to the hospital.

281.    While the passengers were deplaning, the flight crew had left during this emergency.

282.    An FCIR was sent to the FAA with an inaccurate account of the event, which downplays the severity of the medical emergency that had occurred.

283.    Plaintiff Kate Dybdahl noticed that fumes were still present, despite the winds, and warned the ground crew members that the airplane was contaminated and that everyone should deplane.

43

284. The ground crew ignored Plaintiff Kate Dybdahl's warnings, they finished the turnaround, which caused one ground crew member to require medical attention, making it 5 in total.

285. Eventually, Plaintiff Kate Dybdahl and the others were taken to the hospital.

286. On September 4, 2022, Plaintiff Kate Dybdahl woke up with a persistent headache, nausea, and tingling/numbness in her hands, shins, and face.

287. Plaintiff Kate Dybdahl flew home on Flight F974, but was not on the electronic manifest, and her schedule was altered to remove any reference to the layover or the flight home.

288. On September 5, 2022, Plaintiff Kate Dybdahl woke up with worsening numbness, tingling, headache, ringing ears, floating sensation and difficulty focusing. By the afternoon, the symptoms escalated, and Plaintiff Kate Dybdahl was confused, and could not drive.

289. Plaintiff Kate Dybdahl and all four inflight crew members went to the hospital when they returned to Boston.

290. The aircraft was ferried unpressurized where Packs 1 and 2 were placed on MEL, and the aircraft was decontaminated. The aircraft was sent into service.

291. On August 24, 2022, one week prior to Plaintiff's event, the same aircraft went into service following flight crew reports that the aircraft smelled like dirty socks and sour milk throughout the cabin.

292. Following the August 24, 2022 event, the APU was placed on restrictions under the MEL and had evidence of an oil leak.

293. It was also noted that the aircraft had a previous 30 day history of incidents.

294. Plaintiff Kate Dybdahl had no history of cognitive impairment, tinnitus, skin irritation, depression, fatigue, or sleep disruption prior to the subject incident.

44

FILED: QUEENS COUNTY CLERK 11/13/2025 05:33 PM
NYSCEF DOC. NO. 24

RECEIVED NYSCEF: 11/14/2025

295. Following the fume event, Ms. Dybdahl did not note that she was injured, did not receive pay for the "deadhead" back home, and was subsequently terminated from JetBlue.

296. Defendant JetBlue also denied her workers' compensation, denying that she was injured on the job.

297. As a result of the incident, Plaintiff Kate Dybdahl was seriously injured, including nausea, tingling, numbness, cognitive impairment, disorientation, confusion, lightheadedness, tinnitus, skin irritation, headaches, memory deficits, brain fog, anxiety, depression, fatigue, sleep disruption, mood swings, visual changes, chemical sensitivity, and hot flashes.

298. As a result of the incident, Plaintiff Kate Dybdahl also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

299. Plaintiff Kate Dybdahl underwent therapies and treatments for her injuries, including chelation therapy, autoimmune treatment, vitamin IV therapy, hydro colon therapy, hyperbaric chamber therapy, oxygen therapy, visual therapy, infrared sauna treatment, vestibular therapy, neuropsychological testing, Stress Echo Exercise, multistep oxygen therapy, and an electrocardiogram and will require future treatment for their ongoing nature.

300. As a result of this incident, Plaintiff Kate Dybdahl was forced to spend money on medical treatments and therapies and is permanently scarred.

301. As a result of this incident, Plaintiff Kate Dybdahl has further experienced mental anguish, physical and cognitive impairments, and depression.

302. This has produced anxiety about going or being anywhere that Plaintiff Dybdahl could be exposed to chemicals, which make here symptomatic.

45

303.    As a result of this incident, Plaintiff Kate Dybdahl was deprived of her ability to work and enjoyment of life.

304.    As a result of this incident, Plaintiff Kate Dybdahl has suffered the following damages:

a.    Bodily injury;

b.    Disability;

c.    Pain and suffering

d.    Mental anguish;

e.    Loss of the capacity for the enjoyment of life;

f.    Medical expenses;

g.    Lost past earnings and net accumulations;

h.    Lost future earnings and net accumulations;

i.    Pre-judgment interest;

j.    Post-judgment interest; and

k.    Other damages to be determined at trial.

305.    But for this incident, Plaintiff Kate Dybdahl would not have sustained the serious injuries and damages set forth above.

306.    Further, Plaintiff Paul Dybdahl had to care for Kate Dybdahl as she received treatment for the injuries she sustained in the fume event.

307.    As a result of this incident, Plaintiff Paul Dybdahl has suffered the following damages:

a.    Loss of consortium;

b.    Pain and suffering;

46

c.     Mental anguish;

d.     Pre-judgment interest;

e.     Post-judgment interest; and

f.     Other damages to be determined at trial.

308.    As a result of the accident, Plaintiff Kate Dybdahl has been experiencing nausea, tingling, numbness, cognitive impairment, disorientation, confusion, lightheadedness, tinnitus, skin irritation, headaches, memory deficits, brain fog, anxiety, depression, fatigue, sleep disruption, mood swings, and hot flashes.

### *Graham Lehr's Event*

309.    At the time of the incident, Plaintiff Graham Lehr was 49 years old and a flight attendant since February 3, 2002.

310.    On December 16, 2022, JetBlue Flight Number 673, was operating an Airbus 320, Tail Number N523JB from Boston, Massachusetts to Aruba when it experienced a fume event during final descent.

311.    All inflight crew members detected the presence of the dirty musty sock smell, which was confirmed by both pilots.

312.    Once on the ground, the outbound pilots also confirmed fumes, as well as the contract MX in AUA.

313.    Plaintiff Graham Lehr was exposed for over 30 minutes before she was able to exist the aircraft.

314.    The flight experienced moderate turbulence upon descent, and Plaintiff Graham Lehr put on a surgical mask due to experiencing burning in the back of her throat and a headache and became woozy and unsteady on her feet.

47

315. The entire flight crew contacted Medicare, and were sent to the emergency room in AUA and received a UNA code on their schedule as a result.

316. Jetblue's MSR did not report crew injuries for Flight Number 673, nor were there any SDRs submitted.

317. Rather Jetblue ferried (no pressure, no bleed, due to APU issues) N523JB on flight Number 8362 on December 17, 2022, in which the reported fume event was linked, and SDRs were submitted for this flight.

318. The APU was leaking for Flight Number 673 on December 16, 2022.

319. Plaintiff Graham Lehr flew to base December 17, 2022, then returned home on December 18, 2022.

320. On December 20, 2022, Plaintiff Graham Lehr's symptoms were persistent and concerning; she went to urgent care.

321. Plaintiff Graham Lehr went to six ED's in 10 months as a result of her injuries including, but not limited to: shortness of breath, headaches, heart palpitations, chest tightness, cognitive delays, brain fog, fatigue, ringing in ears, soreness in back of throat, numbness, tingling, disorientation, unsteady on feet.

322. The subject aircraft had a previous 30-day history of fume events, including one on December 9, 2022, one week prior to the incident.

323. As a result of the accident, Plaintiff Graham Lehr has been experiencing fatigue, respiratory issues, chest tightness, dizziness, headaches, burning in the throat, cognitive impairment, brain fog, memory loss, trouble sleeping, numbness and tingling in upper half of body, redness and swelling in face and neck, difficulty standing and walking, and anxiety.

324. Plaintiff Graham Lehr has been receiving multi-step oxygen therapy, therapy by use of protective breathing equipment, infrared sauna treatment, red light therapy, vitamin IVs, acupuncture, chiropractic treatments, mental health therapy, vitamins, nutrition, reiki, and heart rate variability therapy, hyperbaric oxygen therapy, hydro-colon cleanse, autoimmune treatment, and chelation.

325. Plaintiff Graham Lehr's methacholine test demonstrates a 43% decrease in pulmonary function.

326. Plaintiff Graham Lehr's many tests including, but not limited to, SPECT, neuropsych evaluation, and TILT all confirm injuries due to toxic exposure.

327. Plaintiff Graham Lehr had no history of cognitive impairment, fatigue, or respiratory issues prior to the subject incident.

328. Defendant JetBlue also denied her workers' compensation, denying that she was injured on the job.

329. As a result of the incident, Plaintiff Graham Lehr was seriously injured, including cognitive impairment, sleep disruptions, redness and swelling in face and neck, respiratory distress, major physical fatigue, autonomic dysfunction, respiratory airways disease, neurocognitive disorder, sensitivity to occupational chemical, deficit of vestibulo-ocular reflex, toxic encephalopathy, organophosphate toxicity, shortness of breath, palpitations, numbness, tingling, brain fog, post-exertion malaise, wheezing.

330. As a result of this incident, Plaintiff Graham Lehr also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

49

331. As a result of this incident, Plaintiff Graham Lehr further has experienced mental anguish, physical and cognitive impairments, anxiety, and is unable to travel by plane, train, boat or public transportation and cannot stay in hotels.

332. As a result of this incident, Plaintiff Graham Lehr was forced to spend money on medical treatments and therapies and is permanently scarred.

333. As a result of this incident, Plaintiff Graham Lehr has been deprived of her ability to work and enjoyment of life.

334. As a result of this incident, Plaintiff Graham Lehr has suffered the following damages:

    a. Bodily injury;

    b. Disability;

    c. Pain and suffering

    d. Mental anguish;

    e. Loss of the capacity for the enjoyment of life;

    f. Medical expenses;

    g. Lost past earnings and net accumulations;

    h. Lost future earnings and net accumulations;

    i. Pre-judgment interest

    j. Post-judgment interest; and

    k. Other damages to be determined at trial.

335. But for this incident, Plaintiff Graham Lehr would not have sustained the serious injuries and damages set forth above.

50

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 215 of 248 PageID #: 242

336.    Further, Plaintiff Chad Lehr had to care for Graham Lehr as she received treatment for the injuries she sustained in the fume event, and assumed the role as primary parent to a neurodivergent child.

337.    As a result of this incident, Plaintiff Chad Lehr has suffered the following damages:

    a.  Loss of consortium;

    b.  Pain and suffering;

    c.  Mental anguish;

    d.  Pre-Judgment Interest;

    e.  Post-Judgment Interest; and

    f.  Other damages to be determined at trial.

### *Julia Michele Craig's Event*

338.    At the time of the 2024 incident, Plaintiff Craig was 60 years old and was a flight attendant since January, 2003.

339.    Plaintiff Craig was involved in four separate fume event incidents on Airbus 320 and 321 aircraft.

340.    The first fume event occurred in approximately 2013 in an Airbus 320 when Plaintiff Craig noticed an odor and blue cloud and stuck on the airplane for over 30 minutes, which the pilot explained to be a fume event.

341.    The second fume event occurred on March 29, 2023, Flight Number 673, N948 from Boston to Aruba in an Airbus 321.

342.    Plaintiff Julia Craig sought medical attention.

343.    Plaintiff Julia Craig filed a report after being assigned a return flight that landed with less than the FAA-mandatory 8 hours of rest.

51

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 216 of 248 PageID #: 243

344. Despite this, Plaintiff Craig was not removed from her flight the next day, and as a result received disciplinary points and lost pay.

345. Plaintiff Craig filed a complaint with the FAA regarding violation of the minimum rest requirements, as well as a whistleblower complaint with OSHA for retaliation after reporting the fume event and experiencing disciplinary action and loss of pay.

346. The third fume event occurred on April 10, 2023, Flight Number 673, N971, from Aruba to Boston in an Airbus 321.

347. The fourth fume event occurred on August 21, 2024, JetBlue Flight Number 256, was operating an Airbus 321, Tail Number 563 from Bozeman, Montana to Boston, Massachusetts.

348. The Safety Action report provided that the "APU was found to have oil on it. Removed and replaced in accordance with AMM-49-91-00.

349. As a result of the accident, Plaintiff Julia Craig experienced visual difficulties, impaired executive function, autonomic dysfunction, nausea, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping and headaches.

350. Plaintiff Julia Craig had no history of visual difficulties, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping or headaches prior to the subject incident.

351. Defendant JetBlue also denied her workers' compensation, denying that she was injured on the job.

352. As a result of the incident, Plaintiff Julia Craig was seriously injured, including visual difficulties, fatigue, tremors, trouble driving, difficulty with depth perception, balance issues, tinnitus, respiratory issues, issues with nervous systems, trouble sleeping and headaches.

52

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 217 of 248 PageID #: 244

353.    As a result of this incident, Plaintiff Julia Craig was diagnosed with: chemical sensitivity; cognitive dysfunction; inspiratory obstruction; convergence insufficiency; visual Discomfort – Visual Motion Sensitivity; and aero toxic syndrome.

354.    As a result of this incident, Plaintiff Juila Craig also suffered great pain, agony, and mental anguish in the past, and she shall continue to suffer from the same injuries for the foreseeable future.

355.    Plaintiff Julia Craig underwent eye therapy, vocal cord therapy, and has been recommended to undergo cognitive therapy, bio-feedback, testing with neuropsychiatrist and will require future treatment.

356.    As a result of this incident, Plaintiff Julia Craig was forced to spend money on medical treatments and therapies and is permanently scarred.

357.    As a result of this incident, Plaintiff Julia Craig has been deprived of her ability to work and enjoyment of life.

358.    As a result of this incident, Plaintiff Julia Craig has suffered the following damages:

a.  Bodily injury;

b.  Disability;

c.  Pain and suffering

d.  Mental anguish;

e.  Loss of the capacity for the enjoyment of life;

f.  Medical expenses;

g.  Lost past earnings and net accumulations;

h.  Lost future earnings and net accumulations;

i.  Pre-Judgment Interest

53

j.   Post-Judgment Interest; and

k.   Other damages to be determined at trial.

359.   But for this incident, Plaintiff Julia Craig would not have sustained the serious injuries and damages set forth above.

## COUNT I
## Plaintiffs v. Defendant JetBlue
## (Negligence)

360.   Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

361.   Defendant JetBlue was the owner, operator and maintainer of the subject aircraft.

362.   Defendant JetBlue failed to exercise reasonable care in the operation and maintenance of the subject aircraft.

363.   Further, Defendant JetBlue failed to exercise reasonable care for the protection of their flight crew and passengers in the operation of the aircraft during the subject flights.

364.   Defendant JetBlue failed to exercise reasonable care or take adequate corrective action to address the pervasive issue with fume events in its fleet that caused the injuries to Plaintiffs.

365.   Defendant JetBlue breached its duty and was negligent, grossly negligent, reckless, willful and/or wanton in that it, among other things:

a.      failed to provide air transportation and protection in a manner reasonably calculated to ensure the safety of the flight crew and passengers on the subject aircraft and the safe completion of the subject flights;

b.      failed to safely transport Plaintiffs Kate Dybdahl, Julia Craig, and Graham Lehr;

54

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 219 of 248 PageID #: 246

c.      failed to adequately warn Plaintiffs of the dangers of the subject flight;

d.      failed to maintain the subject in a safe manner;

e.      failed to own or operate the subject aircraft with due care and caution in accordance with applicable procedures and safe practices;

f.      failed to provide safe operating procedures, training, instructions, guidelines, and equipment for the incident flight;

g.      failed to exercise safe and effective control over the aircraft and to protect against unreasonable risk of injury;

h.      failed to equip the subject flight with adequate equipment to protect those aboard;

i.      failed to properly and adequately inspect, overhaul, repair, equip, modify, and maintain the subject aircraft;

j.      failed to exercise the high degree of care required of a common carrier in the exercise of its activities;

k.      failed to provide air taxi transportation and carriage in a manner reasonably calculated to ensure the safe completion of the subject flight;

l.      failing to report defects;

m.      failing to investigate or report fume events;

n.      failing to take corrective action to respond to and prevent fume events;

o.      discouraging reporting of fume events;

p.      concealing from pilots, flight attendants, and passengers from knowing that they were exposed to toxic chemicals during fume events.

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 220 of 248 PageID #: 247

q.     failing to provide or affirmatively offer adequate and appropriate medical services following a toxic chemical exposure.

r.     exposing those onboard its aircraft to toxic chemicals.

s.     failing to mitigate from the short term and long term harm that toxic chemical exposure presents to those who are exposed.

t.     taking affirmative action to insulate itself from ramifications that exposing those who fly on its aircraft may have for profit.

u.     carelessly, recklessly, and negligently failing to comply with applicable Federal Aviation Rules and Regulations;

v.     pressured the flight crew and inflight to fly, even when issues were raised questioning their safety due to fume events and/or illness;

w.     carelessly, recklessly, and negligently failing to comply with Part 121 of the Federal Aviation Rules and Regulations;

x.     failed to properly maintain its aircraft;

y.     failed to satisfy its obligations in its capacity as a maintainer of aircraft; and

z.     failing in other respects to be shown at trial.

366.    That as a direct and proximate result of the conduct of Defendant JetBlue, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT II**
**Plaintiffs v. Defendant JetBlue**
**(Negligent Misrepresentation and Fraud)**

367.     Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

368.     Defendant JetBlue engaged in false representations concerning the severity and frequency of fume events.

369.     As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

370.     Defendant told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

371.     After experiencing a fume event, Plaintiff Julia Craig was subjected to disciplinary action and lost pay.

372.     Defendant threatened all of the inflight that they could also be subject to disciplinary action and lost pay in similar circumstances.

373.     Defendant also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

374.     Defendant also failed to provide the inflight or passengers with sufficient protective equipment.

375.     Defendant underreported fume events and created protocols to ensure that fume events were kept quiet.

376.     Defendant knew that the statements it made were false.

377.     Instead, Defendant systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

378.    Defendant also pressured its crew and inflight to fly against their better judgment, even in the face of toxic chemical exposure due to fume events, or the effects of such exposure.

379.    Defendant actively told its members, the flying public, and even Congress, that the flight attendants' reports of fume events and their effects are hysterical, rare and not to be taken seriously, all of which is false.

380.    Defendant JetBlue actively concealed from pilots, flight attendants, and passengers from knowing that they were exposed to toxic chemicals during fume events.

381.    Defendant JetBlue only provided medical services to those onboard exposed to toxic chemicals – who often did not know they were exposed – if they requested it, and never advised them of the serious short term and long term health risks associated with fume events.

382.    Defendant JetBlue failed to mitigate the short term and long term harm that toxic chemical exposure presents to those who are exposed.

383.    Defendant JetBlue failed to protect its crew from the harm associated with toxic chemical exposure, especially when they are repeatedly subjected to fume events, which often times go unreported.

384.    Defendant JetBlue has taken affirmative action to insulate itself from ramifications that exposing those who fly on its aircraft may have for profit.

385.    Plaintiffs, and each of them, relied upon Defendant's statements, which turned out to be false.

386.    As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against Defendant JetBlue for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

58

## COUNT III
### Plaintiffs v. Airbus Defendants
### (Strict Liability)

387.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

388.    The Airbus Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject aircraft for each Plaintiff.

389.    They are also the holder of the Type Certificate Holders for the Airbus family of aircraft.

390.    Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

391.    The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

392.    Reasonable alternative designs that do not utilize a bleed air system were and are available, as well as retrofit kits, but Airbus failed to incorporate them.

393.    The design defects which rendered the aircraft unreasonably danger and defective were, but are not limited to, the following:

    a.    Ventilation systems that allowed for bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

    b.    Lack of adequate air quality monitors, sensor, or alarms.

    c.    Lack of systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

    d.    Use of a bleed air system for cabin air.

    e.    Failure to use an adequate APU design.

59

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 224 of 248 PageID #: 251

f.      Failure to use appropriate APU seals.

g.      Improper selection of the bleed air design and materials.

h.      Failure to satisfy the air cabin quality requirements during certification through to the day of the fume event and today.

i.      Failure to warn of the effects of the health risks associated with exposure to toxic chemicals due to fume events.

j.      Failure to provide guidance to crew, inflight, and passengers on how to adequately recognize and respond to fume events.

k.      Failure to implement procedures for operators to advise customers of the dangers associated with exposure to toxic chemicals in fume events such that they can receive appropriate medical treatment.

l.      Failure to provide sufficient safety devices to protect the crew, flight attendants, and passengers in the event of a fume event.

m.      Failure to adequately instruct on proper maintenance practices on its bleed air system.

n.      Failure to adequately instruct on proper maintenance practices on the aircraft following a fume event.

o.      Failure to adequately instruct on proper cleaning practices in the cabin following a report fume event.

p.      Failure to safeguard against fume events.

394.    The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

60

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 225 of 248 PageID #: 252

395.    The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

396.    As a result of the design defect, Plaintiffs suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IV
### Plaintiffs v. Airbus Defendants
### (Negligence)

397.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

398.    The Airbus Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

399.    The Airbus Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

400.    They negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft, such that their ventilation systems allowed contaminated bleed air to enter the cabin of the subject aircraft;

401.    They negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft without an adequate air quality monitor, sensor or alarm to detect bleed air contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events:

61

Case 1:25-cv-06692-ENV-TAM   Document 1-2   Filed 12/03/25   Page 226 of 248 PageID #: 253

a.      Ventilation systems that allowed bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

b.      Lack of adequate air quality monitors, sensor, or alarms.

c.      Lack of systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

d.      Lack of adequate filters that would purify the cabin air to prevent bleed air contamination.

e.      Use of a bleed air system for cabin air.

f.      Failure to use a non-bleed air system.

g.      Failure to incorporate any retrofit of the bleed air system to prevent against fume events.

h.      Failure to use an adequate APU design.

i.      Failure to use appropriate APU seals.

j.      Improper selection of the bleed air design and materials.

k.      Failure to satisfy the air cabin quality requirements during certification through to the day of the fume event and today.

l.      Failure to warn of the effects of the health risks associated with exposure to toxic chemicals due to fume events.

m.      Failure to provide guidance to crew, inflight, and passengers on how to adequately recognize and respond to fume events.

n.      Failure to implement procedures for operators to advise customers of the dangers associated with exposure to toxic chemicals in fume events such that they can receive appropriate medical treatment.

62

o.      Failure to provide sufficient safety devices to protect the crew, flight attendants, and passengers in the event of a fume event.

p.      Failure to adequately instruct on proper maintenance practices on its bleed air system.

q.      Failure to adequately instruct on proper maintenance practices on the aircraft following a fume event.

r.      Failure to adequately instruct on proper cleaning practices in the cabin following a report fume event.

s.      Failure to safeguard against fume events.

t.      Failing to adequately report instances of fume events to the FAA, regulatory authorities, operators, pilots, flight attendants, flight crews, and the flying public.

u.      Hiding the hazards associated with the bleed air system used in its aircraft fleet.

v.      Coordinating with others, including the Honeywell Defendants, to conceal the nature of defects associated with the bleed air system and the APU.

w.      Intentionally withholding information from the FAA, regulatory authorities, pilots, flight attendants, flight crews, and the flying public.

x.      Placing pilots, flight attendants, and passengers in harm's way by knowingly exposing them to risks of toxic chemicals and serious injuries from fume events, and failing to tell them about how to recognize, react, and treat when an exposure could exist.

y.      Causing pilots, flight attendants, and passengers who are exposed to fume events to go unaware of any risks of toxic exposure.

63

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 228 of 248 PageID #: 255

402. As a direct and proximate result of the conduct of the Airbus Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT V
### Plaintiffs v. Airbus Defendants
### (Breach of Express and Implied Warranties of Merchantability)

403. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

404. The Airbus Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

405. The Plaintiffs relied upon such warranties.

406. The Airbus Defendants breached their warranties to the Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the subject aircraft that were not reasonably safe for its intended use or purpose.

407. As a direct and proximate result of the Defendants' breach, the Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

408. Defendant JetBlue engaged in false representations concerning the severity and frequency of fume events.

64

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 229 of 248 PageID #: 256

409.    Defendant told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

410.    After experiencing a fume event, Plaintiff Julia Craig was subjected to disciplinary action and lost pay.

411.    Defendant threatened all of the inflight flight attendants that they could also be subject to disciplinary action and lost pay in similar circumstances.

412.    Defendant also failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

413.    Defendant also failed to provide the inflight or passengers with sufficient protective equipment.

414.    Defendant underreported fume events and created protocols to ensure that fume events were kept quiet.

415.    Defendant knew that the statements it made were false.

416.    Instead, Defendant systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

417.    Plaintiffs, and each of them, relied upon Defendant's statements, which turned out to be false.

418.    As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT VI**
**Plaintiffs v. Airbus Defendants**
**(Negligent Misrepresentation and Fraud)**

65

419. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

420. Defendants engaged in false representations concerning the severity and frequency of fume events.

421. As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

422. Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

423. Defendants, individually and in conjunction with JetBlue and the Honeywell Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

424. Defendants also failed to provide the inflight or passengers with sufficient protective equipment.

425. Defendants underreported fume events, and created protocols to ensure that fume events were kept quiet.

426. Defendants knew that the statements they made were false.

427. Instead, Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

428. Plaintiffs, and each of them, relied upon Defendants' statements, which turned out to be false.

429. As a result, Plaintiffs were seriously and permanently injured.

66

NYSCEF DOC. NO. 24

RECEIVED NYSCEF: 11/14/2025

WHEREFORE, Plaintiffs demand judgment against the Airbus Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VII
### Plaintiffs v. Honeywell Defendants
### (Strict Liability)

430. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

431. The Honeywell Defendants are in the business of designing, manufacturing, testing, certifying, distributing, and selling aircraft, including the subject APU.

432. Defendants designed and tested the aircraft and certified that they were of adequate quality, strength, and construction.

433. The dangerous defects which caused the injuries to Plaintiffs existed at the time they were first sold.

434. The design defects which rendered the aircraft and APU unreasonably danger and defective were, but are not limited to, the following:

435. The subject aircraft' ventilation systems allowed bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

436. The subject aircraft and APU lacked adequate air quality monitors, sensor, or alarms.

437. The subject aircraft contain no systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

    a. Ventilation systems that allowed bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

67

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 232 of 248 PageID #: 259

INDEX NO. /2025

b.     Lack of adequate air quality monitors, sensor, or alarms on the APU.

c.     Lack of systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

d.     Lack of adequate filters that would purify the cabin air to prevent bleed air contamination.

e.     Failure to use an adequate APU design.

f.     Failure to use appropriate APU seals.

g.     Improper APU design and materials.

h.     Failure to satisfy the air cabin quality requirements during certification through to the day of the fume event and today.

i.     Failure to warn of the effects of the health risks associated with exposure to toxic chemicals due to fume events.

j.     Failure to provide guidance to crew, inflight, and passengers on how to adequately recognize and respond to fume events.

k.     Failure to implement procedures for operators to advise customers of the dangers associated with exposure to toxic chemicals in fume events such that they can receive appropriate medical treatment.

l.     Failure to provide sufficient safety devices to protect the crew, flight attendants, and passengers in the event of a fume event.

m.     Failure to adequately instruct on proper maintenance practices on the APU or bleed air system.

n.     Failure to adequately instruct on proper maintenance practices on the APU or bleed air system following a fume event.

68

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 233 of 248 PageID #: 260

o.      Failure to safeguard against fume events.

438.    The subject aircraft lacked adequate filters that would purify the cabin air to prevent bleed air contamination.

439.    The aforesaid inherent design defects increased the likelihood of injuries in the event of an accident, had no usefulness or desirability in their condition, and could have been rectified with alternative safer products for little to no cost.

440.    As a result of the design defect, Plaintiffs suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VIII
### Plaintiffs v. Honeywell Defendants
### (Negligence)

441.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

442.    The Honeywell Defendants owed a duty to the Plaintiffs to use reasonable care in designing, manufacturing, testing, certifying, distributing, and selling aircraft.

443.    The Honeywell Defendants breached their duties and were negligent, grossly negligent, reckless, willful and/or wanton in that they, among other things:

a.      They negligently designed, manufactured, tested, certified, distributed, and sold the subject aircraft APUs.

b.      They negligently designed, manufactured, tested, certified, distributed, and sold the subject APUs without an adequate air quality monitor, sensor or alarm to detect

69

contamination, allow the flight crew to identify the source of such contamination, or allow the flight crew to prevent fume events.

c.      Ventilation systems that allowed bleed air to enter the cabin with all passengers and crew members, which may be contaminated with dangerous toxins.

d.      Lack of adequate air quality monitors, sensor, or alarms.

e.      Lack of systems that would allow the flight crew to identify the source of the contaminated air or prevent the contamination of the cabin air.

f.      Lack of adequate filters that would purify the cabin air to prevent bleed air contamination.

g.      Inadequate APU design and materials.

h.      Inadequate design and material selection of APU seals.

i.      Failure to provide adequate warnings or maintenance instructions concerning the APU and its seals.

j.      Failure to satisfy the air cabin quality requirements during certification through to the day of the fume event and today.

k.      Failure to warn of the effects of the health risks associated with exposure to toxic chemicals due to fume events.

l.      Failure to provide guidance to crew, inflight, and passengers on how to adequately recognize and respond to fume events.

m.      Failure to implement procedures for operators to advise customers of the dangers associated with exposure to toxic chemicals in fume events such that they can receive appropriate medical treatment.

70

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 235 of 248 PageID #: 262

n.   Failure to provide sufficient safety devices to protect the crew, flight attendants, and passengers in the event of a fume event.

o.   Failure to adequately instruct on proper maintenance practices on the bleed air system, APU or its seals.

p.   Failure to adequately instruct on proper maintenance practices on the bleed air system, APU or its seals.

q.   Failure to safeguard against fume events.

r.   Failing to adequately report instances of fume events to the FAA, regulatory authorities, operators, pilots, flight attendants, flight crews, and the flying public.

s.   Hiding the hazards associated with the bleed air system used in its aircraft fleet.

t.   Coordinating with others, including the Airbus Defendants, to conceal the nature of defects associated with the bleed air system and the APU.

u.   Intentionally withholding information from the FAA, regulatory authorities, pilots, flight attendants, flight crews, and the flying public.

v.   Placing pilots, flight attendants, and passengers in harm's way by knowingly exposing them to risks of toxic chemicals and serious injuries from fume events, and failing to tell them about how to recognize, react, and treat when an exposure could exist.

w.   Causing pilots, flight attendants, and passengers who are exposed to fume events to go unaware of any risks of toxic exposure.

71

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 236 of 248 PageID #: 263
INDEX NO. 795646/2025

444.    As a direct and proximate result of the conduct of the Honeywell Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IX
### Plaintiffs v. Honeywell Defendants
### (Breach of Express and Implied Warranties of Merchantability)

445.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

446.    The Honeywell Defendants expressly and impliedly warranted to its customers and foreseeable users of the product that it was safe, merchantable and fit for the uses for which it was intended.

447.    The Plaintiffs relied upon such warranties.

448.    The Honeywell Defendants breached its warranties to the Plaintiffs when they designed, manufactured, tested, certified, distributed, and sold the APU's that were not reasonably safe and effective for its intended use or purpose.

449.    As a direct and proximate result of the defendant's breach, the Plaintiffs suffered and continue to suffer serious mental and physical impairments and have to endure past, present and future medical expenses, needed for aid and assistance in their abilities to enjoy life and attend to their usual activities.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

72

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 237 of 248 PageID #: 264
INDEX NO. 705646/2025

## COUNT X
### Plaintiffs v. Honeywell Defendants
### (Negligent Misrepresentation and Fraud)

450. Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

451. Defendants engaged in false representations concerning the severity and frequency of fume events.

452. As set forth in detail above, defendant engaged in false representations and concealments which resulted in the Plaintiffs' injuries and damages.

453. Defendants told Plaintiffs that the fume events were not harmful, and that their reaction was a product of emotional angst.

454. Defendants, individually and in conjunction with JetBlue and the Airbus Defendants, failed to report instances of fume events and discouraged reporting so its aircraft were not down for service.

455. Defendants also provides faulty and defective APUs, which the Honeywell Defendants know are defective and risk the safety of anyone flying on an aircraft equipped with their APUs.

456. Defendants underreported fume events, and failures in their APUs to ensure that fume events were kept quiet.

457. Defendants knew that the statements they made were false.

458. Instead, Defendants systematically covered up the facts, which caused serious and permanent injury to Plaintiffs.

459. Plaintiffs, and each of them, relied upon Defendants' statements, which turned out to be false.

73

460.    As a result, Plaintiffs were seriously and permanently injured.

WHEREFORE, Plaintiffs demand judgment against the Honeywell Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XI
### Plaintiffs v. All Defendants
### (Negligent Infliction of Emotional Distress)

461.    Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

462.    Defendants owed duties to Plaintiffs, as described above.

463.    Defendants breach of duties proximately caused the accident and was a proximate cause of the emotional distress that naturally resulted to Plaintiffs as a result of Defendants' actions.

464.    Plaintiffs were flight attendants aboard the subject flights when the fume events occurred, and therefore experienced and observed the sequence of events that led to their injuries and were within the zone of danger of the accident, and witnessed the injuries sustained by passengers and fellow crew members.

465.    The impact left no doubt in Plaintiffs' minds that they would be injured, and they were.

466.    As a direct and proximate result of Defendants' negligence and/or breach of contract, Plaintiffs suffered and continue to suffer emotional and physical injuries which were a direct result of the incident and were foreseeable to Defendants.

74

Case 1:25-cv-06692-ENV-TAM    Document 1-2    Filed 12/03/25    Page 239 of 248 PageID #: 266

467.   Plaintiffs suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the events and serious bodily injury.

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XII
### Plaintiffs Paul Christian Dybdahl and Chad Ronald Lehr v. All Defendants
### (Loss of Consortium)

468.   Plaintiffs incorporate by reference the above paragraphs as though set forth at length herein.

469.   Plaintiff Paul Dybdahl was 44 years old at the time of the incident.

470.   Plaintiff Chad Lehr was 54 years old at the time of the incident.

471.   At the time of the accident, the Lehr Plaintiffs had a minor child, and he had to assume additional responsibility to account for Plaintiff Graham Lehr's injuries.

472.   Plaintiffs Paul Dybdahl and Chad Lehr at all times relevant hereto was the spouses of Kate Dybdahl and Graham Lehr, respectively.

473.   The aforementioned fume events required Plaintiffs Paul Dybdahl and Chad Lehr to take time away from their work and family to care for the injuries sustained by their wives in the fume events.

474.   Further, Plaintiffs Paul Dybdahl and Chad Lehr lost society, companionship, consortium and the support of Plaintiffs Kate Dybdahl and Graham Lehr, respectively, due to the actions of Defendants resulting in the fume events.

75

WHEREFORE, Plaintiffs demand judgment against Defendants for all damages permitted by law, plus costs and pre-judgment interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment and relief on all Causes of Action as follows:

1. An order awarding Plaintiffs compensatory, general, and special damages, and punitive damages in an amount to be proven at trial;

2. For medical monitoring;

3. Pre-judgment and post-judgment interest;

4. Attorney fees and costs; and

5. Such other relief as determine by the Court.

## JURY DEMAND

Plaintiffs respectfully request that a jury be convened to try the factual issues of this case.

Dated: November 13, 2025

CASCIONE PURCIGLIOTTI AND GALLUZZI
P.C.

Thomas G. Cascione, Esq.
Kelly Murtha, Esq.
Cascione Purcigliotti and Galluzzi P.C.
274 White Plains Road
2nd Floor, Suite 6
Eastchester, NY 10709-4419
(914) 961-1263

*Attorneys for Plaintiffs*

76

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.
*(Pro Hac Vice Pending)*
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email: cdevers@dmllc.law
mmiska@dmllc.law

FILED: QUEENS COUNTY CLERK 11/14/2025 05:19 PM INDEX NO. 725646/2025
NYSCEF DOC. NO. 25                                               RECEIVED NYSCEF: 11/14/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL CHRISTIAN                    Index No.: 725646/2025
DYBDAHL, GRAHAM JEANINE LEHR, CHAD
RONALD LEHR,
AND JULIA MICHELE CRAIG,

,                                                      **SUPPLEMENTAL**
                                                       **SUMMONS**

                         Plaintiff,

         -against-

JETBLUE AIRWAYS CORPORATION
AIRBUS AMERICAS, INC., AIRBUS S.A.S., AIRBUS
SE, HONEYWELL INTERNATIONAL, INC.,
HONEYWELL AEROSPACE US INC., AND
HONEYWELL AEROSPACE TECHNOLOGIES,
HONEYWELL AEROSPACE  US LLC, AND JOHN
DOES 1-10

,

                         Defendant.

------------------------------------------------------------------------X

To the above-named Defendants:

        **YOU ARE HEREBY SUMMONED** to answer the Amended Complaint in this action
and to serve a copy of your answer, or, if the Amended Complaint is not served with this
summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the
service of this summons (exclusive of the day of service), or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New York.

        **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear or answer, a
judgment will be entered against you by default for the relief demanded in the Amended
Complaint.

The Plaintiffs designate QUEENS County as the place of trial.

The basis for venue is.Defendant JETBLUE AIRWAYS CORPORATION'S principal place of
business.

DATED:      November 14, 2025
            Eastchester, New York

                                            Thomas G Cascione
                                            Attorneys for Plaintiff
                                            Cascione Purcigliotti & Galluzzi PC

274 White Plains Road, Suite 6
Eastchester, NY 10709
(914) 961-1263
Thomas.cascione@cpglawyers.com

and

DEVERS MISKA LAW
Cynthia M. Devers, Esq.
Michael S. Miska, Esq.
(*Pro Hac Vice Anticipated*)
One Bala Plaza, Suite 635
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email: cdevers@dmllc.law
mmiska@dmllc.law

TO:

HONEYWELL AEROSPACE US LLC – incoming defendant
c/o Corporation Service Company
7955 S. Priest Dr., Suite 102
Tempe, AZ 85284

HOLLAND & KNIGHT LLP
Attorneys for Defendant
JETBLUE AIRWAYS CORPORATION
787 Seventh Avenue, 31st Floor
New York, NY 10019
9175775383

ARNOLD & PORTER
Attorneys for Defendants
AIRBUS AMERICAS, INC.
AIRBUS S.A.S. and
AIRBUS SE
700 Louisiana St,
Houston, TX 77002-2700
Phone:(713) 576-2401

Hinshaw & Culbertson LLP
Attorneys for Defendants
HONEYWELL INTERNATIONAL, INC
HONEYWELL AEROSPACE US INC.
HONEYWELL AEROSPACE TECHNOLOGIES
800 Third Avenue 13th Floor,
New York, NY 10022

Case 1:25-cv-06692-ENV-TAM    Document 1-3    Filed 12/03/25    Page 244 of 248 PageID #: 271

Phone:**212-655-3839**

Case 1:25-cv-06692-ENV-TAM Document 1-2 Filed 12/03/25 Page 245 of 248 PageID #: 272

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF QUEENS

-------------------------------------------------------X

KATE SUZANNE DYBDAHL, PAUL
CHRISTIAN DYBDAHL, GRAHAM
JEANINE LEHR, CHAD RONALD LEHR,
and JULIA MICHELE CRAIG

      INDEX NO.: 725646/2025

     Plaintiffs,

         v.

      **PLAINTIFFS' SUPPLEMENTAL
      DEMAND FOR RELIEF**

JETBLUE AIRWAYS CORPORATION,
AIRBUS AMERICAS, INC., AIRBUS
S.A.S., AIRBUS SE, HONEYWELL
INTERNATIONAL, INC., HONEYWELL
AEROSPACE US INC., and HONEYWELL
AEROSPACE TECHNOLOGIES and
HONEYWELL AEROSPACE US LLC and
JOHN DOES 1-10

     Defendants.
-------------------------------------------------------X

     **PLEASE TAKE NOTICE** that Plaintiffs hereby submit their supplemental demand for

ad damnum pursuant to CPLR Section 3017(c):

1.     Plaintiffs Kate Suzanne Dybdahl and Paul Christian Dybdahl

    $10,000,000

2.     Plaintiffs Graham Jeanine Lehr and Chad Ronald Lehr

    $10,000,000

3.     Plaintiff Julia Michele Craig

    $10,000,000

Dated: November 19, 2025
Eastchester, NY                     Attorneys for the Plaintiffs

Case 1:25-cv-06692-ENV-TAM   Document 1-3   Filed 12/03/25   Page 246 of 248 PageID #: 273

Thomas G. Cascione (tcascione@cpglawyers.com)
Kelly L. Murtha (Kelly.murtha@cpglawyers.som)
CASCIONE, PURCIGLIOTTI & GALLUZI, P.C.
274 White Plains Road, Suite 6
Eastchester, New York  10709
Tel:  (914) 961-1263

and

Cynthia M. Devers (*Pro Hac Vice Pending*)
Michael S. Miska (*Pro Hac Vice Pending*)
DEVERS MISKA LAW
One Bala Plaza, Suite 635
Bala Cynwyd, PA  19004
Tel:  (215) 714-4030
cdevers@dmllc.law
mmiska@dmllc.law

2

Case 1:25-cv-06692-ENV-TAM Document 1-3 Filed 12/03/25 Page 247 of 248 PageID #: 274

TO:

ATTORNEYS FOR DEFENDANT
AIRBUS S.A.S., INC.

Christopher M. Odell
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2400
Fax: (713) 576-2499
Christopher.Odell@arnoldporter.com

David J Weiner (*to be admitted pro hac vice*)
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
David.Weiner@arnoldporter.com

ATTORNEYS FOR DEFENDANT
JETBLUE AIRWAYS CORPORATION

Steven Raffaele
Sarah Korapaty
Marc Antonecchia
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
Tel: (212) 513-3200
steven.raffaele@hklaw.com
sarah.korpaty@hklaw.com
marc.antonecchia@hklaw.com

ATTORNEYS FOR HONEYWELL
INTERNATIONAL INC.

Michael Maroney
HOLLAND & KNIGHT LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel: (617) 523-2700
michael.maroney@hklaw.com

3

NYSCEF DOC. NO. 26

RECEIVED NYSCEF: 11/19/2025

Evan M. Kwarta
Roosevelt B. Ettienne
Hinshaw & Culbertson LLP
800 Third Avenue, 13th Floor
New York, NY 10022
ekwarta@hinshawlaw.com
rettienne@hinshawlaw.com

4